**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CHARLES ROYALL,            |

        |

      Plaintiff,      |

        |

      v.         |      Civil Action No. 1:05cv01711 (RBW)

        |

NATIONAL ASSOCIATION OF    |

LETTER CARRIERS, AFL-CIO,   |

        |

      Defendant.    |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL-CIO'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Peter Herman
Elizabeth O'Leary
Cohen, Weiss and Simon LLP
330 West 42nd Street
New York, NY 10036
(212) 563-4100

Victoria L. Bor (Bar No. 288852)
Sherman, Dunn, Cohen, Leifer & Yellig, P.C.
900 Seventh Street, N.W., Suite 1000
Washington, D.C. 20001
(202) 785-9300

Attorneys for Defendant National Association
of Letter Carriers, AFL-CIO

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

TABLE OF AUTHORITIES ...................................................................................................iii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 2

    1.    NALC Hires Royall ................................................................................. 2

    2.    Plaintiff's Job Duties and His Unsatisfactory Job Performance ............................ 3

    3.    NALC Terminates Royall's Employment ............................................................ 6

ARGUMENT ......................................................................................................................... 7

Summary Judgment Standard ................................................................................................ 7

I.    Plaintiff Cannot Establish a Claim of Race Discrimination ................................................. 8

    A.    Plaintiff Has No Direct Evidence of Discrimination ............................................. 8

    B.    Plaintiff Cannot Establish an Inference of Race Discrimination ........................... 9

        1.    Plaintiff Cannot Show a *Prima Facie* Case of Racially
            Discriminatory Discharge ........................................................................ 11

        2.    Even if Plaintiff Could Show a *Prima Facie* Case of
            Discriminatory Discharge, He Cannot Establish That
            NALC's Reason For His Termination (Poor Job Performance)
            Was a Pretext for Discrimination ............................................................. 16

            a.    Plaintiff Has Presented No Evidence That NALC's
                Proffered Reason is False ............................................................ 17

            b.    The "Same Actor" Inference Undercuts Royall's
                Discrimination Claim ................................................................. 20

            c.    Plaintiff's Proffered Reasons for His Belief That
                His Termination was Racially Motivated Fail to
                Establish Pretext ......................................................................... 21

                1.    NALC's Decision To Terminate Plaintiff Without
                    Having Provided Him Training on J.D. Edwards Computer
                      Software Was a Reasonable Business Decision and Is Not
                      Evidence of Racial Animus .................................................. 21

2.  No Evidence of Discrimination by NALC Can Be
    Inferred From the Actions of Broendel's Young Child .......... 22

3.  Hearsay Regarding a Conversation between Broendel
    and Stubblefield and Regarding Unreturned Emails
    is Insufficient to Suggest Racial Animus ................................ 23

4.  Stubblefield's Termination is Not Evidence of Pretext .......... 24

5.  Plaintiff's Remaining Reasons for Believing that His
    Termination was Racially Motivated are Unavailing ............. 25

CONCLUSION ........................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Aka v. Washington Hosp. Ctr.*,
  156 F.3d 1284 (D.C. Cir. 1998) ..................................................................10

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S. Ct. 2505 (1986) ........................................................7, 8

*Anderson v. Ramsey,* No. Civ.A-04-56 (GK),
  2006 WL 1030155 (D.D.C. Apr. 19, 2006) ................................................26

*Buhrmaster v. Overnite Transp. Co.*,
  61 F.3d 461 (6th Cir. 1995) .......................................................................20

*Burke v. Gould*,
  286 F.3d 513 (D.C. Cir. 2002) ...................................................................25

*\*Carter v. Rubin*,
  14 F.Supp.2d 22 (D.D.C. 1998) .......................................................10, 19, 27

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S. Ct. 2548 (1986) ........................................................7, 8

*Dang v. Inn at Foggy Bottom*,
  85 F.Supp.2d 39 (D.D.C. 2000) ...................................................................10

*\*Davis v. Ashcroft*,
  355 F.Supp.2d 330 (D.D.C. 2005) ...................................................... *passim*

*Dunaway v. Int'l Bhd. of Teamsters*,
  310 F.3d 758 (D.C. Cir. 2002) ...................................................................27

*Forman v. Small*,
  271 F.3d 285 (D.C. Cir. 2001) ...................................................................19

*Fortier v. Ameritech Mobile Commc'ns, Inc.*,
  161 F.3d 1106 (7th Cir. 1998) ...................................................................15

*\*Fox v. Giaccia*,
  424 F.Supp.2d 1 (D.D.C. 2006) ............................................................11, 12

*Grady v. Affiliated Cent. Inc.*,
  130 F.3d 553 (2d Cir. 1997)........................................................................20

*Gustave-Schmidt v. Chao*,
  360 F.Supp.2d 105 (D.D.C. 2004), *aff'd*, No. 04-5181, 2004 WL 2348142
  (D.C. Cir. Oct. 19, 2004) ...................................................................................18

*Holcomb v. Powell*,
  433 F.3d 889 (D.C. Cir. 2006) .................................................................. *passim*

*Hopkins v. Women's Div., Gen. Bd. of Global Ministries, The United Methodist Church*,
  284 F.Supp.2d 15 (D.D.C. 2003), *aff'd*, 98 Fed.Appx.8 (D.C. Cir. 2004)................. *passim*

*Hussain v. Principi*, 344 F.Supp.2d 86 (D.D.C. 2004), *aff'd*, 435 F.3d 359 (D.C. Cir.
  2006), *reh'g en banc denied* (Apr. 19, 2006), *petition for cert. filed*, 75 U.S.L.W.
  3035 (U.S. July 18, 2006) (No. 06-83). ...............................................................23, 24

*Hutson v. McDonnell Douglas Corp.*,
  63 F.3d 771 (8th Cir. 1995) ...............................................................................18

*Johnson v. Maddox*,
  230 F.Supp.2d 1 (D.D.C. 2002), *aff'd*, 117 Fed.Appx. 769 (D.C. Cir. 2004)...................16

*Kidane v. Northwest Airlines, Inc.*,
  41 F.Supp.2d 12 (D.D.C. 1999) ...........................................................................15

*Lemmons v. Georgetown Univ. Hosp.*,
  431 F.Supp.2d 76 (D.D.C. 2006) ..................................................................8, 9, 10, 16

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792, 93 S. Ct. 1817 (1973).......................................................... *passim*

*Mianegaz v. Hyatt Corp.*,
  319 F. Supp. 2d 13 (D.D.C. 2004) ........................................................................14, 19

*Phillips v. Holladay Prop. Servs.*,
  937 F.Supp. 32 (D.D.C. 1996), *aff'd*, Nos. 96-7202, 96CV01025, 1997 WL
  411695 (D.C. Cir. June 19, 1997)........................................................................23

*Ramey v. Potomac Elec. Power Co.*, No. Civ.A.-04-2088(RJL),
  2006 WL 1102836 (D.D.C. Mar. 31, 2006)........................................................9

*Smith v. Chamber of Commerce*,
  645 F.Supp. 604 (D.D.C. 1986) ...........................................................................13, 18

*St. Mary's Honor Ctr. v. Hicks*,
  509 U.S. 502, 113 S. Ct. 2742 (1993)................................................................10

*Stella v. Mineta*,
284 F.3d 135 (D.C. Cir. 2002) ..........................................................................................11

*Teneyck v. Omni Shoreham Hotel*,
254 F.Supp.2d 17 (D.D.C.2003), *aff'd*, 365 F.3d 1139 (D.C. Cir. 2004) ........................11

*\*Waterhouse v. Dist. of Columbia*,
124 F.Supp.2d 1 (D.D.C. 2000), *aff'd* 298 F.3d 989 (D.C. Cir. 2002) ............10, 17, 20, 26

## STATUTES AND RULES

42 U.S.C. § 1981 ....................................................................................................................1

Federal Rule of Civil Procedure 56(c) ....................................................................................1, 7

Defendant National Association of Letter Carriers, AFL-CIO ("NALC")
respectfully submits this Memorandum of Points and Authorities in support of its Motion for
Summary Judgment pursuant to Local Civil Rules 7(h) and 56.1 and Federal Rule of Civil
Procedure 56(c).

## PRELIMINARY STATEMENT

In this action, plaintiff Charles Royall, who was employed by NALC as an
accounting manager for a six-month period in 2002 and was then terminated for poor job
performance, sues his former employer alleging that his termination was for racially
discriminatory reasons in violation of 42 U.S.C. § 1981 ("Section 1981").[1]  Plaintiff primarily
supports his claim of race discrimination by disputing NALC's negative view of plaintiff's job
performance and by arguing instead that his performance was satisfactory.  He also cites a litany
of anecdotal allegations, many of which are conclusory and based on hearsay, purporting to show
that his termination was racially motivated, including that NALC did not train him on a
particular computer software program, that NALC subsequently terminated another African-
American employee after plaintiff was terminated, that his supervisor did not respond to
plaintiff's emails and memos or to emails and memos from another African-American employee,
that his supervisor had allegedly told another African-American employee not to get "lippy"
during a disagreement, and that his supervisor had failed to discipline her young son, who was
white, not "to put his little dirty feet" on her desk when she was meeting with plaintiff.

Having presented no direct evidence of racial discrimination, plaintiff's claims are
evaluated under the tripartite burden-shifting approach first articulated by the Supreme Court in
*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).  However, unable to

---

[1] Section 1981 guarantees freedom from racial discrimination in "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).

show that he was treated differently than similarly situated employees who were not part of his protected class, or that his termination was not attributable to his poor job performance, plaintiff fails to satisfy the third element of the *prima facie* case equation, *i.e.*, the inference of discrimination. Moreover, even if plaintiff could establish a *prima facie* case, he is nonetheless unable to rebut NALC's demonstration of a legitimate, nondiscriminatory reason for his discharge based on his unsatisfactory job performance. Instead he seeks to have this Court function as a "super-personnel" agency and review whether NALC's termination of plaintiff was fair or whether, as an alternative to termination, NALC should have sent plaintiff to training or imposed a lesser form of discipline before terminating him or conveyed its dissatisfaction with his performance more frequently than he believes NALC did criticize him. Given the uniform oft-repeated admonition by federal courts that their role in enforcing federal discrimination statutes is not to review employment decisions for fairness and correctness but to determine whether the reason for the decision is discriminatory, and in light of the complete absence of any evidence of racial discrimination in this case, NALC is entitled to summary judgment.

## STATEMENT OF FACTS

The full statement of undisputed material facts upon which this motion is based, with record citations, is set forth in the Statement of Material Facts as to Which There is No Genuine Issue ("NALC Statement"), which accompanies this Memorandum of Points and Authorities, and is incorporated herein by reference. What follows in this section is a synopsis of facts only, and is not intended to substitute for or replace the NALC Statement.

### 1.    NALC Hires Royall

NALC is a national labor union which represents city letter carriers employed nationwide by the United States Postal Service. Its headquarters is in Washington, D.C. (NALC Statement ¶ 2, at 1). Plaintiff, an African-American, began work as the accounting manager in

NALC's finance department on February 25, 2002.  (*Id.* ¶ 1, at 1; ¶ 12, at 3).  At the time Royall

was hired the position of accounting manager was vacant and plaintiff was unemployed.  (*Id.* ¶

15, at 3; ¶ 6, at 2).  Prior to his hiring, Royall was interviewed by William H. Young, NALC's

Executive Vice President, NALC's Secretary-Treasurer Jane E. Broendel, and Ronald

Stubblefield, NALC's Director of Finance.  The decision to hire Royall was made by Young,

with the concurrence of Broendel and Stubblefield.  (*Id.* ¶¶ 7-10, at 2-3).  Plaintiff was hired as

an at-will employee and was not covered by either an individual employment agreement or by a

collective bargaining agreement.  (*Id.* ¶ 13, at 3).

2.    **Plaintiff's Job Duties and His Unsatisfactory Job Performance**

Plaintiff's job duties primarily related to payroll, including producing payroll,

filing tax reports, paying payroll-related taxes, assisting the Director of Finance with duties

related to supervision of employees, learning the Accounts Payable software system in order to

assist the Director of Finance and the Accounts Payable clerk in their duties, ensuring that the

correct deductions were taken from paychecks and that the deducted payments were forwarded

appropriately, and paying premiums to the Postal Service for health, retirement, and life

insurance benefits provided to NALC officers through the Postal Service.  (*Id.* ¶ 16, at 4).  As

detailed below, NALC was dissatisfied with plaintiff's performance of his duties in each of these

areas.

First, plaintiff was late in filing payroll tax returns on several occasions, and, as a

result, NALC had to pay penalties and late fees to the Internal Revenue Service.  (*Id.* ¶¶ 57-59, at

12-13).  Second, NALC officers and employees experienced problems with their payroll

deductions throughout the time that Royall was employed at NALC.  (*Id.* ¶¶ 29, 36, 45, 61, at 6-

9, 13).  Third, in some cases where deductions were taken from paychecks, plaintiff failed to

timely transfer the deducted amounts.  Thus, for example, employees who had authorized

deductions for savings bonds did not receive the bonds on the dates that they should have received the bonds, even though the amounts had been deducted from their pay. (*Id.* ¶¶ 34-35, at 7-8). Similarly, amounts that had been deducted for voluntary contributions to the federal thrift savings plan ("TSP") were not timely being placed in the employees' TSP accounts. (*Id.* ¶ 30, at 7). Fourth, plaintiff failed to make timely adjustments to the paychecks of certain NALC employees for cost of living adjustments required under collective bargaining agreements between NALC and two labor unions that represented NALC employees. (*Id.* ¶ 60, at 13). Fifth, plaintiff was late in making payments to the Postal Service for health, pension, and life insurance benefits that NALC officers received through the Postal Service. As a result, NALC officers, including Young, received notices from the Postal Service warning them that their benefits were in jeopardy of termination. (*Id.* ¶¶ 31-32, at 7). Sixth, Royall was unable to prepare spreadsheets required for NALC's annual audit, and eventually the task had to be assigned to another employee. (*Id.* ¶ 43, at 9). Seventh, plaintiff was late in making required payments to NALC's vendors, resulting in complaints to Young that NALC was losing its reputation as a prompt payer. (*Id.* ¶ 39, at 8).

NALC selected Royall over other job applicants, in part, because Royall represented in his interview that he had some familiarity with the software program used by NALC, that he was "a quick study," and that he would easily get "up and running" with NALC's payroll operations. (*Id.* ¶ 11, at 3). Unfortunately, however, the reality fell far short of plaintiff's and NALC's expectations in this area; plaintiff had a difficult time learning NALC's payroll system and, according to NALC, he never "caught on" to NALC's payroll system. Sukja Neidlinger, an employee with many years of experience as a NALC payroll clerk and who worked under the direct supervision of Royall, complained to Broendel that she had to devote an

-4-

excessive amount of time to training Royall on basic payroll issues and that he was "constantly" coming to her with questions and, as a result, Neidlinger could not keep up with her own work. According to Neidlinger, areas that Royall should have mastered within a matter of days required over two months of training. Indeed Neidlinger requested a pay raise because she felt that Royall's "incompetence" required her to do both her own work and Royall's work. (*Id.* ¶¶ 23-28, at 5-6). The consequences of plaintiff's inability to learn the software program were evidenced at the end of the year when NALC had to produce Form W-2s for its employees, an event that should have occurred automatically but did not because plaintiff had not made correct entries into the payroll system. (*Id.* ¶ 64, at 13-14).

Similar to Neidlinger, Stubblefield, plaintiff's immediate supervisor, complained to Broendel that Royall's inability to do his work accurately and timely required Stubblefield to do Royall's work for him, and, as a result, Stubblefield could not keep up with his own work. (*Id.* ¶¶ 20-22, at 5; ¶ 51, at 10). After no improvement was witnessed in plaintiff's performance, Stubblefield eventually recommended that NALC fire Royall. (*Id.* ¶ 72, at 15).

Plaintiff's employment with NALC coincided with NALC's employment of Frank Sclafani who had been hired by NALC on a temporary basis at the recommendation of NALC's outside accountants. Sclafani, an accountant, had specific experience in troubleshooting and turning organizations around. (*Id.* ¶¶ 43-44, at 9). In the summer of 2002, at the request of Broendel, he prepared a written memo to Broendel with his assessment of NALC's finance department. Sclafani concluded that Royall was having, and would continue to have, "a major detrimental effect on the work flow" in NALC's finance department. Specifically, Sclafani's memo stated that, absent active supervision, Royall's work is "often incomplete or not timely, and in too many cases, inaccurate," and that Royall was unwilling "to

take on, much less complete the tasks assigned to him by the Director of Finance or anyone else."  The memo rated Royall's analytical skills and attention to detail as poor "unless directly pointed out by a supervisor."  Sclafani also noted that he had observed that Stubblefield relied on Royall "less and less."  (*Id.* ¶¶ 53-54, at 11).  Sclafani's conclusions about Royall's deficiencies were based on Sclafani's personal observations and experiences, including, among other things, the fact that Sclafani had to assist or, in some cases, take full responsibility for completing tasks that Royall should have completed, and Sclafani's receipt of complaints from Stubblefield and Neidlinger about plaintiff's various failings.  (*Id.* ¶¶ 45-55, at 9-11).

In addition to Stubblefield's, Neidlinger's, and Sclafani's shared view that plaintiff was incapable of doing his job, Young and Broendel had to field numerous complaints about payroll problems from NALC officers, including payroll deduction mistakes, the failure to make required payments to the Postal Service for benefit coverage for NALC officers, and the failure to timely send NALC officers savings bonds.  (*Id.* ¶¶ 29-38, at 6-8).  In almost all of these cases, the problem either remained unresolved or was fixed by Stubblefield or Sclafani.  It was a rare instance in which Royall corrected the mistake himself.  (*Id.* ¶¶ 40-43, at 8-9; ¶¶ 47-48, 50, at 10).

### 3.    NALC Terminates Royall's Employment

Broendel and Stubblefield discussed payroll problems and other areas in which NALC was dissatisfied with Royall's performance with plaintiff on several occasions.  (*Id.* ¶¶ 69-70, at 14).  However, convinced that plaintiff was "absolutely incapable" of performing the duties of accounting manager, Stubblefield, Broendel and Young -- the same people who interviewed Royall prior to hiring -- agreed that plaintiff should be terminated.  Young made the decision to terminate Royall, and plaintiff was terminated on August 27, 2002, six months after he was hired.  (*Id.* ¶¶ 71-74, at 15).

Plaintiff filed this action on August 26, 2005.[2]  Following full discovery -- plaintiff took six depositions and NALC responded to his interrogatories and document requests and took plaintiff's deposition -- NALC now moves for summary judgment.

## ARGUMENT

### Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The substantive law of the claims at issue determines whether a fact is material.  A "genuine issue" of fact exists only if its resolution "might affect the outcome of the suit under the governing law."  Irrelevant factual disputes "will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986).

Although a court must "draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true," *id.,* 477 U.S. at 255, 106 S. Ct. at 2513, the non-moving party must establish more than the "mere existence of a scintilla of evidence in support of the plaintiff's position."  *Id.*, 477 U.S. at 252, 106 S. Ct. at 2512.  To prevail on a motion for summary judgment, the moving party must demonstrate that the non-moving party did not make a sufficient showing to establish the existence of an element essential to the non-moving party's case, and on which the non-moving party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).  The non-

_____

[2] This is the third occasion on which plaintiff has resorted to the courts in response to being terminated from a job. Plaintiff's suits against his former employers -- one for wrongful discharge and one for race discrimination -- were both dismissed.  (Declaration of Peter Herman [hereinafter "Herman Decl."], Ex. E [Deposition Transcript of Charles Royall [hereinafter "Royall Tr."]], at 9:2-16:14).

moving party may not rely solely on mere conclusory allegations.  Thus, summary judgment may

be granted to a moving party if the evidence is "merely colorable" or if the evidence is not

"significantly probative."  *Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511 (internal citations

omitted); *Celotex*, 477 U.S. at 327, 106 S. Ct. at 2555 ("Rule 56 must be construed with due

regard not only for the rights of persons asserting claims and defenses that are adequately based

in fact to have those claims and defenses tried to a jury, but also for the rights of persons

opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to

trial, that the claims and defenses have no factual basis.").

I.    **Plaintiff Cannot Establish a Claim of Race Discrimination**

     A.    **Plaintiff Has No Direct Evidence of Discrimination**

        A race discrimination claim under Section 1981 requires proof of intentional

discrimination, which may be shown by direct or indirect evidence.  *Lemmons v. Georgetown

Univ. Hosp.*, 431 F.Supp.2d 76, 86 (D.D.C. 2006) (Walton, J.).  "Direct evidence of

discrimination is evidence that, 'if believed by the fact finder, proves the particular fact in

question' *without any need of an inference*."  In race discrimination cases, "direct evidence

includes any statement or written document showing a discriminatory motive *on its face*."  *Davis

v. Ashcroft*, 355 F.Supp.2d 330, 340 n.2 (D.D.C. 2005) (emphasis in the original) (internal

citations and quotation marks omitted).  Plaintiff has not proffered any direct evidence of

discriminatory animus on the part of NALC.  He admits that no racial comments were ever made

by anyone at NALC, either at the time of his termination or otherwise, nor can he point to

anything else constituting direct evidence of racial discrimination.  (NALC Statement ¶¶ 75-76,

at 15-16). The circumstantial evidence that plaintiff relies upon to support his race discrimination

claim is set forth in his complaint, as well as in a one-page handwritten list that he drafted on

July 20, 2006, the night before his deposition, setting forth in an extremely summary fashion ten

reasons for plaintiff's belief that he was terminated on account of his race.  (Declaration of Peter Herman [hereinafter "Herman Decl."], Ex. J [Royall List]; Ex. E [Deposition Transcript of Charles Royall [hereinafter "Royall Tr."]], at 81:11-92:13 [elaborating on his listed reasons]). None of plaintiff's ten reasons constitutes direct evidence of discrimination.

   B.   **Plaintiff Cannot Establish an Inference of Race Discrimination**

          Where, as here, the plaintiff neither establishes nor specifically alleges direct evidence of race discrimination and instead relies on circumstantial evidence, race discrimination claims under Section 1981 are evaluated under the same three-part analysis first set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), for claims arising under Title VII of the Civil Rights Act of 1964.  *Lemmons*, 431 F.Supp.2d at 86; *Ramey v. Potomac Elec. Power Co.*, No. Civ.A.-04-2088(RJL), 2006 WL 1102836, *4 (D.D.C. Mar. 31, 2006) ("Our circuit has adopted the *McDonnell Douglas* burden shifting framework to analyze a § 1981 claim." [internal citation omitted]); *Hopkins v. Women's Div., Gen. Bd. of Global Ministries, The United Methodist Church*, 284 F.Supp.2d 15, 22 (D.D.C. 2003) (Walton, J.), *aff'd*, 98 Fed.Appx.8 (D.C. Cir. 2004).

          Applying the *McDonnell Douglas* framework, the plaintiff must first prove a *prima facie* case of discrimination by the preponderance of the evidence.  If the plaintiff proves the *prima facie* case, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the termination.  "However, the employer is not required to support these reasons with objective evidence sufficient to satisfy 'the preponderance of the evidence' standard."  *Davis*, 355 F.Supp.2d at 338 (internal citation omitted).  If the defendant carries this burden, the presumption of discrimination raised by the *prima facie* showing is rebutted and drops from the case and "the sole remaining issue [is] discrimination *vel non*."  *Id.* (internal citation and quotation marks omitted).  The burden then shifts back to the plaintiff to prove by

-9-

the preponderance of the evidence that the legitimate reason offered by the defendant was not the

defendant's true reason and instead was a pretext for discrimination and that race was the real

reason for the employment decision. *McDonnell Douglas*, 411 U.S. at 804, 93 S. Ct. at 1825;

*Lemmons*, 431 F.Supp.2d at 87; *Dang v. Inn at Foggy Bottom*, 85 F.Supp.2d 39, 42 (D.D.C.

2000); *Carter v. Rubin*, 14 F.Supp.2d 22, 37 (D.D.C. 1998) ("The Supreme Court has defined

pretext in this context as a showing that the employer's stated reason is false and that the real

reason for the adverse employment decision is in fact discrimination." [internal citation omitted]

[citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742 (1993)]).

Although evidentiary burdens "shift back and forth" under the *McDonnell*

*Douglas* framework, "the ultimate burden of persuading the trier of fact that the defendant

intentionally discriminated against the plaintiff remains at all times with the plaintiff."

*Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 992 (D.C. Cir. 2002) (internal citations omitted);

*Lemmons*, 431 F.Supp.2d at 87. In order to withstand summary judgment, "the plaintiff must

show that a reasonable jury could conclude from all the evidence that the adverse employment

decision was made for a discriminatory reason." *Lemmons*, 431 F.Supp.2d at 87 (internal

citations and quotation marks omitted). To this end, the Court must consider all of the evidence

in the record, *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1290 (D.C. Cir. 1998) (*en banc*),

which may include any combination of (1) evidence establishing the plaintiff's *prima facie* case,

(2) evidence that the plaintiff presents to discredit the employer's proffered explanation for the

termination, and (3) any further evidence of discrimination that may be available to the plaintiff,

such as independent evidence of discriminatory statements or attitudes on the part of the

employer. *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006).

1.    **Plaintiff Cannot Show a *Prima Facie* Case
      of Racially Discriminatory Discharge**

In order to establish a *prima facie* case of racially discriminatory discharge, the plaintiff must demonstrate that (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination. *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002); *Fox. v. Giaccia*, 424 F.Supp.2d 1, 7 (D.D.C. 2006) (Walton, J.); *Hopkins*, 284 F.Supp.2d at 22.  Although Royall satisfies the first two prongs of his *prima facie* case -- he is a member of a protected class and NALC's termination is an adverse employment action -- his claim is fatally flawed because he cannot establish that the termination gives rise to an inference of discrimination.

To make a *prima facie* case, there must be adequate evidence to create an inference that the termination was based on an illegal discriminatory criterion.  *Teneyck v. Omni Shoreham Hotel*, 254 F.Supp.2d 17, 22 (D.D.C.2003) (Walton, J.), *aff'd*, 365 F.3d 1139 (D.C. Cir. 2004).  A race discrimination plaintiff can establish an inference of discrimination by proving that he was treated differently than similarly situated employees who were not part of his protected class, or by showing that the termination was not attributable to the two most common legitimate reasons for discharge: performance below the employer's legitimate expectations, or the elimination of plaintiff's position altogether.  *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005); *Fox*, 424 F.Supp.2d at 6.  Royall is unable to make either showing.

First, neither plaintiff's complaint nor his list of reasons for his belief that his termination was racially motivated nor his deposition testimony include any allegations that there was a similarly situated employee who suffered from similar performance deficiencies as plaintiff but was not terminated.  The eighth reason on plaintiff's list notes a comment allegedly made to plaintiff by another NALC employee to the effect that terminations were rare events at

-11-

NALC.  (Herman Decl., Ex. J [Royall List], #8; Ex. E [Royall Tr], at 88:13-89:11).  At the threshold, the comment is inadmissible hearsay.  Moreover, plaintiff has not substantiated the hearsay with actual evidence.  In any event, even assuming *arguendo* that employee terminations at NALC were uncommon, that fact, if true, is irrelevant to plaintiff's burden to identify a similarly situated employee outside of his protected class who was treated differently than plaintiff.  Despite months of discovery, plaintiff has not presented any evidence that such an employee exists.  *See Fox*, 424 F.Supp.2d at 8 (summary judgment for defendant) (noting that plaintiff did not identify even one similarly situated person outside her protected class who had the same performance problems she did, and who was not terminated); *Hopkins*, 284 F.Supp.2d at 30 (summary judgment for defendant) (noting that plaintiff failed to produce any evidence that purportedly similarly situated employees were actually within plaintiff's same class).

Second, plaintiff is unable to create an inference of discrimination by showing that his termination was not attributable to his failure to perform at or near the level legitimately expected by NALC.[3]  Here plaintiff was terminated for his inadequate job performance, and there is overwhelming record support for NALC's proffered reason that he was terminated for failure to meet NALC's legitimate performance expectations.  To identify just a few examples, (1) plaintiff filed federal tax returns late on several occasions, thereby incurring monetary penalties for NALC (NALC Statement ¶¶ 57-59, at 12-13), (2) plaintiff made frequent errors

---

[3] Where the second element of the plaintiff's *prima facie* case overlaps with the defendant's legitimate, non-discriminatory reason for plaintiff's dismissal, some courts assume that a *prima facie* case is established and proceed to the third part of the *McDonnell Douglas* test, that is, to analyze whether plaintiff has demonstrated that the defendant's proffered reason is a pretext for discrimination.  *Waterhouse v. Dist. of Columbia*, 124 F.Supp.2d 1, 6-7 (D.D.C. 2000), *aff'd* 298 F.3d 989 (D.C. Cir. 2002).  However, under such circumstances, other courts continue with the *prima facie* analysis.  *See, e.g., Fox*, 424 F.Supp.2d at 8-9.  In any event, both inquiries have "a great deal of overlap."  *Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998) (noting that "there is a great deal of overlap with respect to the factual inquiry relevant" under the prong of the *prima facie* case focusing on whether the employee was fulfilling the legitimate performance expectations of the employer, and the other inquiry, assuming that a *prima facie* case can be made, as to whether the reasons given by the employer for discharge are pretextual).

with respect to payroll, with the result that required deductions were neither taken from paychecks nor forwarded appropriately, resulting in numerous complaints from NALC officers and employees to Young and Broendel (*id.* ¶¶ 29-36, at 6-8), (3) despite over two months of training by Neidlinger, plaintiff was unable to learn NALC's payroll system (*id.* ¶¶ 25-28, at 5-6), (4) plaintiff failed to timely pay premiums to the Postal Service for NALC officers' benefits (*id.* ¶¶ 31-32, at 7), (5) plaintiff was late in paying vendor bills (*id.* ¶ 39, at 8), and (6) NALC had to deal with a steady stream of complaints from Royall's subordinate, his supervisor, NALC officers, NALC employees, and NALC vendors about problems directly related to areas for which plaintiff was directly responsible (*id.* ¶¶ 20-39, at 5-8).  The burden that plaintiff's inability to learn the payroll system imposed on Neidlinger prompted her to ask for a raise (*id.* ¶ 28, at 6), and plaintiff's immediate supervisor curtailed assigning him work due to frequent mistakes and inability to complete work timely and eventually concluded that Royall had to be fired (*id.* ¶¶ 42, 72, at 9, 15).  There is no question that NALC was entitled to rely on reports by Stubblefield and others concerning Royall's deficiencies in deciding to terminate him.  *See, e.g., Smith v. Chamber of Commerce*, 645 F.Supp. 604, 608  (D.D.C. 1986) (stating that "plaintiff's employers were entitled to rely on reports of plaintiff's performance given by his immediate supervisor [] and by others familiar with his work." [internal citation omitted]).

Plaintiff's complaint alleges that he performed his duties "in a manner acceptable" to NALC, that he was complimented on several occasions for his performance, and that he was never criticized or disciplined prior to his termination.  (Compl. ¶ 7, at 2).  In his deposition testimony, plaintiff disputes NALC's negative assessment of his job performance. (Herman Decl., Ex. E [Royall Tr.], at 81:20-82:15; 76:21-78:2 [testifying that he viewed Broendel's comment that he was not performing his job as an "outrageous lie"]; 110:1-4

[testifying that Broendel's comment that he was not performing his job a caused him to become "distraught"]).  Plaintiff makes light of NALC's dissatisfaction with his undisputed failure to file tax returns timely, noting that there had been other instances of late-filed tax filings prior to his employment with NALC when his position was vacant.  (*Id.* at 82:1-9).  Royall's deposition testimony cited several areas of his performance that he viewed as positive.  (*Id.* at 41:12-46:19 [testifying that he got "caught up" with bonds, he cleaned the office up, filed some tax returns timely, prepared a list of individuals who were receiving insurance payments, handled payroll on one occasion in Neidlinger's absence, and corrected an issue with insurance]).  He also believes that his 30 years of experience in accounting belies NALC's view that he was unqualified to perform his job.  (*Id.* at 82:10-15).  Plaintiff's self-serving statements about his performance are insufficient to create an inference of discrimination.

       A discriminatory discharge claim is properly dismissed where, as here, the plaintiff is unable to produce "probative evidence that he performed his job well enough to meet defendant's legitimate expectations."  *Mianegaz v. Hyatt Corp.*, 319 F.Supp.2d 13, 22 (D.D.C. 2004).  Plaintiff has failed to produce any such evidence.  Notably -- notwithstanding his protestations that his degree in accounting and 30 years of experience refute NALC's view that he was incapable of performing his job, and his disagreement with NALC's statement that he was not doing his job (Herman Decl., Ex. E [Royall Tr.], at 81:20-82:15) -- there is no record evidence that casts doubt on whether NALC reasonably believed, based on plaintiff's numerous deficiencies, ranging from late-filed tax returns to late-paid premiums for Postal Service benefits for NALC officers, that plaintiff did not satisfy its legitimate performance expectations of plaintiff and terminated him for that reason.  For example, although plaintiff does not deny that he was late in filing NALC's payroll tax returns, resulting in monetary penalties, he seeks to

minimize the seriousness of his errors by noting that NALC had incurred fees for late-filed returns prior to his employment with NALC. (*Id.* at 82:1-9). Putting aside the lack of evidentiary support for this assertion, plaintiff overlooks that it was certainly reasonable for NALC to expect that, once an accounting manager was hired to fill the vacant position that existed prior to plaintiff's hiring, payroll tax returns would be filed timely. Similarly, plaintiff's response to NALC's charge concerning his inability to learn payroll -- *i.e.*, that NALC did not train him on a particular computer software program -- ignores that Neidlinger spent a great deal of time training plaintiff and in no way counters the underlying issue that plaintiff did not meet NALC's legitimate performance expectations (expectations that were attributable to plaintiff's representations in his interview about his ability to get up to speed quickly with NALC's payroll operations).

Finally, even assuming *arguendo* the truth of plaintiff's self-serving statements concerning a few positive accomplishments that plaintiff believes he made while employed at NALC, NALC "was entitled to determine that the deficiencies in his performance outweighed such accomplishments." *Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1114 (7th Cir. 1998). Plaintiff's mere disagreement with NALC's negative evaluation of his performance is not evidence that he performed at or near the level legitimately expected by NALC. *See, e.g., Kidane v. Northwest Airlines, Inc.*, 41 F.Supp.2d 12, 18 (D.D.C. 1999) (granting summary judgment to defendant where plaintiff's only contradictory evidence in response to defendant's identification of several incidents requiring discipline was statements by himself and two of his co-workers that he was a "good worker," and to deny one of the incidents cited by defendant as a reason for discipline). Indeed, as discussed below, it is well-settled that the relevant inquiry is not whether the employer's reason for the termination is correct or desirable but whether the

employer honestly believes the reason it offers. *See infra* pp. 17-20. Plaintiff has not produced

any evidence -- because there is none -- indicating that NALC did not firmly believe that

plaintiff's performance was extremely poor, or that NALC's unfavorable view of his abilities

was not the sole reason for his termination. (NALC Statement ¶¶ 71, 77, at 15, 16). In sum,

Royall falls short of establishing a *prima facie* case of discrimination because he is unable to

draw the necessary inference that race was a determining factor in NALC's termination decision.

As this Court has stated, it is the plaintiff that has the burden to establish his *prima facie* claim of

discrimination, and, absent proof that would permit an inference of discrimination, the defendant

is entitled to summary judgment. *Hopkins*, 284 F.Supp.2d at 30.

> **2. Even if Plaintiff Could Show a *Prima Facie* Case of Discriminatory Discharge, He Cannot Establish That NALC's Reason For His Termination (Poor Job Performance) Was a Pretext for Discrimination**

Even if plaintiff could establish a *prima facie* case of discrimination under Section

1981, he fails to rebut NALC's showing of a legitimate, non-discriminatory reason for his

termination based on his failure to adequately perform the duties of his job. To avoid summary

judgment, plaintiff has the burden to show that NALC's stated reason for his termination -- poor

job performance -- is pretextual and that the true reason is discriminatory. *See, e.g., Lemmons*,

431 F.Supp.2d at 87. "[S]imply casting doubt on the employer's proffered justification does not

automatically enable the plaintiff to survive summary judgment." Rather, the plaintiff's effort to

discredit the employer's explanation must always be assessed in light of the total circumstances

of the case. *Johnson v. Maddox*, 230 F.Supp.2d 1, 7 (D.D.C. 2002), *aff'd*, 117 Fed.Appx. 769

(D.C. Cir. 2004) (*per curiam*). As shown below, Royall fails to provide evidence demonstrating

either that NALC's proffered reason of poor performance was false or that race was the real

reason for the termination.

**a.    Plaintiff Has Presented No Evidence
That NALC's Proffered Reason is False**

Record evidence establishes that NALC terminated plaintiff because his supervisors viewed his performance as deficient, as evidenced by, among other things, frequent payroll mistakes and late-filed tax returns. Plaintiff responds by arguing that his performance was satisfactory. However, in the absence of any evidence that NALC's proffered reason was false, this Court does not have to chose between NALC's and plaintiff's competing perceptions of plaintiff's capabilities. Under the *McDonnell Douglas* framework, the relevant inquiry is not whether NALC's proffered reason for terminating Royall is correct or desirable but rather whether NALC "honestly believes" the reasons it offers. *Davis*, 355 F.Supp.2d at 342. Plaintiff has not produced any evidence intimating that Young, Broendel, and Stubblefield did not legitimately rely on their personal knowledge of Royall's performance deficiencies in deciding to terminate Royall. The fact that plaintiff's subjective positive evaluation of his own performance is at odds with NALC's negative view of his performance does not create an inference of discrimination. Conclusory, self-serving statements about an individual's own performance do not create a genuine issue of material fact because the relevant focus is on the perception of the decisionmaker and not on the perception of the individual. *Waterhouse v. Dist. of Columbia*, 124 F.Supp.2d 1, 10 (D.D.C. 2000) ("Whether plaintiff was solely responsible for the delays and deficiencies of which defendants complain, or whether she can justify or explain them, is not the issue. The issue is whether defendants reasonably believed that plaintiff had performance difficulties in these areas and terminated her as a result." [internal citations omitted]), *aff'd*, 298 F.3d 989 (D.C. Cir. 2002).

Thus, the issue here is whether NALC "reasonably believed that plaintiff had performance difficulties . . . and terminated [him] as a result." *Waterhouse*, 124 F.Supp.2d at 10.

As is often observed by courts adjudicating discrimination claims, courts do not sit as a "super-personnel department that reexamines an entity's business decisions." *Id.* at 6 [internal citations and quotation marks omitted]); *Holcomb*, 433 F.3d at 897 ("We have consistently declined to serve as a 'super-personnel department that reexamines an entity's business decisions.'" [internal citations omitted]); *Hutson v. McDonnell Douglas Corp.,* 63 F.3d 771, 781 (8th Cir. 1995) ("[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." [citations omitted]); *Gustave-Schmidt v. Chao*, 360 F.Supp.2d 105, 114-15 (D.D.C. 2004) (Walton, J.) (same), *aff'd*, No. 04-5181, 2004 WL 2348142 (D.C. Cir. Oct. 19, 2004) (*per curiam*); *Davis*, 355 F.Supp.2d at 341 (court may not "second-guess" an employer's personnel decision absent a demonstrably discriminatory motive); *Smith,* 645 F.Supp. at 608 ("Plaintiff challenges the accuracy of the criticisms of his work performance.  However, plaintiff's perception of himself, and of his work performance, is not relevant.  It is the perception of the decisionmaker which is relevant. . . . Plaintiff does not present a material issue of fact on the question of the quality of his work by merely challenging the judgment of his superiors." [internal citations omitted]).

Plaintiff has not produced any evidence suggesting that NALC's reason for discharging him was false.  Instead he seems to suggest that it was wrong for NALC to terminate him without having sent him to training on a particular software program or without having first imposed a lesser form of discipline.  (Compl.¶ 7, at 2; Herman Decl., Ex. J [Royall List], #7 ["Training J.D. Edwards"]).  However, absent evidence of racial discrimination, NALC's decision to terminate him in lieu of other personnel actions does not support a race

-18-

discrimination claim. *Carter*, 14 F.Supp.2d at 42 (granting summary judgment for defendant and holding that plaintiff's allegations that she received inferior training and an inappropriate number of evaluations during her tenure and her effort to bolster such allegations with affidavits from co-workers making broad allegations of gender discrimination within agency fail to show pretext) ("Absent a greater degree of specificity, these allegations have no bearing on whether [defendant's] decision to terminate [plaintiff was] a pretext for discrimination.").

In sum, Royall's arguments that his performance was satisfactory and that NALC had not disciplined him or sent him to software training prior to terminating him "simply challenge the soundness" of NALC's decision to terminate Royall, but do not rebut the legitimate, non-discriminatory reason offered by NALC, and, as such, they "fall short of the mark set by the *McDonnell Douglas* framework." *Davis*, 355 F.Supp.2d at 343. As stated by the court in *Carter*, 14 F.Supp.2d 22,

> The federal anti-discrimination laws . . . serve the specific and narrow purpose of redressing discrimination based on certain, discrete classifications such as race, gender, or age. The sole concern of this court is whether the reason for which the defendant discharged [plaintiff] was discriminatory. In essence, when an employer articulates a reason for the termination of an employee not forbidden by law, this court is precluded from considering whether the reason was fair or correct, so long as it is the true reason for the discharge. . . . Indeed, this court will not permit plaintiffs to use Title VII as a sword rather than as a shield in an effort to undercut legitimate decisions made by employers.

*Id.* at 44. At bottom, the question for this Court is whether race played a role in NALC's termination decision, and, despite six months of discovery, plaintiff has produced no such evidence. *Mianegaz*, 319 F.Supp.2d at 21 n.2; *see also Forman v. Small*, 271 F.3d 285, 291 (D.C. Cir. 2001) (stating that, in light of "the courts' reluctance to become involved in the micromanagement of everyday employment decisions," the question before the court is limited

-19-

to whether [the plaintiff] produced sufficient evidence of age discrimination, not whether he was treated fairly or otherwise entitled to promotion." [internal citations omitted]).

### b.  The "Same Actor" Inference Undercuts Royall's Discrimination Claim

In this case, the same three NALC officers and employee -- Executive Vice President Young, Secretary-Treasurer Broendel, and Director of Finance Stubblefield -- agreed to hire and fire plaintiff, and Young made the decisions.  (NALC Statement ¶ 10, at 3; ¶¶ 72-73, at 15).  Courts have stated that this circumstance gives rise to the "same actor" inference which permits an inference of "a lack of discrimination from the fact that the same individual both hired and fired the employee." *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 463 (6th Cir. 1995); *id.* at 464 ("An individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class.  This general principle applies regardless of whether the class is age, race, sex, or some other protected classification."); *Waterhouse*, 298 F.3d at 996 (noting that probative value of supervisor's statement that district had "too many white managers" was seriously undercut by the fact that the same supervisor had approved the decision to hire plaintiff earlier that same year).  Moreover, the fact that the two decisions were made within six months of each other "strongly suggest[s] that invidious discrimination was unlikely." *Grady v. Affiliated Cent. Inc.*, 130 F.3d 553, 560 (2d Cir. 1997) ("[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire.  This is especially so when the firing has occurred only a short time after the hiring." [internal citations omitted]).

     **c.**     **Plaintiff's Proffered Reasons for His Belief That His
Termination was Racially Motivated Fail to Establish Pretext**

Notwithstanding a full opportunity for discovery, plaintiff has failed to produce
any evidence demonstrating that NALC's proffered reason of poor performance was false.  As
noted above, plaintiff has offered in support of his claim a one-page handwritten list that sets
forth the reasons for his belief that NALC's decision to terminate him was motivated by racial
animus.  However, none of these reasons establishes pretext on the part of NALC.

     **1.**     **NALC's Decision To Terminate Plaintiff Without
Having Provided Him Training on J.D. Edwards
Computer Software Was a Reasonable Business
Decision and Is Not Evidence of Racial Animus**

Plaintiff complains that NALC did not train him on its computer software
program but did train Sclafani, who ultimately replaced Stubblefield and who was white.
(Herman Decl., Ex. E [Royall Tr.], at 85:20-87:12; Ex. J [Royall List], #7).[4]  As an initial matter,
plaintiff overlooks that NALC hired Royall, in part, because of his assurances during his
interview that he had familiarity with J.D. Edwards software, was "a quick study" and would be
able to pick up "very quickly" on NALC's payroll operations.  (NALC Statement ¶ 11, at 3).
Having had Neidlinger train Royall for over two months without success (*id.* ¶¶ 25-28, at 5-6),
NALC's conclusion that Royall was "absolutely incapable" of performing his duties (*id.* ¶ 71, at
15) was a reasonable business judgment.  The mere fact that NALC did not send Royall to a
particular software training does not suggest racial animus.  Moreover, Sclafani replaced
Stubblefield, not plaintiff, so NALC's decision to train Sclafani on a particular computer
software program does not support his implication that similarly situated employees were treated

---

[4] Plaintiff alleges that he was replaced by Sclafani and that James Delio replaced Stubblefield.  (Compl. ¶¶ 14-15, at 2-3).  In fact, however, Sclafani replaced Stubblefield and Delio temporarily filled Royall's job.  (Herman Decl., Ex. F [NALC's Responses to Plaintiff's First Set of Interrogatories and Request for Production of Documents], Response to Interrogatory 3, at 3).

differently with respect to training since Sclafani and Royall are not similarly situated, *i.e.,* they did not hold the same positions.

### 2. No Evidence of Discrimination by NALC Can Be Inferred From the Actions of Broendel's Young Child

Although none of the reasons offered by Royall in support of his discrimination claim even remotely suggests pretext, the reason that perhaps strains the most involves an anecdote offered by him concerning the alleged actions of Broendel's son, and what he views as Broendel's inadequate response thereto.  (Herman Decl., Ex. J [Royall List], #4 ["Son's Feet (union work)"]).  In his deposition, plaintiff described an incident that purportedly occurred in the summer of 2002 in which plaintiff and Broendel were having a meeting in Broendel's office at a time when her young son was present in the office.  According to Royall, the young child put "his little dirty feet" on his mother's desk, and Broendel allowed her son to leave his feet on her desk.  Royall viewed the young child's placement of his feet on the desk as "absolutely outrageous and sort of disrespectful in a racial nature."  (*Id.*, Ex. E [Royall Tr.], at 83:1-84:4).

> **Q.** Well, let me just pause on the feet on the desk for a moment.  You said disrespectful in a racial nature.  Why do you think that?
>
> **A.** I mean, here's this little white boy's going to put his little dirty feet up on her desk during the time -- after we started discussing union work.
>
> **Q.** This was her desk; isn't that right?
>
> **A.** It's her desk, but it doesn't matter whether it's her desk or the pope's desk.  This is her son.  This was totally inappropriate, and she said nothing.  She sort of -- when he did it, she sort of looked down as if she didn't want to see it.
>
> **Q.** Did she or her son make any reference to your race on that occasion?
>
> **A.** No.

(*Id.*).  Although plaintiff characterizes the incident as a racial insult, no reasonable fact-finder could infer *any* racial conduct by NALC in this "feet on the desk" incident.

> ### 3.     Hearsay Regarding a Conversation between Broendel and Stubblefield and Regarding Unreturned Emails is Insufficient to Suggest Racial Animus

Royall also supports his race discrimination claim by recounting an anecdote that Stubblefield allegedly told him about a disagreement between Broendel and Stubblefield in which Broendel concluded the conversation by saying "don't get lippy with me."  (Herman Decl. Ex. J [Royall List], #5 ["Lippy"]; Ex. E [ Royall Tr.], at 84:6-85:18).  Royall considers Stubblefield to be African-American.  (NALC Statement, ¶ 18, at 4; Answer ¶ 11, at 2). According to plaintiff, Stubblefield and Royall did not believe that Broendel would have spoken to a white man in that manner, and they viewed the comment as Broendel's direction to Stubblefield that he not talk to her in a particular manner due to his race, and they thought that it was inappropriate to make such a comment to an adult.  (Herman Decl., Ex. E [Royall Tr.], at. 84:13-85:2).

Plaintiff's reliance on the "lippy" remark lacks evidentiary value.  At the threshold, given that plaintiff was not present when the remark was made (*id.* at 85:6-8), it is inadmissible hearsay and cannot be used by plaintiff to satisfy his burden on summary judgment. *See Phillips v. Holladay Prop. Servs.*, 937 F.Supp. 32, 36 (D.D.C. 1996) (inadmissible hearsay cannot be used by plaintiff to meet her burden or summary judgment), *aff'd*, Nos. 96-7202, 96CV01025, 1997 WL 411695 (D.C. Cir. June 19, 1997) (*per curiam*); *Hopkins*, 284 F.Supp.2d at 28 (inadmissible hearsay statements cannot be used by plaintiff to establish that she was a victim of discrimination).  Even putting aside the hearsay defect, like the child's feet on the desk incident, no rational inference of racial animus can be drawn from the comment.  *See, e.g., Hussain v. Principi*, 344 F.Supp.2d 86, 100 (D.D.C. 2004) (plaintiff's assertions that he was told

by another Muslim physician that plaintiff's supervisor was a "racist" and that he was also told

that one of plaintiff's supervisors allegedly referred to Palestinian Muslims as "uncivilized" and

"violent nomads" are "nothing but hearsay" and do not create a triable issue of fact) ("[S]tray

remarks, even those made by a supervisor, are insufficient to create a triable issue of

discrimination where, as here, they are unrelated to an employment decision involving the

plaintiff." [internal citation and quotation marks omitted]), *aff'd*, 435 F.3d 359 (D.C. Cir. 2006),

*reh'g en banc denied* (Apr. 19, 2006), *petition for cert. filed*, 75 U.S.L.W. 3035 (U.S. July 18,

2006) (No. 06-83).

   In addition, Royall states that Broendel did not respond to his emails and memos,

and he goes on to allege that another African-American NALC employee, Ben Hanson, told

plaintiff that Broendel did not respond to his e-mails or memos.  (Herman Decl., Ex. J [Royall

List], #6 ["Ignored"]; Ex. E [Royall Tr.], at 128:21-130:2).  Plaintiff's complaint about

unreturned emails or memos fails to establish pretext.  First, Hanson's comments are also

inadmissible hearsay.  Second, plaintiff has not made any showing, or even alleged, that

Broendel responded to the emails and memos of white employees and, thus, treated plaintiff

differently than other employees because of his race.  Simply stated, plaintiff's complaint of

unreturned emails does not suggest racial animus.  Indeed to conclude racial animus from the

"feet on the desk" incident, the "lippy" comment, or unreturned emails and memos would be "to

go far beyond reasonable inference and into the realm of unfettered speculation."  *Holcomb*, 433

F.3d at 901.

    **4.**   **Stubblefield's Termination is Not Evidence of Pretext**

   The complaint also cites to NALC's termination of Stubblefield, alleging that

NALC falsely told Stubblefield that he was terminated because he "didn't fit in."  (Compl. ¶¶ 11-

12, at 2).  Plaintiff notes that both he and Stubblefield were replaced by white employees.  (*Id.*.

¶¶ 14-15, at 2). Stubblefield's termination does not establish pretext regarding NALC's decision to terminate plaintiff. First, plaintiff's allegations about the reason offered by NALC for Stubblefield's termination is inadmissible hearsay. Second, the mere fact that a single other African-American employee was terminated, without any type of statistical analysis about the racial composition of NALC's workforce and its employment decisions or any other evidence indicating that the termination was racially motivated, does not establish pretext with respect to NALC's decision to terminate plaintiff. In addition, there is no showing that Stubblefield challenged his termination as racially discriminatory. *See Burke v. Gould*, 286 F.3d 513, 520 (D.C. Cir. 2002) (noting that affidavit by plaintiff's supervisor that supervisor had experienced discrimination is insufficient to state or imply that personnel actions facing plaintiff were based on race); *Holcomb*, 433 F.3d at 899-900 (stating that the mere filing of two other race discrimination claims against supervisor, where nothing more is known about the nature, merit or outcome of those complaints, cannot be used as a proxy to establish discriminatory animus with respect to the plaintiff).

5.    **Plaintiff's Remaining Reasons for Believing that His Termination was Racially Motivated are Unavailing**

Plaintiff's remaining reasons for believing that his termination was racially motivated are similarly unavailing. For example, plaintiff contends that Broendel stated that plaintiff was unhappy at his job when she advised him of his termination, and he contends that she was wrong on this point and that, in fact, he was happy at NALC and he hoped to remain employed by NALC for a long time in the future. (Herman Decl., Ex. E [Royall Tr.], at 82:16-22; Ex. J [Royall List], #3 ["Unhappy"]). The issue of the accuracy of NALC's belief concerning whether Royall was happy at his job is immaterial as to whether the decision to terminate Royall was racially motivated. The ninth reason on plaintiff's list notes that NALC is

a union, and refers to the fact that he was embarrassed about having been fired by a labor union. (*Id.*, Ex. J [Royall List], #9 ["Fired From A Union Shop"]; Ex. E [Royall Tr.], at 109:5-9). Plaintiff's surprise that he was fired from an employer that is itself a labor union is not at all relevant to the issue of whether racial animus was involved in the termination decision.

Finally, in light of plaintiff's inability to proffer evidence that he performed at or near the level legitimately expected by NALC, the fact that plaintiff was later replaced by a white employee is not sufficient to defeat summary judgment. (*Id.*, Ex. J [Royall List], #10 ["All positions are (White) Replacements"]. *See generally Waterhouse*, 124 F.Supp.2d 1, at 7 (granting summary judgment to employer where white plaintiff was replaced by African-American because plaintiff was unable to show that defendants' reason for termination -- poor job performance -- was pretextual).

Plaintiff admits that the aforementioned reasons cover all of the grounds that he has to support his race discrimination claim. (Herman Decl., Ex. E [Royall Tr.], at 92:6-11; 115:22-116:7). As shown above, plaintiff's allegations are insufficient to withstand NALC's motion for summary judgment. The rank speculation, hearsay and self-serving statements offered by plaintiff to support his claim do not rise to the type of "specific, and at least preliminarily credible, evidence" that has been deemed sufficient to defeat summary judgment on the ground that a plaintiff is entitled to present evidence to a jury that defendant's rationale is pretextual. *Anderson v. Ramsey*, No. Civ.A-04-56 (GK), 2006 WL 1030155, *14 (D.D.C. Apr. 19, 2006) (summary judgment denied where plaintiff presented (1) a statistical analysis suggesting racial disparities, (2) specific evidence that new assistant chief routinely instituted harsher disciplinary sanctions against African-Americans than whites, and (3) evidence that lone white employee on call on the date of the incident triggering discipline faced no disciplinary

action); *see also Dunaway v. Int'l Bhd. of Teamsters*, 310 F.3d 758, 764-66 (D.C. Cir. 2002)

(summary judgment denied on discrimination claims where plaintiff, an employee with 25 years

of service and an unblemished record for 22 years until a new administration was put in place,

produced evidence of, among many other things, four derogatory remarks made by

decisionmaker about plaintiff's national origin and sex that were directly connected to

employer's desire to terminate her employment) ("This goddamn Oriental bitch got the job over

me.  I want to get rid of her.") ("I think I got something on the China doll, something legitimate

on the China doll.") (stating that he wanted to get rid of her because she was a woman and

because she was Asian).  Here, despite months of discovery, plaintiff has utterly failed to provide

any evidence from which a reasonable jury could infer that NALC acted in a discriminatory

manner.

In sum, plaintiff's conclusory allegations of race discrimination and the bases

offered in his deposition testimony fail to create a material issue as to whether NALC's

termination of his employment was discriminatory or that NALC's stated reason for the

termination was pretextual.  These "allegations without more are not sufficient to convince a

reasonable trier of fact that intentional discrimination was the real reason for the adverse

employment determination."  *Carter*, 14 F.Supp.2d at 42.  Where, as here, plaintiff seeks merely

to challenge the fairness of an adverse employment decision without any evidence that NALC's

stated reason for termination was false and that race was the real reason, NALC is entitled to

summary judgment.

## **CONCLUSION**

For the foregoing reasons, NALC respectfully requests that the Court grant

summary judgment to NALC and dismiss plaintiff's complaint in its entirety.


Dated: September 18, 2006
       New York, New York

                                        Respectfully submitted,




                                        /s/ Peter Herman
                                        Peter Herman
                                        Elizabeth O'Leary
                                        Cohen, Weiss and Simon LLP
                                        330 West 42nd Street
                                        New York, NY 10036
                                        (212) 563-4100

                                        /s/ Victoria L. Bor
                                        Victoria L. Bor (Bar No. 288852)
                                        Sherman, Dunn, Cohen, Leifer & Yellig, P.C.
                                        900 Seventh Street, N.W., Suite 1000
                                        Washington, D.C. 20001
                                        (202) 785-9300

                                        Attorneys for Defendant National Association
                                        of Letter Carriers, AFL-CIO


00095518.DOC.3