# Exhibit F



## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHARLES ROYALL,

    Plaintiff,

    v.

NATIONAL ASSOCIATION OF
LETTER CARRIERS, AFL-CIO,

    Defendant.

Civil Action No. 1:05cv01711 (RBW)

### RESPONSES OF NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL-CIO
### TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND
### REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant National Association of Letter Carriers, AFL-CIO ("NALC") responds

to Plaintiff's First Set of Interrogatories and Request for Production of Documents as follows.

### INTERROGATORIES

**Interrogatory 1:**

    Please identify each and every person who contributed information which was
used to answer these interrogatories and to respond to the Request to Produce Documents and
Inspect Property, served simultaneously herewith, specifying as to each such person the
information provided, the interrogatory answer for which such information was used and/or the
document or property produced by such person.

**Response to Interrogatory 1:**

    NALC objects to this interrogatory on the grounds that it is vague and ambiguous

and also on the grounds of attorney-client and/or work product privileges. Without waiver of

these objections, Jane Broendel was the principal provider of information, with certain assistance

by Frank Sclafani.

**Interrogatory 2:**

    Please identify all persons who you claim have personal knowledge of any
matters relating to Plaintiff's job performance and conduct, the termination of Plaintiff's
employment, and/or the Complaint and/or Answer filed in this matter. Please set forth in detail

what each such person knows, and specify what is known to them by their own observation and what is known to them by virtue of being so informed by another.

**Response to Interrogatory 2:**

NALC objects to this interrogatory on the grounds that it is vague and ambiguous, overbroad, unreasonably burdensome, and also on the grounds of attorney-client and/or work product privileges insofar as the interrogatory relates to NALC's Answer. Without waiver of these objections and without limitation, Jane Broendel has knowledge of plaintiff's job performance and conduct and the termination of his employment, based on both personal observation and what she was informed by others; William H. Young has knowledge of plaintiff's job performance and conduct, based principally on what he was informed by others, and also has personal knowledge of the termination of plaintiff's employment; Frank Sclafani has knowledge of plaintiff's job performance and conduct, based both on his own observation and what he was informed by others; Stephen McGhee[1] has knowledge of plaintiff's job performance and conduct, based primarily on his awareness of IRS late notices; Ronald Stubblefield has knowledge of plaintiff's job performance and conduct, based, on information and belief, both on his own observation and what he was informed by others; Suk Neidlinger has knowledge of plaintiff's job performance and conduct in the area of payroll, based principally on her own observation; Chris Tarbrake, on information and belief, has information on plaintiff's job performance and conduct in the area of Accounts Payable, based on his own observation.

**Interrogatory 3:**

For each factual allegation in the Complaint which you have denied, set forth the basis for the denial and what you contend is the correct statement of fact.

---

[1] Persons not previously identified in NALC's Initial Disclosures are identified on pages attached to the end of this document.

**Response to Interrogatory 3:**

Paragraph 7: see responses to interrogatories 5 and 6 below; Paragraph 9: Secretary-Treasurer Broendel advised plaintiff that he was being terminated because NALC was unhappy with his job performance, that plaintiff's attitude was not proper, that he was unhappy at his job in NALC's judgment, and that things were not working out; Paragraph 10: the reasons stated by Broendel were true; Paragraph 11: Stubblefield was terminated on September 27, 2002; Paragraph 12: Stubblefield was terminated because NALC was unhappy with his job performance; Paragraph 13: Broendel's reasons were true; Paragraph 14: Plaintiff was not replaced by Sclafani, but at first by Jim Delio; Paragraph 15: Stubblefield was not replaced by Delio or Estabrook, but by Sclafani; Paragraph 16: calls for conclusions of law; NALC's conduct was entirely lawful and plaintiff is entitled to no damages.

**Interrogatory 4:**

For each defense and/or affirmative defense which you set forth in your answer state all facts which support each defense and/or affirmative defense.

**Response to Interrogatory 4:**

NALC's affirmative defenses are based on the facts that its conduct was entirely lawful, the date of plaintiff's termination, and the date of the filing of this lawsuit. NALC reserves the right to add to its response on failure to mitigate, based on discovery.

**Interrogatory 5:**

If you contend that Plaintiff failed to perform in any way, please state what it was he obligated to do, but did not.

**Response to Interrogatory 5:**

NALC objects to this interrogatory on the grounds that it is vague and ambiguous. Without waiver of this objection, Plaintiff was obligated as Accounting Manager to produce payroll timely and accurately -- he did not learn the job thoroughly, and thus the Payroll Clerk

had to do a large amount of his duties relating to the weekly payroll. In addition, the Director of

Finance had to straighten out payroll matters that should have been the responsibility of the

Plaintiff. Plaintiff was to file timely and accurately all tax reports and payment of taxes related

to payroll. He did not always do so, and thus NALC had to pay fines relating to untimely and/or

inaccurate tax reports. Plaintiff was to assist the Director of Finance with duties related to

supervision of employees -- instead plaintiff created a work atmosphere of mistrust between

employees harming productivity and undermined his supervisor, the Director of Finance.

Plaintiff was obligated to learn the Accounts Payable software system in order to assist the

Director of Finance and the Accounts Payable clerks in their duties -- he failed to do so, causing

the Director of Finance to be tasked with completing his own reports from the system for the

annual audit as well as assisting the Accounts Payable clerk with any problems which arose.

**Interrogatory 6:**

      If you contend that Plaintiff's work was in any way deficient or otherwise not in
conformance with his employment obligations to Defendant, please state how this was so.

**Response to Interrogatory 6:**

      See response to interrogatory 5, above.

**Interrogatory 7:**

      Please set forth each and every reason for the termination of Plaintiff's
employment; identify each person who participated in the recommendation or decision to
terminate Plaintiff; and set forth how each such person participated.

**Response to Interrogatory 7:**

      NALC objects to this interrogatory on the grounds that it is vague and ambiguous.

Without waiver of this objection, among the principal reasons for plaintiff's termination were

(1) that he did not perform his duties in an adequate and timely way; (2) he did not properly

follow direction from his immediate supervisor, Mr. Stubblefield; and (3) he did not know

matters he claimed to know when he was hired and did not subsequently learn them. Jane

Broendel recommended that he be terminated and participated in the decision; Ronald

Stubblefield also recommended termination of plaintiff's employment; William H. Young

participated in the decision to terminate the plaintiff's employment with NALC.

**Interrogatory 8:**

Please identify each person who performed the work previously done by Plaintiff
after Plaintiff was terminated and continuing for three calendar years thereafter. Include each
such person's race and qualifications to perform such work.

**Response to Interrogatory 8:**

NALC objects to this interrogatory on the grounds that it is vague and ambiguous.

Without waiver of this objection, the persons who succeeded plaintiff in his job were,

respectively, James Delio, Carol Estabrook, and Stephen McGhee. They are white. Delio was a

member of NALC's IT Department prior to -- and after -- becoming Accounting Manager; he is

highly trained and competent on the NALC software; Estabrook's curriculum vitae will be

produced, as will McGhee's.

**Interrogatory 9:**

Please identify each person who participated in the recommendation or decision
to hire, employ, assign work to or use each person identified in the previous answer, and set forth
how each such person participated.

**Response to Interrogatory 9:**

NALC objects to this interrogatory on the grounds that it is vague, ambiguous,

and overbroad. Without waiver of these objections, Delio was already employed by NALC prior

to becoming Accounting Manager and Broendel, Sclafani, and Young agreed to give him a try in

that position; Broendel and Sclafani assigned him work. Broendel and Sclafani recommended

hiring Estabrook, a decision in which Young concurred; Broendel and Sclafani assigned her

work. Broendel, Sclafani and Estabrook recommended hiring McGhee, a decision in which

Young concurred. McGhee continued doing the job formally done by Estabrook.

## Interrogatory 10:

Please describe all the circumstances under which persons known by you to have given a written, recorded or oral statement in connection with the circumstances surrounding Plaintiff's job performance and conduct, the termination of Plaintiff's employment, and/or the Complaint and/or Answer filed in this matter. Please include within your answer without limitation: the identity of each such person; the date of each such statement; the person who took the statement, any and all witnesses to each such statement; all documents which relate to, refer to or contain any such statements in whole or in part; and the person or persons having custody or possession of the original statement and all copies or any portions of each such statement.

## Response to Interrogatory 10:

NALC objects to this interrogatory on the grounds that it is vague and ambiguous,

overbroad, and unduly burdensome. Without waiver of these objections, communications

include, without limitation:

(a)     In Spring-Summer, 2002, many officers on NALC's Executive Council,

including without limitation Alan Ferranto and Matthew Rose, discussed their unhappiness with

mistakes being made in payroll.

(b)     In late Spring to late August, 2002, Broendel and Stubblefield had a

number of conversations about plaintiff's inferior job performance and inability to accept

suggestions on work improvement.

(c)     From early Summer to late August, 2002, Broendel and Stubblefield had a

number of conversations with Young about plaintiff's failure to do his job timely and accurately

and its deleterious effects on the union;

(d)     From late Spring to late August, 2002, Sclafani and Broendel had a

number of conversations about plaintiff's inferior job performance. In late Spring or early

6

Summer, 2002, Sclafani, at Broendel's request, prepared a written evaluation of the Finance

Department, including of plaintiff.

(e)    In early Summer, 2002, Suk Neidlinger (NALC Payroll Clerk) and Chris

Tarbrake (NALC Accounts Payable Clerk) had conversations with Broendel about lack of

guidance by and/or inferior job performance by plaintiff.

(f)    In Spring, 2002, Mark Eagen, President of K&R Industries, a NALC

vendor, called Broendel and informed her that NALC was not paying their bills on time and that

he had heard the same thing from other NALC vendors.

See also response to interrogatory 7, above.

**Interrogatory 11:**

Please identify and describe each and every communication you have had with
any employee or representative or former employee or representative of the Defendant which
relates or refers to Plaintiff's job performance and conduct, the termination of Plaintiff's
employment, and/or the Complaint and/or Answer filed in this matter, including within your
answer without limitation an identification or description of each individual with whom you had
each such communication, the substance of each such communication in as verbatim form. as
possible, the date, time and place of each such communication, any and all witnesses to or
persons with personal knowledge of each such communication; and any and all documents
which, in whole or part contain, set out, describe, explain or otherwise refer to each such
communication.

**Response to Interrogatory 11:**

See response to interrogatory 10, above.

**Interrogatory 12:**

Please state the complete factual basis for each of the four affirmative defenses set
forth in your Answer filed in this matter.

**Response to Interrogatory 12:**

See response to interrogatory 4, above.

**Interrogatory 13:**

If you contend that any admissions against interest have been made by Plaintiff in connection with his job performance or conduct, the termination of his employment, please identify the circumstances under which each such alleged admission against interest was made, including within your answer without limitation the identification of the source of each alleged admission against interest that was allegedly made; the substance thereof in as verbatim form as possible; the date, time and place of each such alleged admission against interest; any person who witnessed or has personal knowledge of each such alleged admission against interest, and all documents which contain, set out, describe, relate or refer to each such admission in whole or in part.

**Response to Interrogatory 13:**

None at this time.

**Interrogatory 14:**

Please identify each person whom you intend to call as a witness in any trial or hearing in this matter.

**Response to Interrogatory 14:**

NALC does not know at this time whom it intends to call as a witness at trial or

hearing, if any.

**Interrogatory 15:**

Please identify all expert witnesses contacted by you, whether or not you intend to call any such expert in the trial or hearing in this matter, including within your answer the area of expertise of each such expert witness, the subject matter upon which such expert will testify, a statement of the substance of the facts and opinions to which each such expert is expected to testify, and a summary of the grounds for each such opinion, and identify and attach copies of all written reports, letters and other documents submitted to you by each such expert.

**Response to Interrogatory 15:**

None at this time; NALC does not know at this time if it will use any expert.

**Interrogatory 16:**

Please identify each and every document which supports your denial of any allegation set forth in the Complaint or defense set forth in the Answer filed in this matter.

**Response to Interrogatory 16:**

NALC objects to this interrogatory on the grounds that it is vague and ambiguous, overbroad, and unduly burdensome. Without waiver of these objections, responsive documents are produced in connection with NALC's document production.

**Interrogatory 17:**

Please identify all persons not previously named above known by you to have, or whom you believe have, personal knowledge of facts concerning Plaintiff's job performance and conduct, the termination of Plaintiff's employment, and/or the Complaint and/or Answer filed in this matter.

**Response to Interrogatory 17:**

Other persons include, without limitation, Linda Stewart, Dale Molina, Keith Proctor, David Dorsey, Stephen Hult, James Sauber, Sean McCormally.

**Interrogatory 18:**

Please identify each document not otherwise identified above that you contend supports, relates or refers to Plaintiff's job performance and conduct, the termination of Plaintiff's employment, and/or the Complaint and/or Answer filed in this matter.

**Response to Interrogatory 18:**

NALC objects to this interrogatory on the grounds that it is vague and ambiguous, overbroad, unduly burdensome, and, in part, calls for privileged information. Without waiver of these objections, responsive documents are produced in connection with NALC's document production.

## DOCUMENT REQUESTS

**Document Request 1:**

Any all documents relating in any way to Plaintiff's job performance and conduct, the termination of Plaintiff's employment, and/or the Complaint and/or Answer filed in this matter.

**Response to Document Request 1:**

NALC objects to this request on the grounds that it is vague and ambiguous, and overbroad. Without waiver of these objections, NALC will produce responsive non-privileged documents at a time and place to be agreed between counsel.

**Document Request 2:**

[there is no 2]

**Response to Document Request 2:**

Not applicable because there is no document request 2.

**Document Request 3:**

All documents which you relied up in 'answering Plaintiff's interrogatories or which contain information about any matter asked about in those interrogatories.

**Response to Document Request 3:**

NALC objects to this request on the grounds that it is vague and ambiguous, and overbroad. Without waiver of these objections, NALC will produce responsive non-privileged documents at a time and place to be agreed between counsel.

**Document Request 4:**

Any and all documents or property which support, relate or refer to any expert testimony you intend to use or introduce at any trial of this matter, including but not limited to, any reports generated by such experts and any documents such experts will use as a basis for or in support of their conclusions.

**Response to Document Request 4:**

None at this time.

**Document Request 5:**

Any and all documents which relate or refer to any meetings, discussions, conversations, correspondence or communications between or among yourself, any present or former employee, agent or management representative of Defendant concerning Plaintiff's job performance and conduct, the termination of Plaintiff's employment, and/or the Complaint and/or Answer filed in this matter, including without limitation all e-mail, computer files, letters, memoranda, correspondence, diaries, logs, calendars and notes.

**Response to Document Request 5:**

NALC objects to this request on the grounds that it is vague and ambiguous, and overbroad. Without waiver of these objections, NALC will produce responsive non-privileged documents at a time and place to be agreed between counsel.

**Document Request 6:**

Any and all documents or property which relate or refer to any oral or written statement given by a witness or person with knowledge of Plaintiff's job performance and conduct, the termination of Plaintiff's employment, and/or the Complaint and/or Answer filed in this matter.

**Response to Document Request 6:**

NALC objects to this request on the grounds that it is vague and ambiguous, and overbroad. Without waiver of these objections, NALC will produce responsive non-privileged documents at a time and place to be agreed between counsel.

**Document Request 7:**

Any and all documents which relate or refer to any admissions against interest you contend were made by any party (i.e., both Plaintiff and Defendant) to this matter.

**Response to Document Request 7:**

None at this time.

**Document Request 8:**

Any and all documents which relate or refer to, set out, contain, explain, describe, or form the basis for any studies or statistical data or evidence you intend to use or introduce in the trial of this matter.

**Response to Document Request 8:**

None at this time.

**Document Request 9:**

Plaintiff's personnel records.

**Response to Document Request 9:**

NALC will produce NALC's personnel file on plaintiff at a time and place to be agreed between counsel.

**Document Request 10:**

The personnel records of any person identified in your answer to Interrogatory No. 8.

**Response to Document Request 10:**

NALC objects to this request on the grounds that it is overbroad and seeks documents containing information that is private to the specific individuals and that is not relevant to any claim or defense in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiver of these objections, NALC will produce documents, if any, from the personnel files of the identified individuals pertaining to their qualifications, dates of NALC employment, and reasons for leaving NALC employment (if applicable), at a time and place to be agreed between counsel.

Dated: April 20, 2006

Peter Herman
Cohen, Weiss and Simon LLP
330 West 42nd Street
New York, NY 10036
(212) 563-4100

Victoria L. Bor (Bar No. 288852)
Sherman, Dunn, Cohen, Leifer & Yellig, P.C.
900 Seventh Street, N.W., Suite 1000
Washington, D.C. 20001
(202) 785-9300

Attorneys for Defendant National Association
of Letter Carriers, AFL-CIO

12

## IDENTIFICATIONS

Current NALC employees are Stephen McGhee, Suk Neidlinger, James Delio (IT Department), Linda Stewart (Finance Department), Keith Proctor (Director of Membership), James Sauber (Chief of Staff), and Sean McCormally (Director of Communications). Their contact information is c/o NALC counsel in this case.

Other persons are:

> Chris Tarbrake
> 5108 Hollywood Road
> College Park, MD  20740
> (301) 614-0780

> Ronald L. Stubblefield
> 13420 Tamarack Road
> Silver Spring, MD  20904
> (301) 384-7351

> Carol-Lee Estabrook
> 6786 Stonewall Court W.
> Adamstown, MD  21710-9429
> (301) 831-8016

> Alan C. Ferranto
> P.O. Box 3413
> Gettysburg, PA  17325
> (717) 334-8014

> Matthew Rose
> 8750 SW 9th Court
> Pembroke Pines, FL  33025-1459
> (954) 433-0279

> Mark Eagen
> K&R Industries
> P.O. Box 220690
> Chantilly, VA  20153
> (703) 631-4200

> Dale Molina  [former IT Department employee]
> 7138 Cold Spring Court
> Alexandria, VA  22306
> (703) 768-1018

Stephen Hult [former Contract Administration Unit employee]
925 Shore Drive
Edgewater, MD  21037
(410) 956-3392

David Dorsey, CPA
Bond Beebe Advisors & Accountants
4600 East-West Highway
Suite 900
Bethesda, MD 20814
(301) 272-6000

## VERIFICATION

1.      I am the Secretary-Treasurer of defendant National Association of Letter Carriers, AFL-CIO ("NALC").

2.      I declare under penalty of perjury that the foregoing answers of NALC to Interrogatories are true and correct to the best of my knowledge and belief based on presently available documentation and information within the possession, custody, or control of NALC.

Dated: April __18__, 2006

_Jane E. Broendel_
Jane E. Broendel

## CERTIFICATE OF SERVICE

I hereby certify that on this _20_ day of April, 2006, I served the Responses of the

National Association of Letter Carriers, AFL-CIO to Plaintiff's First Set of Interrogatories and

Request for Production of Documents by first class mail, postage prepaid, upon:

> Thomas J. Gagliardo
> 8401 Colesville Road, Suite 315
> Silver Spring, MD  20910-3312

Peter Herman

# Exhibit G

Department of the Treasury
**Internal Revenue Service**

OGDEN UT      84201-0039

| | |
|---|---|
| Date of this notice: | SEP. 2, 2002 |
| Taxpayer Identifying Number | 53-0114650 |
| Form: 941 | Tax Period: JUNE 30, 2002 |

For assistance you may
call us at:

1-800-829-8815

lıllllıı.ıll..ıllıl..ıllıl.ıl.lıl.ıl....ılıll.....ıll

NATIONAL ASSOCIATION OF LETTER
NALC HQS
100 INDIANA AVENUE N W
WASHINGTON DC    20001-2144998

REQUEST FOR PAYMENT                 FEDERAL EMPLOYMENT TAX

OUR RECORDS SHOW YOU OWE      $1,163.00 ON YOUR RETURN FOR THE ABOVE TAX PERIOD.

TO AVOID ADDITIONAL FAILURE TO PAY PENALTY AND INTEREST, PLEASE ALLOW ENOUGH MAILING
TIME SO THAT WE RECEIVE YOUR PAYMENT BY SEP. 23, 2002. MAKE YOUR CHECK OR MONEY ORDER
PAYABLE TO THE UNITED STATES TREASURY. WRITE YOUR TAXPAYER IDENTIFICATION NUMBER ON
YOUR PAYMENT AND MAIL IT WITH THE STUB PORTION OF THIS NOTICE.

IF YOU THINK WE MADE A MISTAKE, PLEASE CALL US AT THE NUMBER LISTED ABOVE. WHEN YOU
CALL, PLEASE HAVE YOUR PAYMENT INFORMATION AND A COPY OF YOUR TAX RETURN AVAILABLE.
THIS INFORMATION WILL HELP US FIND ANY PAYMENT YOU MADE THAT WE HAVEN'T APPLIED.

TAX STATEMENT

| | |
|---|---|
| TAX ON RETURN | $1,848,990.03 |
| TOTAL CREDITS | $1,848,990.03- |
| AMOUNT PREVIOUSLY REFUNDED TO YOU | $.00 |
| CREDIT BALANCE | .00 |
| *PENALTY | 1,163.00 |
| *INTEREST | .00 |
| | |
| AMOUNT YOU OWE | $1,163.00 |

\# 4095650
VN 269824
Batch # 39546.

OK DB
9/19/02



EXHIBIT NO. 8
Royall
KY 7/21/06

PAGE 1            NALC 120

ABOUT YOUR NOTICE - THE PENALTY AND INTEREST CHARGES ON YOUR ACCOUNT ARE EXPLAINED
ON THE FOLLOWING PAGES.  IF YOU WANT A MORE DETAILED EXPLANATION OF YOUR PENALTIES
AND INTEREST, PLEASE CALL US AT THE TELEPHONE NUMBER LISTED ON THE TOP OF THIS
NOTICE.  YOU MAY CALL YOUR LOCAL IRS TELEPHONE NUMBER IF THE NUMBER SHOWN ON YOUR
NOTICE IS A LONG-DISTANCE CALL FOR YOU.  ALL DAYS MENTIONED IN THE PARAGRAPHS
BELOW ARE CALENDAR DAYS, UNLESS SPECIFICALLY STATED OTHERWISE.

      $1,163.00  FAILURE TO DEPOSIT - FEDERAL TAX DEPOSITS INSUFFICIENT/LATE
                 - IRC SECTION 6656

WE CHARGED A PENALTY BECAUSE YOU DIDN'T DEPOSIT THE CORRECT AMOUNTS OF TAX ON
TIME.  WE USED YOUR RECORD OF TAX LIABILITY TO DETERMINE WHERE TO APPLY YOUR
DEPOSITS.  WE APPLIED YOUR DEPOSITS IN THE DATE ORDER WE RECEIVED THEM.  WE
FIGURED THE PENALTY ON ANY TAX NOT DEPOSITED, DEPOSITED LATE, OR NOT DEPOSITED
IN THE CORRECT AMOUNTS.

THE FOLLOWING TABLE SHOWS THE PENALTY CHARGES ON YOUR ACCOUNT.  TO COMPUTE YOUR
FAILURE TO DEPOSIT PENALTY WE USED, AMOUNT DUE X RATE.

| Due Date | Pymt Date | Days Late | Pymt Type | Rate | Amt Due | Penalty |
|----------|-----------|-----------|-----------|------|---------|---------|
| 04/29/2002 | 04/30/2002 | 1 | EFT | 2% | 58,149.90 | 1,163.00 |
| | | | | | Total Penalty: | 1,163.00 |

IF YOU THINK WE SHOULD REMOVE OR REDUCE THIS PENALTY, SEE "REMOVAL OF PENALTIES -
REASONABLE CAUSE."  ALSO SEE PUBLICATION 15, CIRCULAR E - EMPLOYER'S TAX GUIDE OR
PUBLICATION 51, CIRCULAR A - AGRICULTURAL EMPLOYER'S TAX GUIDE, FOR DEPOSIT
REQUIREMENTS.

REMOVAL OF PENALTIES - REASONABLE CAUSE

THE LAW LETS US REMOVE OR REDUCE THE PENALTIES EXPLAINED IN THIS NOTICE IF
YOU HAVE AN ACCEPTABLE REASON.  IF YOU BELIEVE YOU HAVE AN ACCEPTABLE REASON,
YOU MAY SEND US A SIGNED STATEMENT EXPLAINING YOUR REASON.  WE'LL REVIEW IT AND
LET YOU KNOW IF WE ACCEPT YOUR EXPLANATION AS REASONABLE CAUSE TO REMOVE OR
REDUCE YOUR PENALTY.  THIS PROCEDURE DOESN'T APPLY TO INTEREST AND, IN SOME
CASES, WE MAY ASK YOU TO PAY THE TAX IN FULL BEFORE WE REDUCE OR REMOVE THE
PENALTY FOR PAYING LATE.

ERRONEOUS WRITTEN ADVICE FROM IRS

WE'LL ALSO REMOVE YOUR PENALTY IF:

  -YOU WROTE TO IRS AND ASKED FOR ADVICE ON A SPECIFIC ISSUE,
  -YOU GAVE IRS COMPLETE AND ACCURATE INFORMATION,
  -IRS WROTE BACK TO YOU AND GAVE YOU A SPECIFIC COURSE OF ACTION TO TAKE OR
   EXPLAINED WHAT ACTIONS NOT TO TAKE,
  -YOU FOLLOWED OUR WRITTEN ADVICE IN THE MANNER WE OUTLINED, AND
  -YOU WERE PENALIZED FOR THE WRITTEN ADVICE WE GAVE YOU.

TO HAVE THE PENALTY REMOVED BECAUSE OF ERRONEOUS WRITTEN ADVICE FROM IRS, YOU
SHOULD:

  -COMPLETE FORM 843, CLAIM FOR REFUND AND REQUEST FOR ABATEMENT,
  -REQUEST THAT IRS REMOVE THE PENALTY, AND
  -SEND FORM 843 TO THE IRS SERVICE CENTER WHERE YOU FILED YOUR RETURN FOR THE
   YEAR YOU RELIED ON ERRONEOUS ADVICE FROM THE IRS.

THE THREE DOCUMENTS YOU MUST ATTACH TO YOUR FORM 843 ARE:

  -A COPY OF YOUR ORIGINAL REQUEST FOR ADVICE FROM IRS,
  -A COPY OF THE ERRONEOUS WRITTEN ADVICE FROM IRS, AND
  -A NOTICE (IF ANY) SHOWING THE PENALTY WE CHARGED THAT YOU NOW WISH US TO
   REMOVE.

THE LAW ALLOWS YOU TO TELL THE IRS WHERE TO APPLY YOUR DEPOSITS WITHIN THE TAX
RETURN PERIOD WITH A DEPOSIT PENALTY.  YOU HAVE 90 DAYS FROM THE DATE OF THE
CORRESPONDENCE SHOWING THE DEPOSIT PENALTY TO CONTACT THE IRS, IF YOU WANT TO
SPECIFY WHERE TO APPLY YOUR DEPOSITS.

THE LAW ALSO ALLOWS THE IRS TO REMOVE THE DEPOSIT PENALTY IF:  (1) THE PENALTY
APPLIES TO THE FIRST REQUIRED DEPOSIT AFTER A REQUIRED CHANGE TO YOUR FREQUENCY OF
DEPOSITS, AND (2) YOU FILE YOUR EMPLOYMENT TAX RETURNS BY THE DUE DATE.

NALC 121

# Exhibit H

200221 R16641                                                        TE 3

**Department of the Treasury**
**Internal Revenue Service**

OGDEN UT          84201-0039

Date of this notice:          JUNE 3, 2002
Taxpayer Identifying Number                53-0114650
Form:    941          Tax Period:    MAR. 31, 2002

For assistance you may
call us at:

1-800-829-8815

‖..||||||..||...||||.....||.|..|.|.|..|.|....|..||......||

NATIONAL ASSOCIATION OF LETTER
NALC HQS
100 INDIANA AVENUE N W
WASHINGTON DC    20001-2144998

REQUEST FOR PAYMENT                              FEDERAL EMPLOYMENT TAX

OUR RECORDS SHOW YOU OWE          $2,796.79 ON YOUR RETURN FOR THE ABOVE TAX PERIOD.

TO AVOID ADDITIONAL FAILURE TO PAY PENALTY AND INTEREST, PLEASE ALLOW ENOUGH MAILING
TIME SO THAT WE RECEIVE YOUR PAYMENT BY JUNE 24, 2002. MAKE YOUR CHECK OR MONEY ORDER
PAYABLE TO THE UNITED STATES TREASURY. SHOW YOUR TAXPAYER IDENTIFICATION NUMBER OR
YOUR IDENTIFYING NUMBER ON YOUR PAYMENT AND MAIL IT WITH THE STUB PORTION OF THIS NOTICE.

IF YOU THINK WE MADE A MISTAKE, PLEASE CALL US AT THE NUMBER LISTED ABOVE. WHEN YOU
CALL, PLEASE HAVE YOUR PAYMENT INFORMATION AND A COPY OF YOUR TAX RETURN AVAILABLE.
THIS INFORMATION WILL HELP US FIND ANY PAYMENT YOU MADE THAT WE HAVEN'T APPLIED.

TAX STATEMENT

| | |
|---|---|
| TAX ON RETURN | $2,096,599.59 |
| TOTAL CREDITS | $2,096,601.68- |
| AMOUNT PREVIOUSLY REFUNDED TO YOU | $      .00 |
| CREDIT BALANCE | 2.09- |
| *PENALTY | 2,798.88 |
| *INTEREST | .00 |
| AMOUNT YOU OWE | $2,796.79 |

AS A RESULT OF THE ABOVE CHANGES, NONE OF THE          $2.08 YOU REQUESTED IS
AVAILABLE TO APPLY TO YOUR NEXT TAX PERIOD.

NALC 115

ABOUT YOUR NOTICE. THE PENALTY AND INTEREST CHARGES ON YOUR ACCOUNT ARE EXPLAINED
ON THE FOLLOWING PAGES. IF YOU WANT A MORE DETAILED EXPLANATION OF YOUR PENALTIES
AND INTEREST, PLEASE CALL US AT THE TELEPHONE NUMBER LISTED ON THE TOP OF THIS
NOTICE. YOU MAY CALL YOUR LOCAL IRS TELEPHONE NUMBER IF THE NUMBER SHOWN ON YOUR
NOTICE IS A LONG-DISTANCE CALL FOR YOU. ALL DAYS MENTIONED IN THE PARAGRAPHS
BELOW ARE CALENDAR DAYS, UNLESS SPECIFICALLY STATED OTHERWISE.

    $2,798.88   FAILURE TO DEPOSIT - FEDERAL TAX DEPOSITS INSUFFICIENT/LATE
                - IRC SECTION 6656

WE CHARGED A PENALTY BECAUSE YOU DIDN'T DEPOSIT THE CORRECT AMOUNTS OF TAX ON
TIME. WE USED YOUR RECORD OF TAX LIABILITY TO DETERMINE WHERE TO APPLY YOUR
DEPOSITS. WE APPLIED YOUR DEPOSITS IN THE DATE ORDER WE RECEIVED THEM. WE
FIGURED THE PENALTY ON ANY TAX NOT DEPOSITED, DEPOSITED LATE, OR NOT DEPOSITED
IN THE CORRECT AMOUNTS.

THE FOLLOWING TABLE SHOWS THE PENALTY CHARGES ON YOUR ACCOUNT. TO COMPUTE YOUR
FAILURE TO DEPOSIT PENALTY WE USED, AMOUNT DUE X RATE.

| Due Date | Pymt Date | Days Late | Pymt Type | Rate | Amt Due | Penalty |
|---|---|---|---|---|---|---|
| 03/29/2002 | 04/04/2002 | 6 | EFT | 5% | 55,977.54 | 2,798.88 |
| | | | | Total Penalty: | | 2,798.88 |

IF YOU THINK WE SHOULD REMOVE OR REDUCE THIS PENALTY, SEE "REMOVAL OF PENALTIES -
REASONABLE CAUSE." ALSO SEE PUBLICATION 15, CIRCULAR E - EMPLOYER'S TAX GUIDE OR
PUBLICATION 51, CIRCULAR A - AGRICULTURAL EMPLOYER'S TAX GUIDE, FOR DEPOSIT
REQUIREMENTS.

REMOVAL OF PENALTIES      *Settle: 6/7/02 # 26994242*

REASONABLE CAUSE. THE LAW LETS US REMOVE OR REDUCE THE PENALTIES EXPLAINED IN
THIS NOTICE IF YOU HAVE AN ACCEPTABLE REASON. IF YOU BELIEVE YOU HAVE AN
ACCEPTABLE REASON, YOU MAY SEND US A SIGNED STATEMENT EXPLAINING YOUR REASON.
WE'LL REVIEW IT AND LET YOU KNOW IF WE ACCEPT YOUR EXPLANATION AS REASONABLE
CAUSE TO REMOVE OR REDUCE YOUR PENALTY. THIS PROCEDURE DOESN'T APPLY TO INTEREST
AND, IN SOME CASES, WE MAY ASK YOU TO PAY THE TAX IN FULL BEFORE WE REDUCE OR
REMOVE THE PENALTY FOR PAYING LATE.

ERRONEOUS WRITTEN ADVICE FROM IRS

WE'LL ALSO REMOVE YOUR PENALTY IF:

  -YOU WROTE TO IRS AND ASKED FOR ADVICE ON A SPECIFIC ISSUE,
  -YOU GAVE IRS COMPLETE AND ACCURATE INFORMATION,
  -IRS WROTE BACK TO YOU AND GAVE YOU A SPECIFIC COURSE OF ACTION TO TAKE OR
   EXPLAINED WHAT ACTIONS NOT TO TAKE,
  -YOU FOLLOWED OUR WRITTEN ADVICE IN THE MANNER WE OUTLINED, AND
  -YOU WERE PENALIZED FOR THE WRITTEN ADVICE WE GAVE YOU.

TO HAVE THE PENALTY REMOVED BECAUSE OF ERRONEOUS WRITTEN ADVICE FROM IRS, YOU
SHOULD:

  -COMPLETE FORM 843, CLAIM FOR REFUND AND REQUEST FOR ABATEMENT,
  -REQUEST THAT IRS REMOVE THE PENALTY, AND
  -SEND FORM 843 TO THE IRS SERVICE CENTER WHERE YOU FILED YOUR RETURN FOR THE
   YEAR YOU RELIED ON ERRONEOUS ADVICE FROM THE IRS.

THE THREE DOCUMENTS YOU MUST ATTACH TO YOUR FORM 843 ARE:

  -A COPY OF YOUR ORIGINAL REQUEST FOR ADVICE FROM IRS,
  -A COPY OF THE ERRONEOUS WRITTEN ADVICE FROM IRS, AND
  -A NOTICE (IF ANY) SHOWING THE PENALTY WE CHARGED THAT YOU NOW WISH US TO
   REMOVE.

THE LAW ALLOWS YOU TO TELL THE IRS WHERE TO APPLY YOUR DEPOSITS WITHIN THE TAX
RETURN PERIOD WITH A DEPOSIT PENALTY. YOU HAVE 90 DAYS FROM THE DATE OF THE
CORRESPONDENCE SHOWING THE DEPOSIT PENALTY TO CONTACT THE IRS, IF YOU WANT TO
SPECIFY WHERE TO APPLY YOUR DEPOSITS.

THE LAW ALSO ALLOWS THE IRS TO REMOVE THE DEPOSIT PENALTY IF: (1) THE PENALTY
APPLIES TO THE FIRST REQUIRED DEPOSIT AFTER A REQUIRED CHANGE TO YOUR FREQUENCY OF
DEPOSITS, AND (2) YOU FILE YOUR EMPLOYMENT TAX RETURNS BY THE DUE DATE.

NALC 116

NALC 117

URN THIS PART TO US WITH YOUR CHECK OR INQUIRY
R TELEPHONE NUMBER        BEST TIME TO CALL
 )      -

AMOUNT YOU OWE...............✓...$2,796.79

LESS PAYMENTS NOT INCLUDED.$_____

PAY ADJUSTED AMOUNT........$_____

*Paid EFT on 6/7/02*
*Settlement #26984242*

0221 03                        81141-117-00969-2

        INTERNAL REVENUE SERVICE
61      OGDEN  UT          84201-0039

NATIONAL ASSOCIATION OF LETTER
NALC HQS
100 INDIANA AVENUE N W
WASHINGTON  DC   20001-2144998

530114650 LF NATI 01 2 200203 670 00000279679

NALC 118

# Exhibit I

Memorandum

To: Jane Broendel, Secretary/Treasurer, NALC

From: Frank Sclafani, ACSYS

Re: Accounting Department, systems, personnel, work environment, etc.

Jane,

The object of this memo is to give you my perspective on the conditions in your accounting department starting with those areas I most familiar with. As you are aware, it is not always possible to be objective so please accept these opinions and recommendations as mine only and understand that there are always two sides to every story.

Software

**Accounting Database**

NALC uses a fairly old version of J.D. Edwards, a complex, non-intuitive database originally designed to meet the needs of medium to large for profit businesses. Because the database is not intuitive, the day to day accounting processes are difficult to learn, and to learn well requires expensive, time consuming outside training. The reporting tools, i.e. report creation, are very complex, and poorly documented. Even with outside training, the average user would require substantial daily trial and error to create even the simplest report. What this means in laymen terms, is that although the database is very powerful, it requires a highly proficient user to harness the power and make the database a useful accounting tool. As most of us know, to develop proficiency in anything, you have to spend a lot of time practicing, and, in some cases, you have to have a flair or talent for whatever you're doing. In the case of JD Edwards, not only do you need to know how all the daily accounting functions work, but you need to know how to create accurate, working calculation tables, and accurate working reports, how to use the query function and so on. Lastly, it also requires a highly trained user to routinely maintain the database by purging records, correcting incomplete records and data, updating periodic tables, including calc. and recalc., Federal and state tax and withholding tables, etc.

On the plus side, JDE is very versatile, a feature which probably encouraged management to select it in the first place and, as I've just been informed, even this early version of JDE has the capability to download information into spreadsheets. Downloading, as you know, enables us to manipulate the information stored in JDE, into formats outlined by the various reports NALC is required to file throughout the year. In addition, this feature allows accounting to create summary reports for management purposes with very short turnaround times. Another useful feature, is JDE's ability to create templates of recurring journal entries. Apparently, this feature was used on a limited scale in the past and not used at all recently. Currently, apart from system generated entries (journal entries generated by JDE through the payroll process), most manually prepared JE's are recurring. The ability to create templates, therefore, not only allows for data entry without having to reenter account numbers, but gives the accounting department the added bonus of not having to rethink which entries have to be made on a recurring basis; i.e. the format will be soft coded in JDE.

JDE also has a few other useful features that apparently have never been used to date, but should be explored for their utility and in at least one case definitely learned . One, is in the G/L module, the use of sub-ledgers, which can be used to breakdown accounts by individuals, and the other is in the payroll

1



**EXHIBIT NO.** 1

KY 7/11/06

module. The feature in the payroll module would allow NALC to use a single record for the employees which are listed, for whatever reason, as both employees and vendors. Currently NALC creates records in both A/P and Payroll for these people and unfortunately have used, in some cases, the records indiscriminately. This duplication of records has apparently been the source of some of your year-end problems with your attempts to create 1099's for vendors and W-2's for your employees. The last feature I think is very important is the query processes. This feature allows for near total report customization and if used properly, could satisfy 80 to 90% of NALC's outside reporting requirements.

**Spreadsheet Software:**

According to Steve Czechanski, the MIS Manager, the supported spreadsheet in the accounting department is Corels Quattro Pro. The only people that have used Quattro Pro to my knowledge are Ron and myself. Me, because Lotus 123 was not loaded on my machine for the first six weeks of my tenure, and Ron because he had to use the files I had created. Lotus 123 Version 5 is also loaded on Ron's, Charles's, and the machine I was using. In addition, a non-user, Ben Hanson, has had an advanced version of Lotus installed on his machine. Unfortunately, neither of these spreadsheet are ideal for the accounting department. Both are keystroke intense when creating long columns of numbers. In laymen's terms, the cursor will not advanced to the next specified cell when entering numbers. This lack of versatility, has meant that most good accounting departments do not use either of these spreadsheets. In addition, Lotus 123 is not supported by the MIS department, though I don't know what that really means in practical terms. My recommendation is that all spreadsheet users in accounting be allowed to use Microsoft Excel. Apart from the reasons outlined above, Excel can also be used to create Macro's to upload Journal Entries into JDE. I have confirmed this with our JDE consultant and now have a contact person who has already created macro's to accomplish this specific task. Lastly, I would recommend that all the accounting staff develop an expertise in spreadsheet creation and use.


### Personnel

The structure of NALC's accounting department is pretty straightforward and follows the typical business pyramid, i.e., Dir. of Finance, Acct'g Manager, A/P & A/R Clerks, and support staffer(s), (Harold). In theory, an organization of this size should have all accounting personnel well versed in accounting theory and practice and all personnel should have an expertise in their areas of responsibility on the accounting database. In addition, because this is an accounting department, all personnel should be versed in at least one of the commonly used business spreadsheet applications, i.e. Excel, Lotus 123 or Quattro Pro, though, as stated above, I prefer Excel.


**By Position:**

Director of Finance:

Mr. Ronald Stubblefield appears to be a qualified accountant well versed in accounting theory and practice and in addition he holds a CPA credential.. He has the demonstrated ability to tackle complex accounting problems and to arrive at workable accounting solutions if given enough time and resources. . He is also cognizant of the shortcomings of his staff and his own lack of database experience and expertise His spreadsheet skills are good. His principal weaknesses are poor people skills and poor leadership/management skills, deficiencies that have unfortunately led to adversarial relationships with staff and supervisor, and have led to a lack of vision as to where the accounting department should go and how to get it there in a positive, constructive manner. Other observed weaknesses, include a disorganized approach to his General Journal and an aversion to trying new or advanced solutions to accounting problems including the employment of the existing technology at NALC. This, unfortunately has led to extended periods of time to complete projects and his daily workload has suffered as a result.

2

**Accounting Manager:**

This number two position is currently held by Mr. Charles Royall whose accounting abilities, in my opinion, are suspect. His work, unless actively supervised is often incomplete or not timely, and in too many cases, inaccurate. He has a demonstrated unwillingness to take on, much less complete the tasks assigned to him by the Director of Finance or anyone else. His analytical skills are poor, as is his attention to detail unless directly pointed out by a supervisor. Over the period of observation, the Director of Finance has relied on him less and less. Mr. Royall's lack of ability, real or feigned has had, and will continue to have, a major detrimental effect on the work flow in the department.

**Accounts Payable:**

This position is currently held with competence by Ms. Linda DeCarlo. I have observed no deficiencies. To the contrary, Linda, has not only quickly learned the position held by Chris Tarbrake and also competently trained Sonya, a temporary holding Linda's former position managing COLCPE cash receipts. She seems to have some accounting background and fundamental spreadsheet skills.

**Accounts Receivable:**

This position is held by Mr. Ben Hanson with some competence. It is still unclear to me how much he actually does. The deposits really don't amount to much, so he must be doing some work with cash receipts data entry or with the health plan membership and/or vendors. He seems to have a lot of free time on his hands, which is often spent on long conversations with collegues and friends or spent surfing the internet, to which he has private access. He has no spreadsheet skills and may have fundamental accounting skills. He is a long time employee who is .generally cooperative and competent within his area of expertise. He also seems to have been assigned other duties in the past.

**Payroll:**

This position is held with competence by Mrs. Suk Neidlinger. Suk has an intuitive knowledge of both the payroll function and the database. Since she has been doing this for a long time, she is experienced and can be relied upon to complete her work in a timely manner. She has no spreadsheet skills and perhaps some accounting background. She is cooperative, and pursues payroll problems aggressively.

**Mr. Harold Isbell:**

I don't need to go into Mr. Isbell's background, it is well known. Both you and Ron have told me that his institutional knowledge has proven useful. He has a very positive attitude, but his database and spreadsheet skills are poor,. so much of what he accomplishes is done manually or very slowly. His accuracy is not what it should be, but given his age and physical health, it's understandable. I would recommend that his current duties be passed on to someone in better health.

## Other workflow issues

Currently the analytical burden for most of the work outside of A/P, A/R and weekly payroll processes rests with the Director of Finance. He stated to me from the onset of my assignment at NALC that no support staffer save Charles Royall could be asked to provide assistance. In actuality, the opposite has proven true. All the support staff have answered all and any questions they have been able to answer. The problem lay not with the staff, but with the lack of established lines of communication between Ron and everyone else. Charles initially was not of much use since he was too new to the job. (He started in

3

February and I started in April. Over the next few months he began organizing his duties, but with no coherent approach. Both Ron and myself have stressed to Charles the importance of organizing and saving his work in worksheets they can be used for reports and audit schedules in the future. He has paid very little attention to these requests, the result being that much of the lost information will have to be rekeyed in the near or distant future to generate required reports. Given that Ron has been unwilling at times to properly explore the potential of JDE, most of the processes used on JDE are very primitive. Examples are reports or trial balances prepared by printing screens. This approach is wasteful and frustrating. In addition, instead of finding ways of creating reports with needed information from JDE, he has often opted to simply print huge unconsolidated reports on the band printer and then instruct me to extract the needed information both from the report and JDE screens or files simultaneously. A better instruction would have been to assign me with the task of finding the quickest and easiest way to accomplish the task. Suggestions to that effect were rebuffed.

To his credit he has mastered the process of printing checks and as he has stated in the past, he needed JDE training, so perhaps his solutions to problems can be excused. Ron has also expressed a discomfort with printing his reports on the printers in the MIS department. My recommendation to some of the printing issues is to establish a rapport with either Steve Czechanski, Jim DeLio or Dale Molina. All of these MIS people have been very cooperative with my requests and would probably go out of their way to handle some of Ron's problem's too.

**A Database Issue**

It has come to my attention during my training sessions that JDE's print queues are double threaded instead of the customary single thread. I have been informed that double threading the print queus often result in print job conflicts and system lockdowns. I will inform Steve of this when he returns and will put him in contact with a JDE consultant who can help him remove the double thread and convert the system to single thread print queues.

**The Workplace**

Most of the workplace issue's center around the poor temperature control and in at least one case, an office that should not be an office (Charles's office). Thus far, the only office in the accounting department proper that maintains an ambient working temperature is Ron's. Where I, and the remainder of the accounting staff sit is poorly cooled and overly stuffy, most of the time. A simple solution would be to eliminate the cubicle arrangement and create a more open space, thus allowing better airflow.

**Solution's from above – let's do it in RPG**

RPG –3 and RPG –4 are the programming languages used to create JDE. Apparently, some of the JD Edwards consultants are also programmers. Being aware of the complexities inherent in JDE's report writing capabilities, led me to pose the question as to how difficult and how long would it take to create custom reports in RPG. The answer was not very long at all (one to four hours). Therefore, one of the solutions to completing some of the more onerous reports NALC is currently required to fulfill, is to simply hire a programmer to create a one time only report with "fill in the blanks" capability. Cost? $200 to $800, and its only a one time expense.

**Updates and System Integrity Checks**

It is my understanding that the MIS department is supposed to provide JDE support for accounting. According to Jim DeLio this includes system updates (as provided by Vertex, an outside service provider for JDE updates) and system integrity checks, which should be done monthly. I think, that once the Director of Finance has his arms around the basic accounting requirements, that he should also perform the

4

system integrity checks. This would enable him to verify the validity of the monthly data and then further enable him to close the books on a monthly basis. The current situation is that the books have not been closed since July 2001 and there are numerous files missing headers and other nonsuch that should be repaired or cleaned up. If time is a constraint, a simple solution would be to bring in a JDE consultant for one or two days to bring the database up to date.

### An argument for internet connectivity

One of the features of most good databases, be they accounting or otherwise, is that a user can obtain support and download updates online. Currently only Ron, Charles and Ben Hanson have internet connectivity, and I believe all are private accounts. I cannot say how fast Ben's internet connection is as I have never used it, but I do know that Ron's is no faster than 19800 bps. That's too slow to do anything but the most modest downloads, such as IRS or State tax forms. A better solution would be to install a 56k modem on the Director of Finance's computer and allow him to download JDE solutions, as well as tax forms and the like as quickly as possible.

### My God, am I not finished yet?

Yes, this about wraps it up. My object was to give you some kind of feedback while I was still here. There is no reason why this department cannot be the best in NALC (or anywhere else for that matter). The trick is to work smarter, not harder, go home early and enjoy life knowing that all accounting problems have solutions and they can be met quickly and accurately with a little planning.

Cordially,
Frank

5

# Exhibit J

# Race

*① Not doing my job        (Late
                            Two Times)
*② Unqualified              (Fired) 5L
                            she Docos
*③ Unhappy        Dirk → Abated
                            10-20 people
④ Son's Feet (union work)
⑤ Lippy
⑥ Ignored ⌊me
          ⌊Ben  } Both Black
                    I. C.
                    Dorsey
⑦ Praining J.D. Edwards
⑧ Brenda Wood  1968 1st a firing
  Noble,           Had Something
⑨ Fired From A union Shop
⑩ All ~~the~~ positions are (White)
Replacements

Ⓐ Frank E.  Ⓓ Steve
Ⓑ James Delio
Ⓒ Carol Esterbrook

Royall
EXHIBIT NO. 17
KY 7/21/06