IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHARLES ROYALL**<br><br>**Plaintiff**<br><br>v.<br><br>**NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL-CIO**<br><br>**Defendant** | Civil Action No. 1:05cv01711 (RBW) |

**PLAINTIFF''S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO
<u>DEFENDANT''S MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Charles Royall (hereafter "Mr. Royall" or "Plaintiff") hereby opposes Defendant National Association of Letter Carriers, AFL-CIO (hereafter ""NALC"" or "Employer") Motion for Summary Judgment. The most salient facts have been omitted; and the facts relied upon are largely disputed (as more fully set out in Plaintiff''s Statement of Disputed Facts, which addresses *ad seriatim* each ostensible fact asserted by NALC). When all the facts are considered in the light most favorable to Mr. Royall, as they must, it is certain that a reasonable jury can properly infer that his employment was terminated because of his race; and Defendant''s motion must be denied.

## INTRODUCTION

Before this Court is Mr. Royall's claim under 42 U.S.C. §1981, asserting that his employment with NALC was terminated because of his race (African American). NALC has filed for summary judgment claiming Plaintiff has (1) adduced no direct evidence of

discrimination; (2) has failed to put forth a *prima facie* case; (3) has failed to demonstrate that the reasons for his discharge are pretextual; and (4) Defendant is entitled to a ""same actor"" inference.

In doing so, NALC ignores the following facts:

(1) Despite the fact that many of the accusations against Mr. Roayll involve documented accounting records, documents have been produced for only two instances of shortcomings. Both occurred months before his termination, and he was neither warned, nor counseled about either.

(2) Claims of other errors were first revealed to Mr. Royall during the course of this litigation, are based largely on hearsay, are entirely uncorroborated, and are contrary to Mr. Royall's corroborated statements regarding his performance;

(3) According to now Finance Director Francis Scalfani, records which would document errors ostensibly committed by Mr. Royall disappeared from a locked storage area at NALC headquarters;

(4) The employee who succeeded Mr. Royall, viz., James Delio (Caucasian) was entirely unqualified and unable to retain the position. Nonetheless, Mr. Delio, unlike, Mr. Royall, was not terminated.

(5) The decision to hire Mr. Royall was primarily made by then Director of Finance Ronald Stubblefield's (African American), while the decision to terminate him was largely based on a report by Mr. Sclafani (Caucasian), who at that time he made the report was a temporary employee.

### IT IS AXIOMATIC THAT DISCRIMINATION MAY BE PROVEN BY EITHER DIRECT OR CIRCUMSTANTIAL EVIDENCE. DEFENDANT"S ASSERTION THAT PLAINTIFF HAS ADDUCED NO DIRECT OF EVIDENCE IS OF NO CONSEQUENCE.

Defendant begins its argument by claiming that Plaintiff has adduced no direct evidence of discrimination. Whether so or not, discrimination can be proven soley by circumstantial evidence.

> "In addition, Title VII's silence with respect to the type of evidence required in mixed-motive cases also suggests that we should not depart from the '[c]onventional rul[e] of civil litigation [that] generally appl[ies] in Title VII cases.' [citation omitted] That rule requires a plaintiff to prove his case ""by a preponderance of the evidence,"" [citation omitted] using 'direct or circumstantial evidence,' *Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 714, n. 3, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). We have often acknowledged the utility of circumstantial evidence in discrimination cases. For instance, in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), we recognized that evidence that a defendant's explanation for an employment practice is 'unworthy of credence' is 'one form of circumstantial evidence that is probative of intentional discrimination.' Id., at 147, 120 S.Ct. 2097 (emphasis added). The reason for treating circumstantial and direct evidence alike is both clear and deep rooted: **'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.'** *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508, n. 17, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957).

*Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148 (2003). Emphasis added.

### PLAINTIFF HAS ESTABLISHED A *PRIMA FACIE* CASE. DEFENDANT"S CLAIM THAT HE HAS NOT IS SPECIOUS.

The elements of a *prima facie* case claiming discriminatory termination of employment are: (1) membership in a protected class; (2) satisfactory performance; (3) termination of employment; and sometimes (4) replacement by an individual who is not a member of plaintiff''s protected class.

> "*McDonnell Douglas* and subsequent decisions have 'established an allocation of the burden of production and an order for the presentation of proof in ····· discriminatory-treatment cases.' *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742,

125 L.Ed.2d 407 (1993). First, the plaintiff must establish a *prima facie* case of discrimination. *Ibid.*; *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)."

**Reeves v. Sanderson Plumbing Products, Inc.**, 530 U.S. 133, 148, 120 S.Ct. 2097 (2000).

It is undisputed that Plaintiff is an African American, that he was terminated and that he was replaced by a Caucasian. The quality of his performance is very much disputed -- Defendant claiming that he was fired for poor performance, and Plaintiff adducing evidence to show that the charges against him are false. Because there is sufficient evidence to create a genuine dispute about both the quality of his performance and the employer"s standards and expectations, Defendant is precluded from obtaining summary judgment.

### AN INFERENCE OF DISCRIMINATION CAN BE DRAWN FROM THE FACT THAT DEFENDANT'S PROFFERED REASON FOR TERMINATING PLAINTIFF ARE UNSUPPORTED BY EVIDENCE AND ARE FALSE.

Once a plaintiff states a *prima facie* case the burden shifts to defendant to "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Burdine, supra*, at 254, 101 S.Ct. 1089. This burden is one of production, not persuasion; it 'can involve no credibility assessment.' *St. Mary's Honor Center, supra*, at 509, 113 S.Ct. 2742."

Here Defendant claims that Plaintiff failed to perform to its satisfaction in numerous ways.

First, although Plaintiff was employed as accounting manager -- a job in which essentially every action involves generating a document -- Defendant cannot produce more than two documents to support its claims. In each case withholding taxes were remitted a day or a few

days after the due date.

Moreover, Mr. Sclafani, whose derogatory memorandum about Mr. Royall's performance, set his termination in motion, testified -- incredibly -- that records which would support the allegations against Plaintiff were discovered to be missing from a locked storage room on Defendant''s premises. How this may have occurred has gone entirely unexplained.

Second, the lapses in performance attributable to Plaintiff had been previously tolerated by Defendant. Withholding taxes which were to be remitted during several periods <u>before</u> Plaintiff''s employment began were ignored for months, without consequence to any NALC employee. In fact, much of Mr. Royall's work involved clearing up the backlog and delinquencies created by others.

Third, although claiming that Plaintiff''s failures occurred repeatedly over a considerable period of time -- almost daily according to NALC President James Young -- there is no documentary evidence that Mr. Royall was counseled or warned, while there is documentary evidence that Defendant acknowledged Plaintiff''s good performance. The only document bearing on Plaintiff's allegedly deficient performance is an undated memorandum prepared by Mr. Sclafani, who at the time it was purportedly composed was a temporary employee.

The only testimonial evidence are the self-serving post-litigation accusations by President Young, Secretary Treasurer Jane Broendel and Mr. Sclafani – all which is denied by Mr. Royall. Absent from this discussion is any evidence – documentary or testimonial – from Mr. Royall's immediate supervisor, Ron Stubblefield.

Fourth, Mr. Sclafani''s animus toward Plaintiff is underscored by his scurrilous accusation that Plaintiff impugned Secretary Treasurer Blondell, Defendant's second highest

officer, and the officer having direct oversight of Plaintiff's work.

> [O]nce the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision **[the plaintiff] must be afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'** *Ibid.*; see also *St. Mary's Honor Center, supra*, at 507-508, 113 S.Ct. 2742. That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.' *Burdine, supra*, at 256, 101 S.Ct. 1089. Moreover, although the presumption of discrimination ""drops out of the picture"" once the defendant meets its burden of production, *St. Mary's Honor Center*, supra, at 511, 113 S.Ct. 2742, **the trier of fact may still consider the evidence establishing the plaintiff's *prima facie* case 'and inferences properly drawn therefrom ····· on the issue of whether the defendant's explanation is pretextual'**, *Burdine*, supra, at 255, n. 10, 101 S.Ct. 1089.
>
> "[I]t is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation. Specifically, we stated:
> ""The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie case*, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination."" Id., at 511, 113 S.Ct. 2742.
> ""**Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.** See id., at 517, 113 S.Ct. 2742 (""[P]roving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination""). **In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as ""affirmative evidence of guilt.""** [Citations omitted.] **Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.** Cf. *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

## THE ARGUMENT THAT PLAINTIFF''S CLAIM IS UNDERMINED BY THE ""SAME ACTOR"" INFERENCE IS BASED ON A FALSE PREMISE AND IS UNAVAILING. MR. SCLAFANI, NOT PRESIDENT YOUNG, WAS THE KEY ACTOR IN PLAINTIFF''S TERMINATION.

Defendant asserts that because Plaintiff was hired by NALC President William Young, and fired by him, as well, that his claim of discrimination is undercut by the ""same actor"" inference. Were this true, Defendant would be entitled to the rebutable inference that Young, who demonstrated a lack of racial animus by hiring Plaintiff would not be motivated by such animus when terminating Plaintiff.

"In *Wexler v. White's Fine Furniture*, 317 F.3d 564 (6th Cir.2003) (*en banc*), this Court considered the weight appropriately to be given to the inference. Recognizing a split of authority, the Court sided with those circuits who 'have minimized the importance of the same-actor inference, emphasizing that although a court may infer an absence of discrimination where the same individual hired and fired the plaintiff, such an inference is not required.' Id. at 573. Thus, **the Court held that the inference is not mandatory, and indeed 'it is insufficient to warrant summary judgment for the defendant if the employee has otherwise raised a genuine issue of material fact.'** Id. at 573-74.' *Mischer v. Erie Metro Housing Authority*, 168 Fed.Appx. 709 (6th Cir. 2006). Since he was instrumental in both hiring and firing the Plaintiff, an inference against discrimination on his part, even if limited, exists. See *E.E.O.C. v. Our Lady of Resurrection Med. Ctr.*, 77 F.3d 145, 152 (7th Cir.1996) ('The same hirer/firer inference has strong presumptive value'); **but cf *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 745 (7th Cir.1999) (noting that the same-actor inference is unlikely to be dispositive in**

**very many cases because the hiring and firing supervisor ""might be unaware of his own stereotypical views of African-Americans at the time of hiring"").""**

*Keri v. Board of Trustees of Purdue University*, 458 F.3d 620 (7th Cir. 2006). Emphasis added.

The facts in the case at bar, however, are: (1) President Young's role in both instances was *pro forma*; (2) Finance Director Ron Stubblefield, who like Plaintiff is African American, hired Plaintiff; and Stubblefield's soon-to-be successor caused him to be fired. In the first instance, President Young "rubber stamped" Stubblefield''s decision; in the second he was Scalfani's "cat's paw".

> "Other courts have recognized claims under Title VII based on the bias of a subordinate, often using the terms 'cat's paw' or 'rubber stamp' to describe the theory. The cat's paw doctrine derives its name from a fable, made famous by La Fontaine, in which a monkey convinces an unwitting cat to pull chestnuts from a hot fire. See *Fables of La Fontaine* 344 (Walter Thornbury trans., Chartwell Books 1984). As the cat scoops the chestnuts from the fire one by one, burning his paw in the process, the monkey eagerly gobbles them up, leaving none left for the cat. *Id.* Today the term ""cat's-paw"" refers to ""one used by another to accomplish his purposes."" *Webster's Third New International Dictionary Unabridged* 354 (2002). **In the employment discrimination context, ""cat's paw"" refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action.** *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir.1998). The ""rubber stamp"" doctrine has a more obvious etymology, and refers to a situation in which a decisionmaker gives perfunctory approval for an adverse employment action explicitly recommended by a biased subordinate. See *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 288 (4th Cir.2004) (*en banc*). [Citations omitted except for: **Griffin v. Wash. Convention Ctr., 142 F.3d 1308, 1311-12 (D.C.Cir.1998).**""
> *E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 484-485 (10th Cir. 2006). Emphasis added.

**AFTER PLAINTIFF WAS TERMINATED HE WAS REPLACED BY AN UNQUALIFIED INDIVIDUAL OF A DIFFERENT RACE. THIS FACT ALLOWS A FACT FINDER TO REASONABLY CONCLUDE DISCRIMINATORY ANIMUS.**

In the instant case, Mr. Royall was replaced by James DiLeo. Mr. DiLeo was transferred from NALC's information technology department, had little accounting training or experience and was soon removed from the position.

> "Under this Court's decisions, qualifications evidence may suffice, at least in some circumstances, to show pretext. See *Patterson v. McLean Credit Union*, 491 U.S. 164, 187-188, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (indicating a plaintiff 'might seek to demonstrate that respondent's claim to have promoted a better qualified applicant was pretextual by showing that she was in fact better qualified than the person chosen for the position'), superseded on other grounds by 42 U.S.C. §§ 1981(b); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 259, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ('The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination'); cf. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) ('A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated').

> "The visual image of words jumping off the page to slap you (presumably a court) in the face is unhelpful and imprecise as an elaboration of the standard for inferring pretext from superior qualifications. Federal courts, including the Court of Appeals for the Eleventh Circuit in a decision it cited here, have articulated various other standards, see, e.g., *Cooper*, supra, at 732 (noting that ""disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question"" (internal quotation marks omitted)); *Raad v. Fairbanks North Star Borough School Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003) (holding that qualifications evidence standing alone may establish pretext where the plaintiff's qualifications are "" ''clearly superior'' "" to those of the selected job applicant); *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1294 (D.C. Cir.1998) (*en banc*) (concluding the factfinder may infer pretext if ""a reasonable employer would have found the plaintiff to be significantly better qualified for the job""), and in this case the Court of Appeals qualified its statement by suggesting that superior qualifications may be probative of pretext when combined with other evidence, see 129 Fed. Appx., at 533.

*Ash v. Tysons Food*   U.S.   at 1197, 1198

## CONCLUSION

As more fully set out in Plaintiff's "Statement of Material Facts to Which there is a Genuine Dispute", there is abundant evidence from which a jury can reasonably conclude that Mr. Royall performed well, that the attack on his performance was fabricated for purposes of defending this suit. that he was held to a different standard and expectation of performance than either his predecessors or successor who were Caucasian, and that his employment was terminated because of his race (African American).

For these and such other reasons as may become known to the Court, Defendant's Motion for Summary Judgment should be denied.

Respectfully Submitted,

Thomas J. Gagliardo
Attorney for Plaintiff
D.C. Bar No. 192575
8401 Colesville Road, Suite 315
Silver Spring, Maryland 20910-3312
301 589 1900 fax 301 589 1985

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above was sent by first-class mail, postage prepaid, unless otherwise noted, this 16th day of NOVEMBER 2006 addressed to the following:

       Peter Herman, Esq.
       Cohen Weiss and Simon LLP
       Attorneys for Defendant
       33o West 42nd Street
       New York, New York 10036

       Victoria L. Bor. Esq.
       Sherman, Dunn, Cohen, Leifer & Yellig, P.C.
       Attorneys for Defendants
       900 Seventh Street, N.W., Suite 1000
       Washington, D.C. 20001

                                     Thomas J. Gagliardo