IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHARLES ROYALL** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**NATIONAL ASSOCIATION OF** )<br>**LETTER CARRIERS, AFL-CIO** )<br>)<br>**Defendant.** )<br>_____ ) | Civil Action No. 1:05cv01711(RBW) |

### PLAINTIFF'S STATEMENT OF MATERIAL DISPUTED FACTS

Plaintiff, Charles Royall, by and through undersigned counsel, and in support of his Opposition to Defendant National Association of Letter Carriers, AFL-CIO (hereinafter "NALC")'s Motion for Summary Judgment provides the following statement of material facts as to which there are genuine issues precluding a grant of Summary Judgment to Defendant.

### A. INTRODUCTION

Before this Court is Mr. Royall's claim under 42 U.S.C. §1981, asserting that his employment with NALC was terminated because of his race (African American). NALC has responded by claiming that Mr. Royall's performance did not meet expectations, citing a number of ostensible errors on this part.

In doing so, NALC ignores the following facts:

(1) The only documented errors occurred months before Mr. Royall's termination, and no warning or counseling took place, nor was discipline imposed because of those errors;

(2) Claims of other errors are based largely on hearsay, are entirely uncorroborated, and are contrary to Mr. Royall's corroborated statements regarding his performance;

(3) According to now Finance Director Francis Scalfani (Caucasian), records which would ostensibly document errors committed by Mr. Royall disappeared from a locked storage area at NALC headquarters;

(4) The employee who succeeded Mr. Royall, viz., James Delio (Caucasian) was entirely unqualified and unable to retain the position. Nonetheless, Mr. Delio, unlike Mr. Royall, was not terminated.

(5) The decision to hire Mr. Royall was primarily made by then Director of Finance Ronald Stubblefield (African American), while the decision to terminate him was largely based on a report by Mr. Scalfani (Caucasian).

We now address *ad seriatim* those Material Facts set forth in the Employer's Statement for which there is a genuine dispute, documenting for each the basis of the dispute.

**Defendant's Paragraph 10:** The decision to hire Mr. Royall was not made by William Young (Caucasian), with the concurrence of Jane Broendel (Caucasian) and Ronald Stubblefield (African American). In his deposition, Mr. Young stated, "I'll be candid about it. Basically....I let Stubblefield decide." **Exhibit 1**, Deposition of William Young, Page 10, Lines 7 – 13.

**Defendant's Paragraph 11:** Mr. Royall never stated to NALC officials that he knew the JD Edwards payroll software program. Rather, he stated that he had prior experience with integrated accounting information systems and felt that he could learn

2

the JD Edwards program quickly.  Mr. Royall did not have data entry responsibility for payroll until after the resignation of Chris Tarbrake in June 2002, more than three months subsequent to his date of hire.  **Exhibit 2,** Plaintiff's Affidavit.  See also, **Exhibit 3,** Memo from Ronald Stubblefield to Jane Broendel dated June 17, 2002, stating "JD EDWARDS TRAINING AWAITING APPROVAL.  I WOULD LIKE TO DISCUSS THIS WITH YOU IN LIGHT OF SUK'S UPCOMING VACATION (WEEK STARTING JULY 15, 2002 AND CHRIS (BACKUP) NO LONGER HERE."

**Defendant's Paragraph 15:**   When Plaintiff was hired on February 25, 2002, his position had been vacant since August 31, 2001 so that the backlog related primarily to tax reporting and filings for 2001 for which Plaintiff could not have been responsible in creating.  See, **Exhibit 4,** NALC Tax Notice Summary.

**Defendant's Paragraph 16:**  Sukja Neidlinger, the payroll accounting clerk, was "obligated to produce payroll timely and accurately."  Chris Tarbrake was the back-up accounting clerk. Mr. Royall was their supervisor.  Payroll taxes had not been filed during the six-month vacancy in the Accounting Manager position, so that as an initial matter, Mr. Royall was required to negotiate and settle late penalties and interest that had accumulated on unpaid payroll taxes and other state tax filings.  In his deposition, William Young stated, "I think that's accurate.  Again ….I want to be fair here because I wouldn't be surprised if because we had no one in his position for a period of time. So that would not shock me if when he came in there was a backlog."  **Exhibit 5,** Deposition of William Young, page 33, Lines 6 – 10.  Mr. Royall's job duties did not include actual payroll production until this task was assigned to him in June 2002.  **Exhibit 2,** Plaintiff's Affidavit, **Exhibit \_\_\_,** Memorandum from Ronald Stubblefield.

3

**Defendant's Paragraph 17:** Due the lack of a written job description for Mr. Royall's position, Mr. Royall performed the duties assigned to him by Ronald Stubblefield, Harold Isbell, and Jane Broendel. Mr. Royall understood that assigned tasks were to be completed as soon as possible. **Exhibit 2,** Plaintiff's Affidavit.

**Defendant's Paragraph 20:** Attached is a Memo from Mr. Stubblefield to Mr. Royall assigning a task on one day on which it is indicated that the task was completed the following day. See **Exhibit 6**, Memo from Ronald Stubblefield to Charles Royall dated June 20, 2002, requesting a payroll adjustment for Alan Apfelbaum.

**Defendant's Paragraph 20:** Ronald Stubblefield never made suggestions to Mr. Royall on how to complete his work. **Exhibit 2,** Plaintiff's Affidavit.

**Defendant's Paragraph 20:** Mr. Royall followed the directions of his supervisors. At **Exhibit 7** appears a report from Mr. Royall to Jane Broendel on the NALC Health Benefit Plan. Mr. Royal had prepared the report in the same manner as the Accounting Manager who preceded him. The report was returned by Jane Broendel with a request to provide detailed information backing up the payment total. Mr. Royall submitted this information the following day, and it was approved by Broendel three days later.

**Defendant's Paragraph 21:** William Young did not have between five and ten meetings with Ron Stubblefield regarding why things were not getting done. In his deposition, William Young stated, that to the extent such discussions took place, it would have been by telephone and that he had no notes of any of these discussions. See **Exhibit 8,** Deposition Testimony of William Young, Page, 22, Lines 17 – 22 , Page 23, Lines 1 – 7 and Page 24, Lines 15 - 17.

4

**Defendant's Paragraph 25:** Sukja Neidlinger's (Asian) testimony that it took her two months to teach Plaintiff basic payroll is contradicted by Plaintiff, who testified. See also **Exhibit 9**, Deposition Testimony of Sukja Neidlinger at page 14, lines 10 - 19 wherein she admits that two months was an exaggeration. She stated, "You know, I can't say every single day," in response to the question, "When you say everyday, how many hours a day [during the two month period]?"

**Defendant's Paragraphs 25:** Ms. Neidlinger felt territorial about the NALC payroll, given her 10-year tenure as payroll clerk. She referred to it as "her payroll" and was reluctant to share with Mr. Royall her knowledge of how the payroll was processed, even though he was her supervisor. She state, "For instance, he wants to learn MY payroll, and it took like over two months for me to teach him MY payroll, basic payroll. [Emphasis added]. **See Exhibit 10**, Deposition Testimony of Sukja Neidlander, Page 13, Lines 13 – 16.

**Defendant's Paragraph 25:** Ms. Neidlinger wanted, and formally applied for, a pay increase to teach Mr. Royall and therefore had a motive to misrepresent Mr. Royall's level of competence. See **Exhibit 11**, Neidlinger Deposition, Page 30, 1 – 8.

**Defendant's Paragraph 25:** Contrary to her testimony that Mr. Royall was incompetent, Ms. Neidlinger later admits that he successfully completed the payroll during her vacation and finally concedes that she, too, makes mistakes. See, **Exhibit 12**, Neidlinger Disposition, Page 27, Lines 17 – 22 and Page 28, lines 1 – 19.

**Defendant's Paragraph 26:** To rebut Ms. Neidlinger's claim that she had to instruct him, Plaintiff attaches three Memoranda of instructions he provided to Ms. Neidlinger. **Exhibit 13**, Memoranda from Mr. Royall to Ms. Neidlinger, instructing her

5

how to make changes to hourly rates, how to change a DBA code in the JD Edwards system and how to set up a deduction for a loan from the Thrift Saving plan.

**Defendant's Paragraph 29:**   NALC officers did not complain about various payroll problems…every single day. As William Young conceded in his Deposition at Page 59, lines 13 – 19, "I'm just saying there were…Look, here is how I felt about this…it seemed like, almost every day. It probably wasn't, but that's what it seemed like." **Exhibit 14.**

**Defendant's Paragraph 30:**   Other than the uncorroborated hearsay testimony of William Young, no proof has been provided that Al Ferranto made a complaint that his voluntary contributions to the federal thrift savings plan (TSP) were not being appropriately forwarded by Mr. Royall. **Exhibit 2,** Plaintiff's Affidavit.

**Defendant's Paragraph 31:**   Other than the uncorroborated, hearsay testimony of William Young, there is no evidence that two or three other NALC officers complained about errors by Mr. Royall. **Exhibit 2,** Plaintiff's Affidavit.

**Defendant's Paragraph 32:**   There is no documentation or other corroboration for William Young's allegation that he was in jeopardy of losing benefits is uncorroborated and there is no evidence that Mr. Royall was the cause of it. **Exhibit 2,** Plaintiff's Affidavit.

**Defendant's Paragraph 33:** Jane Broendel alleged that Steven Hult made a complaint but has, to date, failed to provide any proof of same. **Exhibit 2,** Plaintiff's Affidavit.

**Defendant's Paragraph 34:**   The deductions made from James Sauber's paycheck for the purchase of Savings Bonds occurred in 2001, prior to Plaintiff's

6

employment. Plaintiff not only made the back payment but also arranged for the bond purchase date to be backdated so that Mr. Sauber would not lose the interest. See. **Exhibit 15**, Emails dated April 2, 2002 from James Sauber to Ronald Stubblefield and from Jane Broendel to Ronald Stubblefield, commending Mr. Royall for doing a good job.

**Defendant's Paragraph 37.** Each of these allegations is untrue: 1) that Mr. Royall could not answer Chris Tarbrake's questions; and 2) that Mr. Royall failed to provide guidance to Chris Tarbrake, the accounts payable clerk. See **Exhibits 16 A – D**, Memoranda that Mr. Royall relied on during his employment at NALC to answer questions: A) Accounts Payable Duties; B) Check Processing Steps; C) Batch Items; D) Six-page documentation of Mr. Tarbrake's failure to include Ronald Stubblefield and Linda Stewart on eye health insurance from August 31, 2001 through February 25, 2002, even though their enrollment forms were dated July 2, 2001 and August 28, 2001, respectively. This is an example of the kind of discoveries Mr. Royall made when he began employment with NALC and of the guidance that he provided to Chris Tarbrake. Mr. Royall explained to Tarbrake that because he (Tarbrake) had reviewed the invoice and paid it he therefore should have known that there were uncovered employees in the office. Mr. Royall spent an entire day helping Tarbrake to reorganize the accounts payable files and helped him to carry old files to the basement, instructing him to lock the door. **Exhibit 2**, Plaintiff's Affidavit.

**Defendant's Paragraph 38.** Quite apart from the dubiousness of the statement that Dale Molina, an employee in the Information Technology Department, had the "responsibility" for Annuity Trust Fund Payments, Mr. Royall always provided the

7

Annuity Trust Fund report to Dale Molina on time, and sometimes before the report was due. See **Exhibit 17**, the Annuity Trust Fund Report for Pay Period # 8, 2002.

**Defendant's Paragraph 38.** Jane Broendel did not tell Mr. Royall that Dale Molina complained about him. Mr. Royall reported to Jane Broendel that the Secretary-Treasurers in the locals were sometimes failing to get their reports in on time. See, **Exhibit 18**, Broendel letter of admonition to the locals dated June 27, 2002, asking that they make timely submission to Mr. Royall. See also, **Exhibit 19**, Mr. Royall's fax to Keith Proctor/Dale Molina, sent despite being terminated, establishing that he prepared the Annuity Trust Fund Report early, i.e., on August 26, 2002, for submission on August 30, 2002.

**Defendant's Paragraph 39.** Even if William Young's uncorroborated hearsay statement that Mark Eagen said NALC was losing its reputation as an organization because bills were paid late, NALC has provided no documentation of a late invoice with a canceled check to show such late account payment for which Mr. Royall is responsible. Moreover, neither Ronald Stubblefield nor Jane Broendel ever told Mr. Royall that there was a problem paying bills late. The opposite is true: Ronald Stubblefield told Mr. Royall that the two of them need not be concerned "about bills being paid or payroll because NALC had a lot of money." See, **Exhibit 2**, Plaintiff's Affidavit.

**Defendant's Paragraph 40.** The allegation that Mr. Royall did not personally resolve Sean McCormally's bond problem and that of others is false. Attached are documents that establish he did. See, **Exhibit 20 a – e.**: a) Emails between Ronald Stubblefield and Jane Broendel, thanking Mr. Royall for completing the work but

8

were needed when she did the payroll herself. **Exhibit 27,** Neidlinger Deposition, Page 27, Lines 17 – 20, Page 28, Lines 1 -14.

**Defendant's Paragraph 47.** To the extent that Sclafani did any of the work claim in Paragraph 47, it was the result of an appropriate distribution of work amongst the staff and was not the result of any fault on Mr. Royall's part. **Exhibit 2.**

**Defendant's Paragraph 48.** Mr. Royall denies that Mr. Sclafani assisted him in selecting and printing reports. **Exhibit 2,** Plaintiff['s Affidavit and **Exhibit 28,** Plaintiff's notes on selecting and printing reports.

**Defendant's Paragraph 49.** Plaintiff denies that he had responsibility for preparing audit reports. **Exhibit 2,** Plaintiff's Affidavit. Audit reports were the responsibility of Sclafani. **Exhibit 29.** Sclafani Deposition, Page 17, Lines 12 – 22, and Page 18 Lines 1 -12.

**Defendant's Paragraph 50.** On April 30, 2002, Ronald Stubblefield wrote to Jane Broendel, "Had to complete quarterly consolidated 941/940s . Charles Royall was not oriented to this yet. To avoid penalties, I completed." Sclafani's testimony that he did this task is contradicted by this memo. **Exhibit 30.**

**Defendant's Paragraph 51.** Mr. Royall was never counseled or warned, much less informed, of any deficiencies in his performance. No documentation has been provided to establish which tasks were not performed on time. Samples of work completely in a timely manner are attached. **Exhibit 2.** Plaintiff's Affidavit. .

**Defendant's Paragraph 52.** Plaintiff never prepared payroll spreadsheets during his tenure with NALC. **Exhibit 2,** Plaintiff's Affidavit.

11

**Defendant's Paragraph 55.** Mr. Sclafani admitted he could not recall ever telling Mr. Royall to foot or cross foot his reports. **Exhibit 31**, Sclafani Deposition, Page 99, Lines 12-19. **See also**, 3 samples of cross-footed schedules prepared by Mr. Royall at **Exhibit 32**.

**Defendant's Paragraph 56.** Ms. Broendel's assertion that she was not surprised by the Sclafani Memo is undermined by her approval of Mr. Royall's work. **Exhibit 33**, Broendel Memorandum.

**Defendant's Paragraph 59.** NALC did not always pay its taxes on time. **Exhibit 4**, Spreadsheet dated April 1, 2002. .

**Defendant's Paragraph 60.** Ronald Stubblefield retained the task of making the COLA adjustments after Mr. Royall was hired to enable Mr. Royall to catch up on other work. . **Exhibit 2**, Plaintiff's Affidavit.

**Defendant's Paragraph 61.** DBA Codes can be traced and any error can be documented. Similarly, adjustments to DBA Codes can be traced. NALC has not produced any documentation of an error for which Plaintiff is responsible. An error can only have resulted if Mr. Royall's supervisor gave him the wrong DBA code or if the payroll clerk entered the incorrect DBA code adjustment into the JD Edwards system. Therefore, without any documentation that Mr. Royall did something incorrectly, this allegation is inapt. Mr. Royall attaches for examination the DBA adjustments that he authorized. **Exhibit 34**, DBA Deductions for Alan Apfelbaum.

**Paragraph 63.** Mr. Royall did not have possession of NALC checks. According to Generally Accepted Accounting Principles, the accounts payable staff should not have possession of checks. Mr. Stubblefield had responsibility to secure the checks.

12

**Defendant's Paragraph 70.** During her deposition, Jane Broendel could not identify one time that she discussed payroll issues involving Mr. Royall. As shown above, Sukja Neidlinger, a 25 year veteran of NALC, the last ten years of which were spent as the payroll clerk, had the responsibility for payroll.

**Defendant's Paragraph 72.** The recitation of how NALC arrived at the decision to terminate Mr. Royall omits reference to Mr. Sclafani's memorandum disparaging Mr. Royall. There is no admissible evidence that Mr. Stubblefield wished to terminate Mr. Royall.

**Defendant's Paragraph 73.** Mr. Young was not the person who both hired and fired Mr. Royall. He testified as follows,:

> I'll be candid about it. Basically, I made the decision, but I let Stubblefield decide because I knew that he had to have somebody that he was compatible with in order for us to get back, because not only was there a lot of work to do, but there was a backlog there. There were things that should have been done that weren't done, and so---

**Exhibit 1,** Deposition of William Young, Page 10, Lines 7 – 13. Mr. Sclafani was the driving force in terminating Mr. Royall. **Exhibit 39,** Scalfani Memorandum.

Respectfully submitted,

_____
Thomas J. Gagliardo