# EXHIBIT 2

## Affidavit of Charles Royall

COMES NOW the Plaintiff in United States District Court for the District of Columbia Case Number 1:05cv01711 and makes the following statement under penalty of perjury in support of his Opposition to Defendant's Motion for Summary Judgment.

1. I became Accounts Manager for the Nation Association of Letter Carriers on February 2, 2002. I did not have a written job description. My duties were assigned to me by Ronald Stubblefield, Jane Broendel or Harold Isbell.

2. My understanding was that I was to complete assigned tasks as soon as possible.

3. I was assigned data entry responsibility for payroll in June 2002 after the resignation of Chris Tarbrake.

4. Mr. Stubblefield did not make suggestions to me on how to accomplish my work.

5. No one told me that Al Ferranto made a complaint that his voluntary contributions to the federal thrift savings plan (TSP) were not being appropriately forwarded me. I believe that no documentation exists about such a complaint..

6. Nor am I aware of complaints that may have been made by NALC officers. I have not been made aware of any evidence of such complaints.

7. I have not been presented with any documentation that NALC President William Young was in danger of losing his benefits for anything I failed to do.

8. Jane Broendel did not inform me of a complaint by Steven Hult about my work nor provide me with any documentation of same.

9. Shortly after I began working for NALC, I spent an entire day helping Chris Tarbrake to reorganize the accounts payable files and helped him to carry old files to the basement, instructing him to lock the door.

1

10. Mr. Stubblefield told me that the two of us need not be concerned about bills being paid or delinquencies being incurred because NALC had a lot of money.

11. I personally the bond problem raised by Sean McCormally and I later learned in an Email from them that they took the credit for my work.

12. Mr. Stubblefield told me that he misplaced the Postal Service Benefits Invoice for April 2002, even though it had been faxed to his office. I was not aware that this accounts payable was past due until Ms. Broendel convened a meeting in her office with Mr. Stubblefield, Mr. Isbell and me in May 2002.

13. I was directed by Mr. Stubblefield to complete tasks that were assigned to me and not to take a direct roll in the preparation of audit schedules.

14. To the extent that Mr. Sclafani, a NALC consultant, did any work related to state tax filings, it was the result of an appropriate distribution of work amongst the staff and was not the result of any fault on my part or necessity to intervene. I believed that my primary duties related to cleaning the backlog of late tax filings.

15. During my tenure at NALC, I was never counseled or warned, much less informed, of any deficiencies in my performance. No documentation has been provided to me to establish which tasks were not performed

16. Mr. Stubblefield retained for himself the task of making the COLA adjustments after I was hired. It is my understanding that he did so to enable me to catch up on other work that was delinquent.

17. I did not have possession of checks for NALC as I had accounts payable responsibilities. Nor was I responsible for ensuring their security. I did not know where

they were kept and I don't know were the "bursting room" was in the NALC building. I believed that Mr. Stubblefield was responsible for the security of checks.

18. I did not know the JD Edwards payroll software when I was hired by NALC. However, having more than 30 years of experience in working with integrated accounting systems, I believe that I could learn JD Edwards quickly. I mastered over 20 of its procedures and journal entry adjustments are not required to produce year end W-2s.

19. With respect to special W-2 adjustments such as for leased cars, retirees' life insurance, officers' taxable in town expenses, convention per diem expenses, third party liability and special training for JD Edwards, these calculations could not have been made prior to the year's end and, as a result, would not have required input by me. I was terminated on August 26, 2002.

    I HAVE READ THE FOREGOING AFFIDAVIT CONSISTING OF THREE PAGES AND HEREBY AFFIRM THAT THE ALLEGATIONS CONTAINED THEREIN ARE TRUE. TO THE BEST OF MY INFORMATION AND BELIEF.

Date: _____

                                                      Charles Royall