**EXHIBIT 25**

Case 1:05-cv-01711-RBW    Document 13-30    Filed 11/17/2006    Page 2 of 3

CHARLES ROYALL
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS

FRANCIS ALEXANDER SCLAFANI
July 11, 2006

Page 9

1  telling me. What else?
2      A.  Preparing IRS rebuttals for 941 penalty
3  assessments, preparing letters to the IRS, assisting
4  the accounting manager with state tax filings. There
5  are other duties. I don't remember them all by --
6      Q.  But they were akin to the kind of -- to the
7  list that you just gave us?
8      A.  Correct.
9      Q.  Now, let me go back just for half a second.
10 How were the duties at Accountants on Call or K Force
11 different than this, just generically speaking? I'm
12 not asking specific.
13     A.  Generically, they were all accounting
14 related if that's what you're asking me, yes.
15     Q.  They were all accounting related.
16     A.  Correct.
17     Q.  Okay.
18     A.  But the types of tasks were a little
19 different.
20     Q.  Right, but they would all be accounting
21 tasks.
22     A.  Correct.

Page 10

1      Q.  I understand.
2      A.  Or management tasks.
3      Q.  I'm sorry?
4      A.  Or management tasks.
5      Q.  Thank you. Were you assigned any management
6  tasks at NALC during the period April through October
7  2002?
8      A.  I was not.
9      Q.  Okay. Now, what happened -- just briefly,
10 why didn't you do the FEC report?
11     A.  Mr. Stubblefield thought it prudent that he
12 should do it himself.
13     Q.  Okay. You talked about assisting in the
14 annual audit. Who were the auditors?
15     A.  Bond Beebe.
16     Q.  Spell it for her please.
17     A.  B-O-N-D B-E-E-B-E.
18     Q.  And who was the auditor actually assigned to
19 the NALC?
20     A.  Mr. David Dorsey and Ms. Sue Weaver.
21     Q.  Weaver?
22     A.  Weaver, W-E-A-V-E-R.

Page 11

1      Q.  Did anybody else -- let me just clarify.
2  Was anybody else from ACSYS at NALC during the period
3  April through October 2002?
4      A.  I do not recall. Possibly.
5          MR. HERMAN:  Just for the record, can we
6  spell this -- the thing that you just called ACSYS, so
7  we have one thing on the record?
8          BY MR. GAGLIARDO:
9      A.  I think it's A-C-S-Y-S.
10     Q.  Correct. All caps?
11     A.  All caps, something like that.
12     Q.  All right. Who else was involved in the
13 audit other than Mr. Dorsey, Ms. Weaver and yourself?
14     A.  On the Bond Beebe side?
15     Q.  I was really asking about the NALC side.
16     A.  There were -- Mr. Stubblefield.
17     Q.  Okay.
18     A.  And Mr. Charles Royall.
19     Q.  All right. And at that time,
20 Mr. Stubblefield was director of finance and --
21 correct?
22     A.  Correct.

Page 12

1      Q.  And Mr. Royall was the accounting manager.
2      A.  Correct.
3      Q.  What did you specifically do when you say
4  you assisted with the annual audit? Were you given a
5  series of tasks? Did you have an area of
6  responsibility?
7      A.  I was given a series of tasks. Bond Beebe's
8  approach to the audit was to give us several sheets of
9  audit schedules to prepare. Mr. Stubblefield took
10 these audit schedules and divided them up between
11 himself, Mr. Royall and myself.
12     Q.  Now, I could -- well, you tell me what an
13 audit schedule is rather than me stating it and asking
14 if that's not correct.
15     A.  An audit schedule is a compilation of
16 information from specific accounts, general or
17 activities, relating to accounting activities. That's
18 as good a definition as any.
19     Q.  And all three of you were tasked to fill out
20 the schedules, correct?
21     A.  Correct.
22     Q.  Now, did you and Mr. Royall work together on

Case 1:05-cv-01711-RBW   Document 13-30   Filed 11/17/2006   Page 3 of 3

CHARLES ROYALL                                    FRANCIS ALEXANDER SCLAFANI
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS                    July 11, 2006

Page 29

1  quarters of 2002 were not timely filed?
2     A.   I do not.
3     Q.   Okay. So the evidence you have regarding
4  anything being done late regarding 940 or 941 is
5  McGhee Exhibit Number 1.
6        MR. HERMAN: Object to the form of the
7  question. He can give his -- his recollection.
8        BY MR. GAGLIARDO:
9     Q.   Do you have any other evidence other than
10 McGhee Exhibit Number 1 that shows that Mr. Royall or
11 supposedly Mr. Royall did not do something timely
12 regarding 940 or 941 taxes or returns?
13    A.   I do not have anything more in front of me,
14 no.
15    Q.   All right. Do you recall anything?
16    A.   I do not.
17    Q.   Okay. Now, was there any -- is there
18 anything else about assisting Mr. Royall concerning
19 tax preparation -- is there anything else you did in
20 assisting him that you haven't told us about so far?
21    A.   Not that I recall.
22    Q.   All right. Now, you also said you helped

Page 30

1  him with state withholdings; is that correct?
2     A.   I believe so, yes.
3     Q.   All right. Do you have any evidence that he
4  did anything improper regarding state withholding
5  taxes?
6     A.   No.
7     Q.   All right. No evidence?
8        MR. HERMAN: Object to the form of the
9  question. Are you asking him about his recollection?
10       BY MR. GAGLIARDO:
11    Q.   Right, both. I'm going to ask him both. I
12 just want to be clear. Do you have any documents --
13 let me be more clear. Do you have any document
14 concerning Mr. Royall doing anything incorrect
15 regarding state withholding taxes?
16    A.   I do not have any documents that I could
17 find.
18    Q.   All right. Do you know if any such
19 documents exist?
20    A.   There may be, yes.
21    Q.   All right. And why would you not have been
22 able to find them if they exist?

Page 31

1     A.   Because we may have misplaced -- we
2  misplaced them.
3     Q.   And when you say we, who are you talking
4  about?
5     A.   It would have been myself and Carol
6  Estabrook, who was occupying the records office when
7  we cleared the records out of there.
8     Q.   All right. And when was this? Excuse me.
9  I want to be clear. I'm sorry for interrupting. When
10 was it that you and Carol Estabrook cleared the
11 office?
12    A.   It was sometime in 2003.
13    Q.   And what would you have done with the
14 records at that time?
15    A.   Boxed -- I believe they would have been
16 boxed, but they are also -- some of them are lying in
17 my office, or were in my office, and they have been
18 misplaced.
19    Q.   What do you mean? The ones in your office
20 were misplaced?
21    A.   Well, some of those payroll records wound up
22 in my office.

Page 32

1     Q.   All right. When you say records were
2  misplaced, what do you mean, they were misplaced?
3     A.   Just that. They were misplaced.
4     Q.   Are you saying that you looked for them and
5  you can't find them?
6     A.   Correct.
7     Q.   Are there electronic backups of such
8  documents?
9     A.   There may be.
10    Q.   Did you search for any electronic media to
11 --
12    A.   We did.
13    Q.   And you found none.
14    A.   We did not find anything.
15    Q.   Other than what we've talked about of
16 course.
17    A.   Correct.
18    Q.   Now, when you say these things were boxed,
19 were they sent to storage?
20    A.   Ostensibly, yes.
21    Q.   And who provides the storage or who in that
22 specific case provided storage services for NALC?