# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHARLES ROYALL,                    |
                                   |
    Plaintiff,                     |
                                   |
    v.                             |     Civil Action No. 1:05cv01711 (RBW)
                                   |
NATIONAL ASSOCIATION OF            |
LETTER CARRIERS, AFL-CIO,          |
                                   |
    Defendant.                     |

**DEFENDANT NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL-CIO'S
REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

Peter Herman
Elizabeth O'Leary
Cohen, Weiss and Simon LLP
330 West 42nd Street
New York, NY 10036
(212) 563-4100

Victoria L. Bor (Bar No. 288852)
Sherman, Dunn, Cohen, Leifer & Yellig, P.C.
900 Seventh Street, N.W., Suite 1000
Washington, D.C. 20001
(202) 785-9300

Attorneys for Defendant National Association
of Letter Carriers, AFL-CIO

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

INTRODUCTORY STATEMENT ........................................................................................ 1

ARGUMENT ........................................................................................................................ 4

I.    NALC's Motion Should Be Deemed Conceded Due To Plaintiff's
Late-Filed Opposition ........................................................................................... 4

II.    Plaintiff's Opposition Does Not Raise Any Disputed Material Facts That Preclude
Summary Judgment For NALC ............................................................................ 5

    A.    Summary Of Applicable Legal Standards ............................................... 5

    B.    The Material Facts Are Undisputed ........................................................ 6

    C.    NALC Was Not Required To Document Complaints About Plaintiff's
Shortcomings ......................................................................................... 9

    D.    Plaintiff's Self-Assessment of His Work Performance And His Quibbles
With The Complaints Against Him Fail To Raise Any Issue Of Material Disputed
Fact ...................................................................................................... 11

    E.    Plaintiff Has Not Identified A Similarly Situated Employee Outside Of His
Protected Class Who Was Treated Differently Than Plaintiff ............... 13

    F.    Plaintiff's Hearsay Objection Is Unavailing ........................................ 15

    G.    NALC Is Entitled To The Same Actor Inference ................................. 16

CONCLUSION ................................................................................................................... 18

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

**Page(s)**

*Aka v. Washington Hosp. Ctr.*,
    156 F.3d 1284 (D.C. Cir. 1998) ...........................................................................6

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S. Ct. 2505 (1986) ..................................................................7

*Bush v. Dictaphone Corp.*,
    161 F.3d 363 (6th Cir. 1998) .............................................................................16

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S. Ct. 2548 (1986) ..................................................................6

*Coghlan v. American Seafoods Co. LLC*,
    413 F.3d 1090 (9th Cir. 2005) ...........................................................................16

*Crockett v. Abraham*,
    284 F.3d 131 (D.C. Cir. 2002) ..........................................................................16

*Fortier v. Ameritech Mobile Commc'ns, Inc.*,
    161 F.3d 1106 (7th Cir. 1998) ...........................................................................12

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792, 93 S. Ct. 1817 (1973)....................................................................1

*Raheim v. New York City Bd. of Educ.*, Nos. 95-CV-4599 (JFB)(CLP), 97-CV-3687
    (JFB)(CLP), 2006 WL 2385428 (E.D.N.Y. Aug. 17, 2006) ........................3, 10

*Smith v. Chamber of Commerce*,
    645 F. Supp. 604 (D.D.C. 1986) ..........................................................................7

*Tsehaye v. Smith & Co. Inc.*,
    402 F. Supp. 2d 185 (D.D.C. 2005), *aff'd,* 2006 WL 3298248
    (D.C. Cir. Nov. 1, 2006) ......................................................................................6

*Waterhouse v. Dist. of Columbia*,
    124 F. Supp. 2d 1 (D.D.C. 2000), *aff'd,* 298 F.3d 989 (D.C. Cir. 2002) ....................11, 13

### **RULES**

Federal Rule of Civil Procedure 56(e) ........................................................................12

Federal Rule of Evidence 801(c) ...............................................................................15

Defendant National Association of Letter Carriers, AFL-CIO ("NALC") submits this Reply Memorandum of Points and Authorities in response to plaintiff's opposition to NALC's Motion for Summary Judgment. For the reasons set forth below, as well as for the reasons stated in NALC's opening papers, NALC respectfully requests that this Court grant its motion for summary judgment.

## INTRODUCTORY STATEMENT

Plaintiff Charles Royall, a six-month employee of NALC, alleges that NALC terminated his employment as accounting manager because of his race. In its opening papers, NALC showed that it was entitled to summary judgment because plaintiff cannot establish that his termination gives rise to an inference of discrimination, and thus does not satisfy the third prong of the *prima facie* case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), and its progeny. Specifically, NALC showed that the circumstances surrounding plaintiff's termination do not give rise to an inference of discrimination because plaintiff is unable to show either that he was treated differently from similarly situated employees who are not part of the protected class or that his termination was not attributable to NALC's belief that he failed to perform at or near the level legitimately expected by NALC. NALC further demonstrated that even if plaintiff could establish a *prima facie* case, he failed to show that NALC's reason for terminating him, poor job performance, was pretextual and that the true reason was discrimination.

In support of its motion, NALC relied on deposition testimony of two NALC officers who made or participated in the decisions to hire and fire plaintiff as well as on the deposition testimony of a long-time NALC employee who worked under Royall's supervision. These three individuals testified in detail about their own negative experiences working with

Royall and/or their personal knowledge of numerous complaints made by NALC officers, employees, and vendors concerning Royall's performance.  NALC also proffered two IRS notices reflecting that Royall's untimely tax filings resulted in penalties for NALC.  NALC demonstrated that none of the frivolous reasons offered by Royall during his deposition in support of his discrimination claim gives rise to an inference of discrimination or establishes pretext on the part of NALC.  Finally, NALC showed that the fact that the same individual made the decisions both to hire and fire Royall, with the concurrence of the same two other individuals, within a short period of time creates an inference (the "same actor" inference) that discrimination was not NALC's motive in terminating Royall.

Plaintiff's late-filed opposition to NALC's motion—supported by plaintiff's self-serving statements about his performance, in an unsigned, unnotarized, and undated affidavit and a scattered assortment of NALC documents, many of which plaintiff improperly removed from NALC's premises and none of which support his claim—does not present *any* evidence that plaintiff was fired for a discriminatory reason.  Instead, ignoring uniform case authority that a court's role in adjudicating federal discrimination cases is *not* to second-guess whether the employer's decision was fair or correct, Royall's opposition simply disputes the complaints made against him and contends instead that his performance was adequate.  Having apparently abandoned most of the reasons he previously offered in support of his discrimination claim, plaintiff seeks to avoid summary judgment by arguing that (1) NALC cannot prevail without additional written documentation of plaintiff's deficiencies, (2) plaintiff was not made aware of his performance deficiencies during his tenure at NALC, (3) the individual who temporarily replaced Royall was unqualified for the position but, unlike Royall, was not terminated, and (4) NALC is not entitled to the same actor inference.  Additionally, a main theme running through

plaintiff's opposition is that Royall actually was a good employee. Plaintiff seeks to have this Court disregard NALC's overwhelming record evidence that the NALC individuals involved in the decision to terminate plaintiff honestly believed, based on their own observations and on reports by others about plaintiff's failings, that plaintiff's job performance was unsatisfactory, and to instead allow Royall's self-serving statements that he was a good employee to defeat NALC's motion for summary judgment. In so doing, plaintiff completely disregards a fundamental tenet of discrimination cases: that federal courts do not sit as super-personnel agencies that pass judgment on an employer's everyday business decisions.

Notably absent from plaintiff's opposition is *any* evidence that NALC's decision to terminate plaintiff was motivated in any part by plaintiff's race: not one racially derogatory statement by anyone employed by NALC, no evidence of racially discriminatory attitudes by anyone at NALC, no statistical evidence of disparate impact, no similarly situated non-minority employee who suffered from plaintiff's deficiencies but was not terminated. Simply stated, plaintiff's opposition has not identified a shred of evidence that racial animus played any role in NALC's decision to terminate plaintiff. Indeed, the only references to race in plaintiff's opposition are plaintiff's bare identification of his own race (African-American), and the races of three co-workers: Ronald Stubblefield (African-American) (plaintiff's immediate supervisor); James Delio (white) (NALC employee who temporarily replaced Royall); and Francis Sclafani (white) (NALC temporary employee who prepared a memo criticizing plaintiff's abilities). Merely invoking plaintiff's own race and the races of co-workers, without more, is insufficient to withstand summary judgment. *See, e.g.*, *Raheim v. New York City Bd. of Educ.*, Nos. 95-CV-4599 (JFB)(CLP), 97-CV-3687 (JFB)(CLP), 2006 WL 2385428, *9-*10 (E.D.N.Y. Aug. 17, 2006) (no inference of discrimination exists simply because individual defendants and others

were Jewish and plaintiff was an Egyptian Muslim; that fact by itself "proves nothing").

Plaintiff is unable to establish a *prima facie* claim of discrimination or to raise a genuine issue of

material fact that NALC's articulated non-discriminatory reason for terminating him was

pretextual. Indeed, plaintiff's opposition only highlights that this case is ripe for summary

judgment.

## **ARGUMENT**

I.    **NALC's Motion Should Be Deemed
      Conceded Due To Plaintiff's Late-Filed Opposition**

             As a threshold matter, pursuant to Local Civil Rule 7(b), the Court should treat

NALC's motion as conceded and disregard plaintiff's late-filed opposition papers. Pursuant to

the Court's February 17, 2006 Scheduling Order (Docket #8), plaintiff's opposition was due on

October 18, 2006. Plaintiff subsequently filed two unopposed motions for additional time within

which to file his opposition, and the Court granted both motions. (Docket #11 and #12). Under

the second extension and in accordance with the Court's November 1, 2006 Order, plaintiff's

opposition was due on November 10, 2006. However, plaintiff did not file his opposition papers

until November 17. (Docket # 13). Plaintiff did not obtain the Court's leave or NALC's consent

to this third extension and has not offered any explanation of the reasons for his untimely filing.

Plaintiff's failure to seek approval of this extension violates Section 3 of Your Honor's General

Order and Guidelines for Civil Cases, which provides that counsel seeking an extension of time

*must* file a motion and proposed order regarding same and *must* describe in detail the grounds for

the extension. Local Civil Rule 7(b) provides that an opposing party has 11 days from a

motion's date of service "or at such other time as the Court may direct [] to serve and file a

memorandum of points and authorities in opposition to the motion." Rule 7(b) further provides

that "[i]f such memorandum is not filed within the prescribed time, the Court may treat the

motion as conceded." Plaintiff's disregard of the Court's November 1, 2006 Order, its rules

regarding extensions, and Local Rule 7(b) makes this an appropriate case for the Court to

exercise its discretion under Rule 7(b) to treat NALC's motion as conceded. In any event, if the

Court declines to treat NALC's motion as conceded, plaintiff has not put forth any evidence that

NALC's decision to terminate plaintiff was based on discrimination.

## II.    Plaintiff's  Opposition Does Not Raise Any Disputed Material Facts That Preclude Summary Judgment For NALC

### A.    Summary Of Applicable Legal Standards

A plaintiff seeking to establish a *prima facie* case of racially discriminatory

discharge must demonstrate that: (1) he is a member of a protected class, (2) he suffered an

adverse employment action, and (3) the unfavorable action gives rise to an inference of

discrimination. *See* NALC's Opening Br. at 11.[1]  NALC previously showed that Royall is

unable to establish an inference of discrimination by proving either that (a) he was treated

differently than similarly situated employees who were not part of his protected class, or (b) the

termination was not attributable to performance below the employer's legitimate expectations.

*See id.* at 11-16.  NALC also showed that, even if plaintiff could establish a *prima facie* case,

plaintiff failed to establish a material factual issue that the articulated reason for his termination

is pretextual and that the true reason is discriminatory. *See id.* at 16-27.  As shown below,

Royall's opposition only highlights his inability to establish either an inference of discrimination

or pretext.

---

[1] In his opposition papers, plaintiff rewrites the *prima facie* test to omit the inference of discrimination prong, and instead states that the test is satisfied if the plaintiff can demonstrate "(1) membership in a protected class; (2) satisfactory performance; (3) termination of employment; and sometimes (4) replacement by an individual who is not a member of plaintiff's protected class." (Pl.'s Br. at 3).  Plaintiff cites no authority supporting his omission of the inference of discrimination requirement.  To the extent that plaintiff's reformulation of the *prima facie* test is intended to incorporate his argument that he was treated differently than a similarly situated employee outside of his protected class, NALC shows below that no such similarly situated employee exists. *See infra* pp. 13-15.

In cases, such as the instant case, where the employer satisfies its burden of articulating a nondiscriminatory reason for its challenged action, the "focus of proceedings" on summary judgment (and at trial) is whether the jury could infer discrimination from the combination of (1) the plaintiff's *prima facie* case, (2) any evidence the plaintiff presents to attack the employer's articulated explanation for its action, and (3) any further evidence of discrimination, such as evidence of discriminatory statements or attitudes on the part of the employer. *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998). In this case, no reasonable juror could infer discrimination from any of these categories. In addition, "[a] movant may successfully obtain summary judgment by pointing to the absence of evidence proffered by the non-moving party." *Tsehaye v. Smith & Co. Inc.*, 402 F.Supp.2d 185, 191 (D.D.C. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2505 (1986)), *aff'd*, 2006 WL 3298248 (D.C. Cir. Nov. 1, 2006). Here, plaintiff has not submitted any evidence that shows he was fired for a discriminatory reason.

### B.    <u>The Material Facts Are Undisputed</u>

NALC previously demonstrated that NALC terminated Royall because NALC's decision-makers had concluded that he was unable to meet NALC's legitimate performance expectations. Although plaintiff's opposition raises a number of immaterial facts in an effort to cloud the issues and to challenge the substance of the complaints made against him, a review of Royall's opposition papers reflects that, in fact, he does not dispute with record evidence the material facts relied upon by NALC. For instance, in response to NALC's production of IRS notices reflecting that plaintiff twice failed to timely file tax returns that became due during his employment (NALC's 56.1 Stmnt. ¶¶ 57-58, at 12), plaintiff's Rule 56.1 statement does not dispute his late filings or that they resulted in penalties. Instead he seeks only to downplay the

significance of the late filings, noting that the returns were only a few days late. (Pl.'s Br. at 4-5).

Paragraph 21 of NALC's Rule 56.1 Statement cites President Young's deposition testimony that Young had between five and ten meetings with NALC Finance Director Ronald Stubblefield, Royall's immediate supervisor, in which Stubblefield advised Young that Royall was not doing his job. (NALC 56.1 Stmnt. ¶ 21, at 5). Plaintiff counters that the discussions between Young and Stubblefield occurred by telephone and that Young did not maintain notes of such conversations. (Pl.'s 56.1 Stmnt. at 4). Neither of these points casts into doubt Young's sworn deposition testimony that Stubblefield complained about plaintiff's performance on multiple occasions. A decision-maker is entitled to rely on a supervisor's negative reports about an employee in deciding to terminate the employee, and the ability to rely on such reports is not contingent on whether the meetings about the deficiencies occurred in person or by telephone, or on the existence of notes. *See Smith v. Chamber of Commerce*, 645 F.Supp. 604, 608 (D.D.C. 1986) (employer is entitled to rely on reports of plaintiff's performance given by plaintiff's immediate supervisor). Plaintiff's quibbling over whether Stubblefield conveyed his complaints to Young by phone or in person and his objection to the lack of notes does not raise any dispute as to whether Young received and relied upon Stubblefield's complaints about Royall. *See generally Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986) ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." [emphasis in the original]).

Paragraph 29 in NALC's Rule 56.1 Statement notes that NALC officers complained about payroll problems that occurred during Royall's employment. Royall does not

dispute that such complaints occurred but instead responds that the complaints were not made every single day. (Pl.'s 56.1 Stmnt. at 6). Again this trivial objection fails to raise a material disputed issue of fact.

NALC also relies on deposition testimony by Sukja Neidlinger, a long-time NALC employee assigned to payroll, concerning Neidlinger's negative experiences working under plaintiff's supervision, her view that Royall's deficiencies interfered with her ability to perform her job, and her assessment of Royall as incompetent. (NALC 56.1 Stmnt. ¶¶ 23-28, at 5-6). Neidlinger's testimony was supplemented by Secretary-Treasurer Broendel's testimony about Neidlinger's contemporaneous complaints to Broendel about Royall. (NALC 56.1 Stmnt. ¶ 28, at 6). In opposition, plaintiff seeks to impugn Neidlinger by characterizing her as "territorial" about her work and as having a motive (a sought-after salary increase) to exaggerate plaintiff's performance deficiencies. (Pl.'s 56.1 Stmnt. at 5-6). Plaintiff's self-serving attack on Neidlinger does not undercut the substance of Neidlinger's testimony, which demonstrates that employees who worked with Royall complained about his performance, and that NALC acted reasonably in relying on such reports in terminating plaintiff.

NALC's motion also relies on Young's deposition testimony that a vendor complained to Young about late-paid bills. (NALC 56.1 Stmnt. ¶ 39, at 8). Again, plaintiff does not dispute that the complaint was made but instead charges that NALC should have produced "a late invoice with a canceled check," states that plaintiff had not been advised about late payments, and, in any event, that Stubblefield told him not to worry about paying NALC bills "because NALC had a lot of money." (Pl.'s 56.1 Stmnt. at 8). Once again, plaintiff's response does not detract from Young's ability to rely on complaints from others about Royall (or

complaints about areas for which plaintiff was responsible) in deciding to terminate plaintiff without violating anti-discrimination laws.

NALC also demonstrated its belief that Royall's job performance was inadequate by Broendel's reliance on a memo that Sclafani prepared that was critical of plaintiff and which confirmed Broendel's own experience.  (NALC 56.1 Stmnt. ¶ 54, at 11).  Plaintiff does not dispute that Sclafani prepared a memo to Broendel describing plaintiff's performance deficiencies.

Because plaintiff has failed to rebut these (and other) material facts about the many complaints made about his performance that contributed to NALC's decision to terminate him, plaintiff has failed to offer evidence from which a reasonable juror could conclude that NALC's articulated reason for terminating him was false.  Plaintiff does not dispute that NALC received complaints about Royall or that NALC relied on such complaints in deciding to terminate him.  Accordingly, NALC is entitled to summary judgment.

### C.     NALC Was Not Required To Document Complaints About Plaintiff's Shortcomings

Plaintiff seeks to avoid summary judgment by reiterating that NALC did not have enough documentation about complaints made about Royall or about Royall's deficiencies.  He does not dispute that NALC has proffered written documentation of plaintiff's deficiencies: two IRS penalty notices proving that plaintiff was responsible for late-filed tax penalties and Sclafani's memo describing plaintiff's weaknesses.  Plaintiff objects to Sclafani's memo because, in plaintiff's view, Sclafani lacked standing to criticize plaintiff's performance because at the time Sclafani was a temporary employee.  (Pl.'s Br. at 2).  But this objection does not establish an inference of discrimination or pretext.  Nor do plaintiff's arguments that

documentation of late–filed tax returns only proved two instances of late filings by Royall and that the filings were only a few days late.

The more fundamental error in plaintiff's documentation argument is that it presumes the existence of a documentation requirement on the part of NALC. However, plaintiff cites no authority requiring that NALC document complaints about Royall or examples of his performance deficiencies. While some employment relationships, such as those governed by a collective bargaining agreement, employee handbook or personnel policy, may require an employer to document an employee's mistakes in connection with disciplining the employee, it is undisputed in this case that plaintiff was an at-will employee who was not covered by a collective bargaining agreement or other employment contract or policy that might have limited NALC's discretion to terminate plaintiff for poor performance or imposed documentation obligations on NALC. (NALC 56.1 Stmnt. ¶ 13, at 3). Indeed, plaintiff's opposition essentially boils down to the type of "just cause" argument that might be offered in a discharge labor arbitration under a collective bargaining agreement, but that is irrelevant on a race discrimination claim, especially in the absence of any evidence of racial animus. Moreover, even if NALC had been required to document complaints about plaintiff, a failure to do so, absent other evidence, would not be indicative of discriminatory animus. *See Raheim*, 2006 WL 2385428, at *11 n.6 ("[P]laintiff argued that he was entitled to a [] hearing prior to its decision to fire him. Plaintiff fails, however, to direct this Court to any evidence in the record showing that an employee in plaintiff's position was entitled to a hearing. Even assuming *arguendo* that plaintiff was entitled to a hearing, plaintiff has submitted no evidence that [the] failure to give him a hearing was based on discriminatory animus.").

In sum, plaintiff's frequent reiteration of his documentation argument overlooks both that some complaints and shortcomings were documented and, further, that NALC was not required in the first instance to maintain documentation.

### D. Plaintiff's Self-Assessment of His Work Performance And His Quibbles With The Complaints Against Him Fail To Raise Any Issue Of Material Disputed Fact

To survive summary judgment, it is not enough for plaintiff to dispute the complaints against him and merely to offer his own self-serving assessment of his performance. Instead, he must show that the articulated reason for his termination—poor job performance— was pretextual and that race is the true reason for the termination. *See* NALC's Opening Br. at 16. Here plaintiff seeks to avoid summary judgment by pointing to instances that he believes demonstrate adequate performance on his part and otherwise arguing that the complaints against him were unjustified. In so doing, plaintiff fails to raise an issue of fact sufficient to defeat summary judgment. *See* NALC's Opening Br. at 17-20. *See generally Waterhouse v. Dist. of Columbia*, 124 F.Supp.2d 1, 7-8 (D.D.C. 2000) ("[I]t is clear that plaintiff's argument that, in her opinion, she was competent and performed well in her position, that her performance problems were not as serious as described by defendants, that they were outweighed by her successes, or that they did not justify her termination is simply not relevant nor sufficient to raise an inference of pretext."), *aff'd*, 298 F.3d 989 (D.C. Cir. 2002).

For example, in response to NALC's showing that Stubblefield complained to Broendel that Royall did not complete his work accurately or timely (NALC 56.1 Stmnt ¶ 20, at 5), Royall attaches certain NALC documents, as exhibits 6, 7, and 15 to his Rule 56.1 Statement.[2] The documents indicate that he completed certain discrete tasks assigned to him

---

[2] Plaintiff's submission of certain NALC documents (Pl.'s 56.1 Stmnt., Exs. 6, 13, 15, 16, 17, 18, 20, 21, 28, 33, 34, 38) in support of his opposition is troubling on two counts. First, these documents are NALC documents that

shortly after having received the assignments, and include an email from Broendel to Stubblefield, with an unidentified handwritten "good job" notation.[3] (Pl.'s 56.1 Stmnt. at 4, 7). As discussed on pages 15-16 of NALC's opening brief, the fact that plaintiff's performance may have been adequate in some respects does not preclude NALC from concluding "that the deficiencies in his performance outweighed such accomplishments." *Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1114 (7th Cir. 1998).

Plaintiff purports to support his opposition with his unsigned, undated and unnotarized affidavit ("Royall Affidavit"), attached as exhibit 2 to his Rule 56.1 Statement. At the threshold, Royall's affidavit does not comply with Federal Rule of Civil Procedure 56(e), is not proper Rule 56 evidence, and should not be considered by the Court. However, if the Court overlooks the deficiencies in plaintiff's affidavit, nothing in the affidavit precludes summary judgment for NALC. For example, the affidavit states that Royall was not "counseled or warned" about deficiencies in his performance while at NALC. (Royall Affidavit ¶ 15, at 2).

---

Royall removed from NALC's headquarters, without NALC's knowledge or consent, in a fit of anger on the date that he was terminated. (Declaration of Peter Herman dated Dec. 8, 2006 [hereinafter "Dec. 8, 2006 Herman Decl."], filed herewith, Ex. A [Deposition Transcript of Charles Royall, at 76-80]). Plaintiff first produced these documents at his deposition and never identified them (or any documents) in his initial disclosures. Second, many of these documents contain personal information about NALC officers and employees. For example, the eighth page of exhibit 6 to plaintiff' Statement of Material Disputed Facts includes the full names and social security numbers of almost 50 NALC employees. Similarly, plaintiff's exhibit 17 includes several pages with full names, social security numbers, and salary information for NALC officers and employees. Plaintiff's exhibit 20 includes the names, addresses, and social security numbers of NALC employees, as do other exhibits filed by plaintiff. Although none of this personally identifying information is relevant to this motion or to plaintiff's opposition thereto, plaintiff failed to redact the individually identifying information or, alternatively, to seek permission to file the documents under seal. In this era of rampant identity theft, plaintiff's unredacted filing reflects a reckless disregard for the privacy of NALC employees. Moreover, the unredacted filing expressly violates Local Civil Rule 5.4(f), which requires that personal identifiers, such as social security numbers and dates of birth, "shall be excluded, or redacted where inclusion is necessary, from all electronically filed documents unless otherwise ordered by the Court." NALC respectfully submits that, in light of plaintiff's unauthorized use and removal of NALC documents and his failure to exclude or redact personal identifiers in those documents, the Court should not consider those documents in deciding this motion. In any event, NALC requests that the Court direct that these documents be filed under seal.

[3] Plaintiff's reliance on the email from Broendel to Stubblefield to prove that Broendel complimented his work is misguided. There is no record evidence that the "good job" notation was written by Broendel and the email was from Broendel to Stubblefield, not from Broendel to Royall.

However, a plaintiff's lack of awareness that he/she was in danger of being terminated is not a basis for inferring discrimination. *See Waterhouse*, 124 F.Supp.2d at 9 n.9. The other statements in plaintiff's affidavit—that he had not been made aware of complaints made against him, and that Stubblefield had told him not to be concerned about paying bills or incurring delinquencies "because NALC had a lot of money"—similarly fail to provide any basis for inferring discrimination by NALC. (Royall's Affidavit ¶¶ 5, 6, 7, 8, 10, at 2-3).

Plaintiff's opposition betrays a complete disregard of the basic tenet that in discrimination cases courts do not sit as super-personnel agencies that re-evaluate whether the reason for the discharge was fair or correct, but instead are to determine whether the reason the employer discharged the employee was discriminatory. *See* NALC's Opening Br. at 17-20. For example, with respect to NALC's documented evidence of plaintiff's late-filed tax returns, plaintiff argues that NALC did not produce evidence of more than two late filings by plaintiff, that the returns were only late by a couple of days, and that NALC could afford to pay the penalties. (Pl.'s Br. at 2, 4-5).[4] Plaintiff's invitation for the Court to determine how many late filings, how late a filing, or how significant the penalty had to be in comparison with NALC's ability to pay, before it could terminate an employee reflects a fundamental misunderstanding of the Court's role in adjudicating discrimination claims and a plaintiff's burden in opposing a motion for summary judgment.

### E.    Plaintiff Has Not Identified A Similarly Situated Employee Outside Of His Protected Class Who Was Treated Differently Than Plaintiff

Plaintiff makes a futile attempt to show that a similarly situated employee outside of plaintiff's class was treated differently than plaintiff. (Pl.'s Br. at 2). Although plaintiff's

---

[4] Of course, plaintiff's quibbling with the significance to be attached to his two undisputed late filings ignores that these late filings were only one of many areas in which plaintiff's performance fell short of NALC's expectations.

-13-

complaint incorrectly alleges that he was replaced by Sclafani (Complaint ¶14), plaintiff now recognizes that his immediate successor was James Delio, a white man who had been employed by NALC for several years when plaintiff commenced employment at NALC.  (Pl.'s Br. at 2). Young's deposition testimony recited the circumstances surrounding Delio's brief tenure as accounting manager.  The individual initially hired to replace Royall failed to show up for work and the position remained open.  Incidentally, in anticipation of likely becoming NALC President, Young had told NALC employees that he would like to promote from within NALC's existing workforce rather than hiring from the outside, and that he would give current NALC employees "a shot" at internal openings.  After Royall was terminated and Royall's initial successor failed to report to work, Delio, a computer programmer in NALC's information technology department since 1997, approached Young and asked him if he could have a try at filling Royall's position.  Young consented to this request.  However, after one or two months, Delio advised Young that, although he could handle the software program, Delio believed that he lacked the accounting skills to perform the job, and he requested permission to return to his former position.  Young granted Delio's request, and Delio continues to be employed by NALC today.  (Dec. 8, 2006 Herman Decl., Ex. B [Deposition Transcript of William Young [hereinafter "Young Tr."], at 36-40]; *id.*, Ex. C [Deposition Transcript of James Delio], at 4-8).  Given the stark differences between Royall and Delio—Royall was an accountant with 30 claimed years of experience who was specifically hired to perform the job of accounting manager and was fired after six months for not meeting NALC's performance expectations, whereas Delio was already employed by NALC for several years when he transferred to a position that was currently open and, after a very short period, determined on his own that he lacked the skills for the position and

requested that he be permitted to return to his prior position—plaintiff's argument that Delio was similarly situated to him is frivolous.

Plaintiff also contends that he was held to a different standard than his predecessors. (Pl.'s Br. at 10). No record evidence supports this allegation, and plaintiff does not identify to whom he is referring. Obviously a critical component of satisfying a plaintiff's burden of showing that a similarly situated employee outside of plaintiff's protected class was treated differently than plaintiff requires that plaintiff identify the alleged similarly situated employee. Moreover, plaintiff's assertion that no other NALC employee was disciplined when payroll taxes were filed late on several occasions prior to his employment during the time that the accounting manager position was vacant (Pl.'s Br. at 5) also misses the point completely. The position of accounting manager was vacant for some time prior to plaintiff's employment, and there was no individual to hold accountable for late-filed taxes. In fact, plaintiff was hired to correct this situation. In sum, plaintiff has not satisfied his burden to identify a similarly situated employee outside of his protected class who was treated differently than plaintiff. *See* NALC's Opening Br. at 11-12.

## F.    <u>Plaintiff's Hearsay Objection Is Unavailing</u>

In support of its motion, NALC relied on the many complaints that Young and Broendel received from NALC employees, officers, and vendors about Royall's shortcomings. (NALC 56.1 Stmnt. ¶¶ 20-39, at 5-8). In response, plaintiff suggests incorrectly that such complaints are inadmissible hearsay. (Pl.'s Br. at 2). Pursuant to Rule 801(c) of the Federal Rules of Evidence, evidence is hearsay only when an out-of-court statement is offered to prove the truth of the matter asserted. Here NALC's evidence is not hearsay because it is not offered for the truth of the statements made about Royall; rather it goes to the state of mind of the NALC

decision-makers who properly testified that they had heard or read the complaints made about

Royall. *See*, *e,g.*, *Crockett v. Abraham*, 284 F.3d 131, 134 (D.C. Cir. 2002) (rejecting argument

that testimony about merit staffing committee's view of candidates was inadmissible hearsay)

("But the assessments of the committee were not offered for the truth of the 'the matter asserted.'

Fed.R.Evid. 801(c). Sullivan's decisionmaking was under challenge, and she explained it on the

basis of the information she received."); *Bush v. Dictaphone Corp.*, 161 F.3d 363, 366-67 (6th

Cir. 1998) (district court correctly denied motion in employment discrimination case to strike as

hearsay portions of decision-makers' declarations stating that declarants had been told by

unidentified co-workers that plaintiff was abusive or unstable; district court denied motion

because the statements were not being offered to prove the truth of the matter asserted—that

plaintiff was abusive—and held that declarations were admissible for the purpose of considering

the grounds upon which the declarants based their decisions regarding plaintiff).

### G.     NALC Is Entitled To The Same Actor Inference

NALC previously showed that the fact that the same individual who hired

plaintiff, Young (with the concurrence of Broendel and Stubblefield), also made the decision to

fire him six months later (again with the concurrence of Broendel and Stubblefield) creates a

strong inference that there was no discriminatory action. *See* NALC's Opening Br. at 20; *see

also Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1098 (9th Cir. 2005) (describing

the same actor inference as "a 'strong inference' that a court must take into account on a

summary judgment motion." [internal citation omitted]).

In an attempt to avoid application of the same actor inference, plaintiff baldly

asserts that Stubblefield made the decision to hire Royall, and that the decision to terminate

Royall was effectively caused by Sclafani. (Pl.'s Br. at 2; Pl.'s 56.1 Stmnt. at 2, 14). This

argument fails for several reasons.  First, the fact that Young, who testified that he liked Royall and two other candidates equally, was agreeable to Stubblefield's preference of Royall over the other candidates and sought to accommodate Stubblefield since Stubblefield would be working most closely with Royall, does not alter the undisputed fact that Young had and exercised the power to hire and fire Royall (NALC's 56.1 Stmnt. ¶ 8, at 2), and that it was Young's call to hire Royall.  In fact, the record evidence that Stubblefield convinced Young that Royall was the best of three candidates proves that Young made the decision to hire Royall; one hardly requires convincing if he/she is not deciding a matter.  (Dec. 8, 2006 Herman Decl, Ex. B [Young Tr.], at 15-16 ["I couldn't make a distinction between the three candidates personally.  I'm just saying I liked them all . . . but Stubblefield seemed to think that Mr. Royall had some abilities in spreadsheets that the other two didn't have, and he ended up . . . convincing Jane [Broendel] and I that because of Charles['s] [Royall's] abilities with these spreadsheets he was the right guy for the job.  I said, 'Well, it's important.  You've been pushing for this position, and it's important that you have somebody.  If that's what you think, then that's what we'll go with.'"]).  Moreover, plaintiff cites to no record evidence—nor can he—that Stubblefield had the power to hire or fire anyone.

Second, Royall's unsupported claim that NALC's decision to terminate Royall was caused by Sclafani is baseless.  (Pl.'s Br. at 8 [arguing that Young was Sclafani's "cat's paw"]).  Broendel testified that Sclafani did not participate in NALC's decision to fire Royall, and that it was Stubblefield who recommended that Royall be fired.  (Dec. 8, 2006 Herman Decl, Ex. D [Deposition Transcript of Jane Broendel] [hereinafter "Broendel Tr.]], at 82-83).  Nor is there any record evidence that Stubblefield was aware of Sclafani's memo.  (*Id.*, Ex. D [Broendel Tr.], at 51-52).  Most importantly, no record evidence exists that Young was aware of the

-17-

existence of Sclafani's memo or that he relied on the memo in any way in deciding to terminate

Royall.  Moreover, even assuming *arguendo* that the decision to fire Royall was based on

Sclafani's memo, this does not mean that Sclafani made the decision to fire Royall.  Even if

Sclafani's negative report influenced Young—a proposition for which there is no record

evidence—the undisputed record evidence shows that the decision to fire Royall was made by

Young.  Accordingly, NALC is entitled to the same actor inference.

## **CONCLUSION**

For the foregoing reasons and those set forth in NALC's opening papers, NALC

respectfully requests that the Court grant summary judgment to NALC and dismiss plaintiff's

complaint.


Dated: December 8, 2006
       New York, New York


                                        Respectfully submitted,


                                        /s/ Peter Herman
                                        Peter Herman
                                        Elizabeth O'Leary
                                        Cohen, Weiss and Simon LLP
                                        330 West 42nd Street
                                        New York, NY 10036
                                        (212) 563-4100

                                        /s/ Victoria L. Bor
                                        Victoria L. Bor (Bar No. 288852)
                                        Sherman, Dunn, Cohen, Leifer & Yellig, P.C.
                                        900 Seventh Street, N.W., Suite 1000
                                        Washington, D.C. 20001
                                        (202) 785-9300

                                        Attorneys for Defendant National Association
                                        of Letter Carriers, AFL-CIO