## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHARLES ROYALL,             |

       Plaintiff,       |

     v.                |     Civil Action No. 1:05cv01711 (RBW)

NATIONAL ASSOCIATION OF  |
LETTER CARRIERS, AFL-CIO,  |

      Defendant.    |

## DECLARATION OF PETER HERMAN IN FURTHER SUPPORT OF
## MOTION OF DEFENDANT NATIONAL ASSOCIATION OF
## LETTER CARRIERS, AFL-CIO FOR SUMMARY JUDGMENT

I, Peter Herman, declare and state as follows:

1.    I am a member of the firm of Cohen, Weiss and Simon LLP, lead counsel for defendant National Association of Letter Carriers, AFL-CIO ("NALC") in this matter. I make this declaration in further support of NALC's motion for summary judgment and to dismiss the entire action against NALC.

2.    Attached as Exhibit "A" hereto are true copies of excerpts from a copy of the transcript of the deposition of Charles Royall in this matter, taken on July 21, 2006.

3.    Attached as Exhibit "B" hereto are true copies of excerpts from a copy of the transcript of the deposition of William Young in this matter, taken on June 29, 2006.

4.    Attached as Exhibit "C" hereto are true copies of excerpts from a copy of the transcript of the deposition of James Delio in this matter, taken on July 11, 2006.

5.    Attached as Exhibit "D" hereto are true copies of excerpts from a copy of the transcript of the deposition of Jane Broendel in this matter, taken on June 29, 2006.

6.    I was present at the above-referenced depositions.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 8, 2006

/s/ Peter Herman
Peter Herman

# Exhibit A

CHARLES ROYALL
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS

CHARLES ROYALL
July 21, 2006

Page 1

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - x

CHARLES ROYALL,                           :

           Plaintiff,           :

        vs.                            :    Civil Action

NATIONAL ASSOCIATION OF          :    No. 05-1711 (RBW)

LETTER CARRIERS,                          :

           Defendant.         :

- - - - - - - - - - - - - - - x

                        Washington, D.C.

                        Friday, July 21, 2006

Deposition of:

           CHARLES ROYALL,

the Witness, called for examination by counsel for

Defendant, pursuant to notice, commencing at 9:27

a.m., at the offices of Sherman, Dunn, Cohen, Leifer &

Yellig, P.C., 900 Seventh Street, Northwest,

Washington, D.C., before Karen Young, Notary Public in

and for the District of Columbia, when were present on

behalf of the respective parties:



CHARLES ROYALL                                          CHARLES ROYALL
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS              July 21, 2006

Page 76

1      Q.     Where is that?

2      A.     It should be there in the office.  I filed

3  everything away.

4      Q.     Well, let's just in general ask, how did it

5  come to be that you have these documents in your

6  possession?  And these documents, I'm referring to the

7  documents that pertain to when you were employed with

8  the NALC that you just gave us today.

9      A.     Okay, how I have these documents is this.  I

10  had made up my mind early on that I was going to go in

11  I guess around late June sometime, that I was going to

12  go in and negotiate a raise, and I made copies of

13  these little notes and stuff and put them in a folder

14  in my office, and the day Jane Broendel fired me and

15  told me to clear out my office, I grabbed this folder

16  and left the office with it that day with these

17  documents.

18      Q.     Did you consider it appropriate to be

19  removing NALC documents after you'd been terminated?

20      A.     Appropriate, I'm going to say -- what can I

21  say about -- two things.  I'd just been fired, which

22  was, I mean, an outrageous lie, claims I had not done

CHARLES ROYALL
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS

CHARLES ROYALL
July 21, 2006

Page 77

1    my job.

2        Q.    Just answer the questions.

3        A.    I'm going to get there.  I'm going to get

4    there.  Give me a minute to get there.  The

5    appropriateness of this I did question, because as you

6    can see, there are social security numbers, there are

7    bank numbers, but -- I mean, I was almost in shock

8    being terminated, and to be told that I was not doing

9    my job was one of the most outrageous things I think I

10   heard during the whole time that I worked at NALC.  So

11   did I give it some careful thought, no.  I was asked

12   to leave and I left, and I grabbed -- I got my degree

13   off the wall, my membership with the Institute of

14   Management Accountants, I had some pictures there

15   where I had been in Paris and London, and I just

16   grabbed everything and left.

17       Q.    I'm not talking about your personal stuff

18   like your degree and stuff.  These are NALC documents

19   I'm talking about.

20       A.    And I'm telling you again, I mean, for

21   somebody to sit there or stand there -- sit there and

22   tell you you're fired because you're not doing your

CHARLES ROYALL
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS

CHARLES ROYALL
July 21, 2006

Page 78

1    job, when I say, the most outrageous statement I've

2    heard --

3    Q.    I understand you were upset on that day --

4    A.    -- when I worked there.  Well, I'm telling

5    you, you know, that I grabbed these documents because

6    I said, you know, what can I do?  I'm not going to

7    leave here with not something to prove that the

8    outrageous lie that she just got through telling.

9    Q.    In other words, you took NALC documents

10   because you were upset and you were considering doing

11   something about it; is that right?

12   A.    Not necessarily doing something at that

13   time, because I didn't know that I could do something

14   until I talked to an attorney, but one thing about it,

15   I felt that I had been done wrong and I was going to

16   talk to somebody, an attorney, a friend or somebody

17   and see if there's anything I could do.

18   Q.    Well, after you calmed down after some

19   period of days or however long it took you to calm

20   down --

21   A.    Uh-huh.

22   Q.    Did you consider again whether it was

CHARLES ROYALL                                              CHARLES ROYALL
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS                 July 21, 2006

Page 79

1    appropriate that you take NALC documents?  These

2    aren't your personal documents.  They're NALC

3    documents.

4              MR. GAGLIARDO:  I'm going to object.

5    They're not.  They're copies of documents.

6              BY MR. HERMAN:

7        Q.    They are NALC property, not your property.

8    Isn't that right, sir?  In your view.

9        A.    Not all of them, because there are e-mails

10   that Ron gave me that Jane sent him.  I mean, an

11   e-mail, it's not really their property.

12       Q.    How about statements with social security

13   numbers and banking records on it?

14       A.    The social security numbers are property --

15   this is for the individuals.  The bank statement

16   numbers, that is NALC property.

17       Q.    So you -- sitting here today, you still

18   don't see anything inappropriate about the fact that

19   you took these documents?

20       A.    I didn't say that, sir.

21       Q.    Well, do you or don't you?

22       A.    I see the possibility that -- inappropriate,

CHARLES ROYALL                                        CHARLES ROYALL
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS                July 21, 2006

Page 80

1      inappropriate.  I just can't really say that it's

2      inappropriate.  From my point of view at the time,

3      when somebody -- there's an old saying, when somebody

4      shoot at you, shoot trying to kill you, then you try

5      to survive any way -- by any means necessary, as the

6      old saying go back.  God, inappropriate.

7          Q.    Well, wrong.  How about that?

8          A.    Wrong?

9          Q.    Wrong to take the documents.

10         A.    I still go back to what I just said.

11         Q.    All right.

12         A.    And let me add this.  These documents that

13     you see have been in my possession, no one else's.  I

14     showed them to my attorney, Mr. Gagliardo, yesterday.

15     That's the first time he ever saw them, so they've

16     been in my possession.

17         Q.    And you never told anybody at the NALC that

18     you had taken these documents until today, right?

19         A.    That's true, yes.

20         Q.    All right.  Now, you filed -- you saw a

21     lawyer by September the 5th; isn't that right?

22         A.    I did.

# Exhibit B

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - x
                                :
CHARLES ROYALL,                 :
                                :
            Plaintiff,          :
                                :
v.                              :   Civil Action No.
                                :   1:05cv01711 (RBW)
NATIONAL ASSOCIATION OF         :
LETTER CARRIERS, AFL-CIO,       :
                                :
            Defendant.          :
                                :
- - - - - - - - - - - - - - - x

Thursday, June 29, 2006

Washington, D.C.

DEPOSITION OF:

WILLIAM YOUNG

a Witness in the above-entitled cause,

called for examination by counsel for the Plaintiff,

pursuant to notice and to agreement of counsel as to

time and place, at the law offices of Sherman, Dunn,

Cohen, Leifer & Yellig, P.C., 900 Seventh Street,

Northwest, Suite 1000, Washington, D.C. 20001,

commencing at 9:24 a.m., before Marney Alena

Mederos, RPR, a Notary Public in and for the

CHARLES ROYALL                                          WILLIAM YOUNG
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS             June 29, 2006

Page 15

1          A     Well, let me explain it to you.

2          Q     Would you, please?

3          A     I've never worked in finance and I've

4    never been the secretary-treasurer of the union.

5    I've held just about every other position in the

6    union, so I'm not, you know, squawking here.  But

7    when it comes to the financial department, I haven't

8    had hands-on experience in that finance department.

9          Q     All right.

10         A     I've got to rely on the director of

11   finance, the secretary-treasurer, and the account

12   manager to keep me informed of what goes on down

13   there.  Now, I had some basic accounting in college

14   many years ago, but I don't consider myself an

15   accountant, that's for sure.

16               What I remember about the interview is

17   that I couldn't make a distinction between the three

18   candidates personally.  I'm just saying I liked them

19   all, to be honest with you, but Stubblefield seemed

20   to think that Mr. Royall had some abilities in

21   spreadsheets that the other two didn't have, and he

22   ended up -- at least this is my perception of it --

CHARLES ROYALL                                          WILLIAM YOUNG
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS              June 29, 2006

Page 16

1   he ended up convincing Jane and I that because of

2   Charles's abilities with these spreadsheets he was

3   the right guy for the job.

4           I said, "Well, it's important.  You've

5   been pushing for this position, and it's important

6   that you have somebody.  If that's what you think,

7   then that's what we'll go with."

8       Q    All right.

9       A    And that's actually how the decision

10  was made.

11      Q    Did Ms. Broendel express any opinion as

12  to who she preferred between the three?

13      A    I recall her being in the same position

14  as me, but I'm not positive of that.

15      Q    All right.  So, in fact, Mr. Royall was

16  hired; is that correct?

17      A    That is correct, yes.

18      Q    All right.  What personal knowledge do

19  you have of his performance?  Let me be clear.  I'm

20  asking for your personal knowledge, not what

21  Ms. Broendel or Mr. Stubblefield or anybody else

22  might have told you.  Did you observe him in his

CHARLES ROYALL                                                    WILLIAM YOUNG
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS                        June 29, 2006

Page 36

1    can explain that to you.  Actually, there was a

2    discussion at one point about letting Royall and

3    Stubblefield go all at once, and I said, "No.

4    Stubblefield is telling us that he got the wrong guy

5    here as account manager.  We owe it to him to see if

6    we put the right person in there if he can perform,

7    because he inherited a mess."  I knew he had

8    inherited a mess.

9             So everybody -- Jane was in that

10   meeting, and I forget who else was there, but we

11   were having this discussion and the decision was

12   made by me that he was going to get an additional

13   chance.  By this time, we had hired a temporary

14   person, Carol Estabrook.

15        Q     All right.  Let me interrupt you for a

16   half a second.

17        A     Uh-huh.

18        Q     You said she was hired on a temporary

19   basis?

20        A     Yes.  Jim DeLio -- Jim DeLio -- when

21   Charles left, I actually hired Asit -- I can't

22   remember his last name.  We did the interview, we

CHARLES ROYALL                                          WILLIAM YOUNG
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS                June 29, 2006

Page 37

1     went through it again, and I hired another person to

2     take Charles's place.

3          Q     Okay.

4          A     The guy was supposed to come in, but

5     the day he was supposed to be there, he never

6     showed.  And ultimately a week or two later, we got

7     a call from his brother saying he had to go

8     somewhere in the Far East and he wasn't going to be

9     able to take the job.

10         Q     All right.  You don't remember the

11    man's -- it was a man?

12         A     Yeah.  His name was Asit.  There's a

13    document somewhere that memorializes that, because

14    what happens is, when I hire them, I write a

15    document saying they're hired.  I wrote that

16    document, and I remember that.

17         Q     All right.  So he didn't show up?

18         A     He didn't show up.

19               And then Jim DeLio, who was working in

20    the IT department -- he's an employee who has been

21    with us for a long time -- he was actually helping

22    Charles and Stubblefield try to understand the J.D.

CHARLES ROYALL                                   WILLIAM YOUNG
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS              June 29, 2006

Page 38

1    Edwards part of this, because DeLio had some

2    abilities -- he's not an accountant, but he had some

3    abilities with the J.D. Edwards software.

4            So when I became the -- when I had been

5    elected but wasn't installed yet as the president, I

6    had a little meeting in the office, and I told all

7    the employees that I wanted to bump them up

8    internally rather than hire from outside.  So if

9    people saw opportunities, they should take advantage

10   and that I would be willing to give people a shot.

11   So DeLio came to me and said, "Let me take a shot at

12   Royall's job."

13           And I said, "Okay.  We'll give you a

14   shot at that."  So I put him in the position.

15       Q    He was the immediate successor to

16   Mr. Royall?

17       A    Well, yeah, because the other guy

18   didn't show.

19       Q    All right.  I understand.

20           And Mr. DeLio is a Caucasian male?

21       A    Yes, he is.

22       Q    All right.  Go ahead.  So you gave him

CHARLES ROYALL                                          WILLIAM YOUNG
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS                June 29, 2006

Page 39

1    a shot?

2         A    So he took the position and he worked

3    maybe a month, and he came to me and said, "Bill,

4    this is driving me crazy.  I just can't do it."

5         Q    And he's an IT expert?

6         A    Yeah.

7         Q    Okay.

8         A    He said, "I don't have the accounting

9    skills to do the job.  I can handle the software,

10   but it's not working out.  There's too much stress

11   in this job.  If you don't mind, I want to go back

12   to my old position."

13             I said, "That's fine," and I sent him

14   back.

15             But we had hired in the interim this

16   Carol Estabrook to help DeLio get the W-2's out,

17   because, like I told you, they were messed up

18   because the entries hadn't been made in J.D. Edwards

19   the way they were supposed to so we could do the

20   automatic W-2's at the end of the year.

21             So Estabrook was in there basically

22   because she had all of this J.D. Edwards knowledge,

CHARLES ROYALL                                          WILLIAM YOUNG
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS                June 29, 2006

Page 40

1    and she was in there helping DeLio.  And when DeLio

2    left, Jane came to me and suggested that maybe Carol

3    was the right person for that job.

4          Q    And she's a female Caucasian; is that

5    correct?

6          A    That is correct.

7          Q    All right.  And was she then hired?

8          A    After Frank -- Frank came to see me --

9    what happened is, Stubblefield gets removed, I

10   believe, like in September or August, and we put

11   Frank Sclafani, who had -- this is ironic.  He had

12   been in there helping Charles and Stubblefield from

13   the same company -- I think it's called Acsys or

14   something like that, but it's a -- it's like a

15   temporary agency.  If you need a skilled person, you

16   can call them.  We got Sclafani from this outfit

17   called Acsys, and he was in there helping Charles

18   and Stubblefield.

19          When the decision came that

20   Stubblefield wasn't going to make it after we had

21   hired DeLio and still nothing was going on there,

22   then we said to Sclafani, "Would you like to take

CHARLES ROYALL
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS

WILLIAM YOUNG
June 29, 2006

Page 62

1   CASE:  Royall v. NALC
    DATE:  June 29, 2006

2

3           ACKNOWLEDGMENT OF DEPONENT

4           I, William Young, do hereby acknowledge

5   that I have read and examined pages 4 through 60,

6   inclusive, of the transcript of my deposition and

7   that:

8   (Check appropriate box)

9

10          [ ✖ ]   The same is a true, correct, and
    complete transcript of the answers given by me to
11  the questions therein recorded.

12          [   ]   Except for the changes noted in the
    attached Errata sheet, the same is a true, correct,
13  and complete transcription of the answers given by
    me to the questions therein recorded.

14

15

        Date                    Signature
16
        7/18/06                 William H. Young
17

18              Sworn to and subscribed to before me on

19  this 18th day of July                , 2006.

20

21  LINDA M. GIORDANO            Linda M Giordano
    NOTARY PUBLIC DISTRICT OF COLUMBIA
    My Commission Expires May 31, 2011      NOTARY PUBLIC
22

b63bc7d7-378b-4392-9f4e-b311b9d0dfc0

# Exhibit C

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - x

CHARLES ROYALL,                       :

         Plaintiff,          :

      vs.                             :    Civil Action

NATIONAL ASSOCIATION OF               :    No. 05-1711 (RBW)

LETTER CARRIERS,                      :

        Defendant.          :

- - - - - - - - - - - - - - - x

                     Washington, D.C.

                     Tuesday, July 11, 2006

Deposition of:

               JAMES DELIO,

the Witness, called for examination by counsel for

Plaintiff, pursuant to notice, commencing at 10:50

a.m., at the offices of Sherman, Dunn, Cohen, Leifer &

Yellig, P.C., 900 Seventh Street, Northwest,

Washington, D.C., before Karen Young, Notary Public in

and for the District of Columbia, when were present on

behalf of the respective parties:



CHARLES ROYALL                                                    JAMES DELIO
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS                      July 11, 2006

Page 4

1                          PROCEEDINGS

2                          Whereupon,

3    JAMES DELIO,

4    was called as a witness and, having been duly sworn,

5    was examined and testified as follows:

6                           -   -   -

7          EXAMINATION ON BEHALF OF THE PLAINTIFF

8              BY MR. GAGLIARDO:

9      Q.    Would you give us your full name and address

10   please?

11     A.    James Delio, 3550 Windsor Lane, Huntingtown,

12   Maryland 20639.

13     Q.    Mr. Delio, you work for the NALC?

14     A.    I do.

15     Q.    What is your position?

16     A.    Programmer.

17     Q.    Computer programmer?

18     A.    Computer programmer.

19     Q.    How long have you worked at NALC?

20     A.    A little over nine years.

21     Q.    And you've held other positions while you

22   were there, correct?

CHARLES ROYALL                                          JAMES DELIO
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS          July 11, 2006

Page 5

1      A.    Yes.

2      Q.    What other positions have you held?

3      A.    I was the accounting manager.

4      Q.    Other than accounting manager and

5    programmer, have you held any other positions?

6      A.    No.

7      Q.    This is usually not a delicate question.

8    You're white or Caucasian?

9      A.    Caucasian or white.

10     Q.    All right.  How long were you the accounting

11   manager?

12     A.    About two months I think.

13     Q.    All right.  And when were you hired or given

14   the position of accounting manager?

15     A.    Around November -- I don't know what year.

16     Q.    2002?

17     A.    Yeah.

18     Q.    So you were the accounting manager November

19   and December, carried in -- slightly into the first of

20   the year, over the first of the year?

21     A.    Yeah, I think so.

22     Q.    Which way?

CHARLES ROYALL                                          JAMES DELIO
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS              July 11, 2006

Page 6

1       A.      Pardon?

2       Q.      How long were you -- were you there after

3   the first of the year?

4       A.      Yes, I was there after the first of the

5   year.

6       Q.      Okay.

7       A.      I believe.

8       Q.      All right.  And you were the -- you were a

9   programmer both before and after you were the

10  accounting manager at the NALC, correct?

11      A.      That's true.

12      Q.      All right.  How did you come to be the

13  accounting manager?  Did you find -- was there a job

14  posting, a vacancy posting?

15      A.      I don't know.  I don't know.  I was filling

16  in doing what I could to keep things moving there as a

17  programmer and I was familiar with the software, the

18  accounting software, so I was able to make some things

19  happen.  I took the job, talking to Frank, the

20  director of finance.

21      Q.      Who at that time was Frank Sclafani?

22      A.      I volunteered and, you know, he was -- and

CHARLES ROYALL                                          JAMES DELIO
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS              July 11, 2006

Page 7

1    so they hired me.

2          Q.    Okay.  Let's lay this out a little more

3    clearly.  You were working as a programmer and

4    providing technical assistance to the finance

5    department?

6          A.    True.

7          Q.    During what period of time?

8          A.    Well, ever since I was hired there.

9          Q.    Okay.  And the accounting manager's position

10   was vacant for a period of time?

11         A.    Yes.

12         Q.    And you went to Mr. Sclafani and volunteered

13   to serve as the accounting manager?

14         A.    That's true.

15         Q.    And you then became the accounting manager

16   and worked in that position for approximately two

17   months.

18         A.    Right.

19         Q.    And when you went to Mr. Sclafani, he was at

20   that point the director of finance?

21         A.    I believe so.

22         Q.    All right.  And you knew Mr. Sclafani since

CHARLES ROYALL                                                                JAMES DELIO
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS                          July 11, 2006

Page 8

1    he was first working at NALC?

2        A.    I -- yes.

3        Q.    How long have you known --

4        A.    I met him -- he temped I think initially.

5        Q.    Yes.

6        A.    And then was hired full time.

7        Q.    Did you know him before --

8        A.    No.

9        Q.    -- he temped at NALC?

10       A.    No.

11       Q.    Why did you go back to programming from

12   account manager -- accounting manager?

13       A.    I like programming better.  I prefer it.

14       Q.    Were you asked to go back to programming or

15   did you volunteer?

16       A.    I volunteered.

17       Q.    All right.  You were in over your head,

18   weren't you, as accounting manager?

19       A.    I don't know.

20       Q.    All right.  Let me ask you this.  What's

21   your background in accounting?

22       A.    I have an associate's degree.

CHARLES ROYALL
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS

JAMES DELIO
July 11, 2006

Page 34

1    ROYALL VS. NATIONAL ASSOCIATION OF LETTER CARRIERS

2

3              ACKNOWLEDGEMENT OF DEPONENT

4

5        I, JAMES DELIO, do hereby acknowledge that I

6    have read and examined pages 4 through 33, inclusive,

7    of the transcript of my deposition taken on Tuesday,

8    July 11, 2006, and that:

9        (check appropriate box)

10

11       [✓] the same is a true, correct, and complete

12   transcription of the answers given by me to the

13   questions therein recorded.

14

15       [] except for the changes noted in the

16   attached errata sheet, the same is a true, correct,

17   and complete transcription of the answers given by me

18   to the questions therein recorded.

19

20

21   _James Delio_____        _7/28/06_____

22        signature                   date

# ERRATA SHEET

### 7/11/06 DEP: JAMES DELIO

Review the transcript, complete and distribute signed errata sheet
and acknowledgement to all parties, including SLR Reporting, within
30 days. Any changes should be listed below and not made upon the
transcript itself.

P A G E    L I N E                              CHANGE/REASON

*None*

SIGNATURE /DATE        8/1/06

*SLR REPORTING (301) 340-0042*

# Exhibit D

CHARLES ROYALL                                              JANE BROENDEL
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS                   June 29, 2006

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - x
                      :

CHARLES ROYALL,                  :

        Plaintiff,       :

                      :

v.                               :   Civil Action No.
                      :   1:05cv01711 (RBW)

NATIONAL ASSOCIATION OF          :
LETTER CARRIERS, AFL-CIO,        :

                      :

        Defendant.        :

                      :

- - - - - - - - - - - - - - - - x

Thursday, June 29, 2006

Washington, D.C.

DEPOSITION OF:

JANE BROENDEL

a Witness in the above-entitled cause,

called for examination by counsel for the Plaintiff,

pursuant to notice and to agreement of counsel as to

time and place, at the law offices of Sherman, Dunn,

Cohen, Leifer & Yellig, P.C., 900 Seventh Street,

Northwest, Suite 1000, Washington, D.C. 20001,

commencing at 10:32 a.m., before Marney Alena

Mederos, RPR, a Notary Public in and for the

COPY

CHARLES ROYALL                                      JANE BROENDEL
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS          June 29, 2006

Page 51

1    memorandum other than the spreadsheets?

2        A    No.  That's what I recall.

3        Q    Did you go to Mr. Royall and ask him

4    about these things that Mr. Sclafani had brought to

5    your attention?

6        A    No, I didn't take this document in hand

7    and go to Mr. Royall and talk about this.  There

8    were other occasions --

9        Q    I'm talking in response to Mr. -- we'll

10   talk about other occasions.  But in response to

11   Mr. Sclafani's memorandum, did you go to

12   Mr. Royall?

13       A    No.

14       Q    Did you go to Mr. Stubblefield about

15   Mr. Royall in response to Mr. Sclafani's

16   memorandum?

17       A    Not specifically, no.

18       Q    All right.  So you took no action after

19   Mr. Sclafani gave you this memorandum concerning

20   Mr. Royall?

21       A    There were discussions, yes.

22       Q    With whom, because you said you didn't

CHARLES ROYALL                                    JANE BROENDEL
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS        June 29, 2006

Page 52

1    go to Mr. Royall and you didn't go to

2    Mr. Stubblefield?

3         A    I didn't go there with the document in

4    hand saying we need to discuss this.

5         Q    All right.  So tell me now about the

6    discussions that you did have and with whom about

7    the contents of this memorandum as it pertains to

8    Mr. Royall.

9              MR. HERMAN:  I object to the form of

10   the question.  It's ambiguous.

11             If you understand it, you can answer

12   it.

13             THE WITNESS:  No.  The only thing I

14   would add is that the things that Mr. Sclafani told

15   me in the Accounting Manager section did not

16   surprise me.  I was already aware of this by that

17   time.

18             BY MR. GAGLIARDO:

19        Q    All right.  So what did you do about

20   it?

21        A    Other than specific instances or I had

22   conversations with Mr. Royall about things that

CHARLES ROYALL                                              JANE BROENDEL
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS                June 29, 2006

Page 82

1          A     Sharing through those months with Bill

2     Young what was going on in the finance department,

3     who was doing what, who was picking up the workload,

4     and how payroll was going or not going in this case,

5     those were my discussions with Bill Young.

6                And occasionally Ron Stubblefield

7     would, of course, through the memorandums let me

8     know, but the memorandums are just like job

9     listings.  They're not he said this, he said that

10    sort of thing, nor are they true recommendations.

11               But, yes, Ron Stubblefield let me know

12    that his working relationship as far as being able

13    to assign the accounting manager a task and have it

14    completed accurately and on time wasn't happening.

15         Q     All right.  I understand that there

16    were things that happened leading up to Mr. Royall's

17    termination.  I'm more interested in how did it get

18    to the point where it was ultimately decided, you

19    know, we've got to fire this guy.

20               Did Stubblefield ever come to you and

21    say we need to fire Charles Royall?

22         A     Yes.

CHARLES ROYALL                                              JANE BROENDEL
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS                 June 29, 2006

Page 83

1          Q     All right.  Did you ever go to

2     Mr. Young and say, you know, we've got to fire

3     Charles Royall?

4          A     Yes.

5          Q     All right.  And who made -- who

6     actually pulled the trigger, as they say?  Whose

7     decision was it to actually do the firing?  Was it

8     reserved to Mr. Young as the president?

9          A     Yes.

10         Q     All right.  Based on your

11    recommendation and Mr. Stubblefield's

12    recommendation?

13         A     Right.

14         Q     Did Mr. Sclafani also participate in

15    that decision?

16         A     In firing Charles Royall?

17         Q     Yes.

18         A     No.

19         Q     All right.  Tell me exactly what -- was

20    it that point blank, Mr. Stubblefield said that

21    we've got to fire him?

22         A     Like putting his foot down and saying

CHARLES ROYALL
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS

JANE BROENDEL
June 29, 2006

Page 101

CASE: Royall v. NALC
DATE: June 29, 2006

ACKNOWLEDGMENT OF DEPONENT

I, Jane Broendel, do hereby acknowledge that I have read and examined pages 4 through 100, inclusive, of the transcript of my deposition and that:

(Check appropriate box)

[   ]    The same is a true, correct, and complete transcript of the answers given by me to the questions therein recorded.

[X]    Except for the changes noted in the attached errata sheet, the same is a true, correct, and complete transcription of the answers given by me to the questions therein recorded.

Date 8-1-06                    Signature *Jane E. Broendel*

Sworn to and subscribed to before me on this 1st day of August , 2006.

*Linda M Giordano*

LINDA M. GIORDANO
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires May 31, 2011

NOTARY PUBLIC

SLR REPORTING
(301) 340-0042

0757f60e-8cf0-47ad-89b8-61f7890a7ca6

CHARLES ROYALL
vs. NATIONAL ASSOCIATION OF LETTER CARRIERS

JANE BROENDEL
June 29, 2006

Page 102

```
 1                       SLR REPORTING
                        12208 SELINE WAY
 2                  POTOMAC, MARYLAND  20854
                        (301) 340-0042
 3
                      CASE:  ROYALL V. NALC
 4              DEPOSITION OF:  JANE BROENDEL

 5              Enclosed is the transcript of your
      deposition testimony.  Please review the transcript,
 6    complete and distribute the signed errata sheet and
      acknowledgment page to all parties, including this
 7    office, within 30 days.  Any changes and/or
      corrections should be listed below and not made upon
 8    the transcript itself.

 9    PAGE  LINE  CHANGE OR CORRECTION              REASON

10

11    Page

12     39    9    change(correct) "deserved" to      reporter misunderstood
                              "observed"
13     63   19    change "correct" to "incorrect"    misspoke or was
                                                     misunderstood
14     63   20    change "incorrect" to "correct"

15

16

17

18

19

20    DATE: 8-1-06          SIGNATURE:

21                          Jane E. Broendel

22
```

SLR REPORTING
(301) 340-0042

0757f60e-8cf0-47ad-89b8-61f7890a7ca6