**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **CHARLES ROYALL** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:05cv01711(RBW)** |
| | ) | |
| **NATIONAL ASSOCIATION OF** | ) | |
| **LETTER CARRIERS, AFL-CIO** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**PLAINTIFF'S STATEMENT OF MATERIAL  DISPUTED FACTS**

Plaintiff, Charles Royall, by and through undersigned counsel, and in support of his Opposition to Defendant National Association of Letter Carriers, AFL-CIO (hereinafter "NALC")'s Motion for Summary Judgment provides the following statement of material facts as to which there are genuine issues precluding a grant of Summary Judgment to Defendant.

**A**.  **INTRODUCTION**

Before this Court is Mr. Royall's claim under 42 U.S.C. §1981, asserting that his employment with NALC was terminated because of his race (African American).  NALC has responded by claiming that Mr. Royall's performance did not meet expectations, citing a number of ostensible errors on this part.

In doing so, NALC ignores the following facts:

(1)  The only documented errors occurred months before Mr. Royall's termination, and no warning or counseling took place, nor was discipline imposed because of those errors;

1

(2)  Claims of other errors are based largely on hearsay, are entirely uncorroborated, and are contrary to Mr. Royall's corroborated statements regarding his performance;

(3)  According to now Finance Director Francis Scalfani (Caucasian), records which would ostensibly document errors committed by Mr. Royall disappeared from a locked storage area at NALC headquarters;

(4)  The employee who succeeded Mr. Royall, viz., James Delio (Caucasian) was entirely unqualified and unable to retain the position.  Nonetheless, Mr. Delio, unlike Mr. Royall, was not terminated.

(5) The decision to hire Mr. Royall was primarily made by then Director of Finance Ronald Stubblefield (African American), while the decision to terminate him was largely based on a report by Mr. Scalfani (Caucasian).

We now address *ad seriatim* those Material Facts set forth in the Employer's Statement for which there is a genuine dispute, documenting for each the basis of the dispute.

**Defendant's Paragraph 10:**  The decision to hire Mr. Royall was not made by William Young (Caucasian), with the concurrence of Jane Broendel (Caucasian) and Ronald Stubblefield (African American).   In his deposition, Mr. Young stated, "I'll be candid about it.  Basically….I let Stubblefield decide."  **Exhibit 1**, Deposition of William Young, Page 10, Lines 7 – 13.

**Defendant's Paragraph 11:**  Mr. Royall never stated to NALC officials that he knew the JD Edwards payroll software program.   Rather, he stated that he had prior experience with integrated accounting information systems and felt that he could learn

the JD Edwards program quickly.  Mr. Royall did not have data entry responsibility for payroll until after the resignation of Chris Tarbrake in June 2002, more than three months subsequent to his date of hire.  **Exhibit 2,** Plaintiff's Affidavit.  See also, **Exhibit 3**, Memo from Ronald Stubblefield to Jane Broendel dated June 17, 2002, stating "JD EDWARDS TRAINING AWAITING APPROVAL.  I WOULD LIKE TO DISCUSS THIS WITH YOU IN LIGHT OF SUK'S UPCOMING VACATION (WEEK STARTING JULY 15, 2002 AND CHRIS (BACKUP) NO LONGER HERE."

    **Defendant's Paragraph 15:**  When Plaintiff was hired on February 25, 2002, his position had been vacant since August 31, 2001 so that the backlog related primarily to tax reporting and filings for 2001 for which Plaintiff could not have been responsible in creating.  See, **Exhibit 4,** NALC Tax Notice Summary.

    **Defendant's Paragraph 16:**  Sukja Neidlinger, the payroll accounting clerk, was "obligated to produce payroll timely and accurately."  Chris Tarbrake was the back-up accounting clerk. Mr. Royall was their supervisor.  Payroll taxes had not been filed during the six-month vacancy in the Accounting Manager position, so that as an initial matter, Mr. Royall was required to negotiate and settle late penalties and interest that had accumulated on unpaid payroll taxes and other state tax filings.  In his deposition, William Young stated, "I think that's accurate.  Again ….I want to be fair here because I wouldn't be surprised if because we had no one in his position for a period of time. So that would not shock me if when he came in there was a backlog." **Exhibit 5**, Deposition of William Young, page 33, Lines 6 – 10.  Mr. Royall's job duties did not include actual payroll production until this task was assigned to him in June 2002.  **Exhibit 2**, Plaintiff's Affidavit, **Exhibit ____,** Memorandum from Ronald Stubblefield.

**Defendant's Paragraph 17:** Due the lack of a written job description for Mr. Royall's position, Mr. Royall performed the duties assigned to him by Ronald Stubblefield, Harold Isbell, and Jane Broendel. Mr. Royall understood that assigned tasks were to be completed as soon as possible. **Exhibit 2,** Plaintiff's Affidavit.

**Defendant's Paragraph 20:** Attached is a Memo from Mr. Stubblefield to Mr. Royall assigning a task on one day on which it is indicated that the task was completed the following day. See **Exhibit 6**, Memo from Ronald Stubblefield to Charles Royall dated June 20, 2002, requesting a payroll adjustment for Alan Apfelbaum.

**Defendant's Paragraph 20:** Ronald Stubblefield never made suggestions to Mr. Royall on how to complete his work. **Exhibit 2**, Plaintiff's Affidavit.

**Defendant's Paragraph 20:** Mr. Royall followed the directions of his supervisors. At **Exhibit 7** appears a report from Mr. Royall to Jane Broendel on the NALC Health Benefit Plan. Mr. Royal had prepared the report in the same manner as the Accounting Manager who preceded him. The report was returned by Jane Broendel with a request to provide detailed information backing up the payment total. Mr. Royall submitted this information the following day, and it was approved by Broendel three days later.

**Defendant's Paragraph 21:** William Young did not have between five and ten meetings with Ron Stubblefield regarding why things were not getting done. In his deposition, William Young stated, that to the extent such discussions took place, it would have been by telephone and that he had no notes of any of these discussions. See **Exhibit 8,** Deposition Testimony of William Young, Page, 22, Lines 17 – 22 , Page 23, Lines 1 – 7 and Page 24, Lines 15 - 17.

4

**Defendant's Paragraph 25:**  Sukja Neidlinger's (Asian) testimony that it took her two months to teach Plaintiff basic payroll is contradicted by Plaintiff, who testified. See also **Exhibit 9**, Deposition Testimony of Sukja Neidlinger at page 14, lines 10 - 19 wherein she admits that two months was an exaggeration.  She stated, "You know, I can't say every single day," in response to the question, "When you say everyday, how many hours a day [during the two month period]?"

**Defendant's Paragraphs 25:**  Ms. Neidlinger felt territorial about the NALC payroll, given her 10-year tenure as payroll clerk.  She referred to it as "her payroll" and was reluctant to share with Mr. Royall her knowledge of how the payroll was processed, even though he was her supervisor.  **See Exhibit 10**, Deposition Testimony of Sukja Neidlander, wherein she states, "For instance, he wants to learn MY payroll, and it took like over two months for me to teach him MY payroll, basic payroll.  [Emphasis added].

**Defendant's Paragraph 25:**  Ms. Neidlinger wanted, and formally applied for, a pay increase to teach Mr. Royall and therefore had a motive to misrepresent Mr. Royall's level of competence.  See **Exhibit 11**, Neidlinger Deposition, Page 30, 1 – 8.

**Defendant's Paragraph 25:**  Contrary to her testimony that Mr. Royall was incompetent, Ms. Neidlinger later admits that he successfully completed the payroll during her vacation and finally concedes that she, too, makes mistakes.  See, **Exhibit 12**, Neidlinger Disposition, page 28, lines 1 – 19.

**Defendant's Paragraph 26:**  To rebut Ms. Neidlinger's claim that she had to instruct him, Plaintiff attaches three Memoranda of instructions he provided to Ms. Neidlinger.  **Exhibit 13**, Memoranda from Mr. Royall to Ms. Neidlinger, instructing her

how to make changes to hourly rates, how to change a DBA code in the JD Edwards

system and how to set up a deduction for a loan from the Thrift Saving plan.

**Defendant's Paragraph 29:**    NALC officers did not complain about various

payroll problems…every single day.  As William Young conceded in his Deposition at

Page 59, lines 13 – 19, "I'm just saying there were…Look, here is how I felt about

this…it seemed like, almost every day.  It probably wasn't, but that's what it seemed

like." **Exhibit 15.**

**Defendant's Paragraph 30:**   Other than the uncorroborated hearsay testimony

of William Young, no proof has been provided that Al Ferranto made a complaint that his

voluntary contributions to the federal thrift savings plan (TSP) were not being

appropriately forwarded by  Mr. Royall.  **Exhibit 2,** Plaintiff's Affidavit.

**Defendant's Paragraph 31:**   Other than the uncorroborated, hearsay testimony

of William Young, there is no evidence that two or three other NALC officers

complained about errors by Mr. Royall.  **Exhibit 2,** Plaintiff's Affidavit.

**Defendant's Paragraph 32:**   There is no documentation or other corroboration

for William Young's allegation that he was in jeopardy of losing benefits is

uncorroborated and there is no evidence that Mr. Royall was the cause of it.  **Exhibit 2,**

Plaintiff's Affidavit.

**Defendant's Paragraph 33:**  Jane Broendel alleged that Steven Hult made a

complaint but has, to date, failed to provide any proof of same.  **Exhibit 2,**  Plaintiff's

Affidavit.

**Defendant's Paragraph 34:**   The deductions made from James Sauber's

paycheck for the purchase of Savings Bonds occurred in 2001, prior to Plaintiff's

employment.  Plaintiff not only made the back payment but also arranged for the bond purchase date to be backdated so that Mr. Sauber would not lose the interest. See. **Exhibit  16**,  Emails dated April 2, 2002 from James Sauber to Ronald Stubblefield and from Jane Broendel to Ronald Stubblefield, commending Mr. Royall for doing a good job.

**Defendant's Paragraph 37.**  Each of these allegations is untrue:  1) that Mr. Royall could not answer Chris Tarbrake's questions; and 2) that Mr. Royall failed to provide guidance to Chris Tarbrake, the accounts payable clerk.  See **Exhibits 17 A – D**, Memoranda that Mr. Royall relied on during his employment at NALC to answer questions:  A) Accounts Payable Duties; B) Check Processing Steps; C) Batch Items; D) Six-page documentation of Mr. Tarbrake's failure to include Ronald Stubblefield and Linda Stewart on eye health insurance from August 31, 2001 through February 25, 2002, even though their enrollment forms were dated July 2, 2001 and August 28, 2001, respectively.  This is an example of the kind of discoveries Mr. Royall made when he began employment with NALC and of the guidance that he provided to Chris Tarbrake.  Mr. Royall explained to Tarbrake that because he (Tarbrake) had reviewed the invoice and paid it he therefore should have known that there were uncovered employees in the office.  Mr. Royall spent an entire day helping Tarbrake to reorganize the accounts payable files and helped him to carry old files to the basement, instructing him to lock the door.  **Exhibit 2,** Plaintiff's Affidavit.

**Defendant's Paragraph 38.**  Quite apart from the dubiousness of the statement that Dale Molina, an employee in the Information Technology Department, had the "responsibility" for Annuity Trust Fund Payments, Mr. Royall always provided the

Annuity Trust Fund report to Dale Molina on time, and sometimes before the report was due. See **Exhibit 18,** the Annuity Trust Fund Report for Pay Period # 8, 2002.

   **Defendant's Paragraph 38.** Jane Broendel did not tell Mr. Royall that Dale Molina complained about him. Mr. Royall reported to Jane Broendel that the Secretary-Treasurers in the locals were sometimes failing to get their reports in on time. See, **Exhibit 19,** Broendel letter of admonition to the locals dated June 27, 2002, asking that they make timely submission to Mr. Royall. See also, **Exhibit 20,** Mr. Royall's fax to Keith Proctor/Dale Molina, sent despite being terminated, establishing that he prepared the Annuity Trust Fund Report early, i.e., on August 26, 2002, for submission on August 30, 2002.

   **Defendant's Paragraph 39**. Even if William Young's uncorroborated hearsay statement that Mark Eagen said NALC was losing its reputation as an organization because bills were paid late, NALC has provided no documentation of a late invoice with a canceled check to show such late account payment for which Mr. Royall is responsible. Moreover, neither Ronald Stubblefield nor Jane Broendel ever told Mr. Royall that there was a problem paying bills late. The opposite is true: Ronald Stubblefield told Mr. Royall that the two of them need not be concerned "about bills being paid or payroll because NALC had a lot of money." See, **Exhibit 2**, Plaintiff's Affidavit..

   **Defendant's Paragraph 40.** The allegation that Mr. Royall did not personally resolve Sean McCormally's bond problem and that of others is false. Attached are documents that establish he did. See, **Exhibit 21 a – e.**: a) Emails between Ronald Stubblefield and Jane Broendel, thanking Mr. Royall for completing the work but

without public acknowledgement it was he, not they, who did so; b) Bond work sheets for McCormally and Sauber, prepared by Mr. Royall and approved by Jane Broendel on April 11, 2002; c) Work sheets demonstrating that Mr. Royall completed an analysis identifying the employees who purchased I Bonds and EE Bonds; d) Computer report generated from the JD Edwards system by Mr. Royall to ensure the purchase of bonds; e) Documents establishing that  Mr. Royall continued to complete and finalize the bond problems that antedated his employment with NALC.

**Defendant's Paragraphs 41:**  Jane Broendel met with Mr. Royall,  Ronald Stubblefield and Harold Isbell about Postal Service Benefits on May 14, 2002, and discussed an Email dated May 12, 2002 (attached) from Jane Broendel to Mr. Royall and Ronald Stubblefield.  The invoice had been faxed to the office of Ronald Stubblefield on April 8, 2002 but Stubblefield misplaced it so Mr. Royall had no knowledge of the existence of the invoice.  As a result of that meeting, Jane Broendel instructed both Ronald Stubblefield and Mr. Royall to complete the report and make the payment as soon as possible and they did.  Attached also is the Postal Service Benefits Invoice date June 5, 2002, together with a copy the work sheet completed by Mr. Royall and a copy of the check, establishing that once tasked with a responsibility, Mr. Royall timely completed his work.  **Exhibit 22.**

   **Defendant's Paragraph 42.**  Mr. Royall was terminated on August 27, 2002**.** Ronald Stubblefield was not called upon to assist Frank Sclafani and Sukja Neidlinger to correct a payroll problem until after Mr. Royall was terminated.

**Exhibit 23,** Memo to Jane Broendel from Ronald Stubblefield dated September 23, 2002.  According to Sukja Neidlinger, despite doing all this, Mr. Royall went out of

his way to learn payroll although that was not his job.  **Exhibit 24,** Neidlinger

Deposition, Page 35, Lines 15 – 22 and Page 36, Lines 1 – 22.

    **Defendant's Paragraph 43:**  Mr. Royall was not responsible preparing audit

schedules.  Francis Sclafani was specifically hired to assist with the annul audit upon

the recommendation of NALC's outside auditing firm, Bond Beebe.  **Exhibit 26,**

Deposition of Frank Sclafani, Page 7, Lines 7 – 16.  Mr. Royall was directed to

complete accounting tasks that had been previously assigned and not to take a direct

roll in the preparation of audit schedules.  **Exhibit 2,** Plaintiff's Affidavit.

    **Defendant's Paragraph 44.**  Frank Sclafani claimed that he completed a number

of payroll tasks but in his deposition he states that he cannot remember what, if any,

payroll tasks he performed.  When asked to produce documents establishing specific

payroll tasks or functions he performed, he testified that they disappeared from his

office as well as from a locked storage room in the basement of NALC.  **Exhibit 27**

Sclafani Deposition,  Page 9, Lines 2 – 5 and Page 32, Lines 1 – 22.

    **Defendant's Paragraph 45.**   Sclafani's claim that Stubblefield had received

phone calls about Royall's performance is not supported by his vague testimony and

is undermined by his claim that supporting documentation disappeared. .  **Exhibit 28.**

Sclafani's deposition, Pages 51 – 55.

    **Defendant's Paragraph 46.**   The Claim that Neidlinger was concerned about

Mr. Royall's performance and that she report the same to Sclafani is undermined by

her testimony that Mr. Royall did the payroll when she was on vacation, that he got it

out on time and there was only need for a few corrections, which she conceded that

were needed when she did the payroll herself.  **Exhibit 29,** Neidlinger Deposition, Page 27, Lines 17 – 20, Page 28, Lines 1 -14.

**Defendant's Paragraph 47.**  To the extent that  Sclafani did any of the work claim in Paragraph 47, it was the result of an appropriate distribution of work amongst the staff and was not the result of any fault on Mr. Royall's part.  **Exhibit 2.**

**Defendant's Paragraph 48.**  Mr. Royall denies that Mr. Sclafani assisted him in selecting and printing reports.  **Exhibit 2,** Plaintiff['s Affidavit and **Exhibit 30,** Plaintiff's notes on selecting and printing reports.

**Defendant's Paragraph 49.**  Plaintiff denies that he had responsibility for preparing audit reports.  **Exhibit 2,** Plaintiff's Affidavit.  Audit reports were the responsibility of Sclafani.  **Exhibit 31**.  Sclafani Deposition, Page 17, Lines 12 – 22, and Page 18 Lines 1 -12.

**Defendant's Paragraph 50.**  On April 30, 2002, Ronald Stubblefield wrote to Jane Broendel, "Had to complete quarterly consolidated 941/940s . Charles Royall was not oriented to this yet.  To avoid penalties, I completed." Sclafani's testimony that he did this task is contradicted by this memo. **Exhibit 32.**

**Defendant's Paragraph 51.**  Mr. Royall was never counseled or warned, much less informed, of any deficiencies in his performance.  No documentation has been provided to establish which tasks were not performed on time.  Samples of work completely in a timely manner are attached.  **Exhibit 2.**  Plaintiff's Affidavit.  .

**Defendant's Paragraph 52.**  Plaintiff never prepared payroll spreadsheets during his tenure with NALC. **Exhibit 2,** Plaintiff's Affidavit.

**Defendant's Paragraph 55.**      Mr. Sclafani admitted he could not recall ever telling Mr. Royall to foot or cross foot his reports.   **Exhibit 33,** Sclafani Deposition, Page 99, Lines 12 -19.   **See also,**  3 samples of cross-footed schedules prepared by Mr. Royall at **Exhibit 34**.

**Defendant's Paragraph 56.**  Ms. Broendel's assertion that she was not surprised by the Sclafani Memo is undermined by her approval of Mr. Royall's work.  **Exhibit 35,** Broendel Memoranda..

**Defendant's Paragraph 59.**  NALC did not always pay its taxes on time.  **Exhibit 4**, Spreadsheet dated April 1, 2002.  .

**Defendant's Paragraph 60.**  Ronald Stubblefield retained the task of making the COLA adjustments after Mr. Royall was hired to enable Mr. Royall to catch up on other work..  **Exhibit 2,** Plaintiff's Affidavit.

**Defendant's Paragraph 61.**   DBA Codes can be traced and any error can be documented.  Similarly, adjustments to DBA Codes can be traced.  NALC has not produced any documentation of an error for which Plaintiff is responsible.  An error can only have resulted if Mr. Royall's supervisor gave him the wrong DBA code or if the payroll clerk entered the incorrect DBA code adjustment into the JD Edwards system.  Therefore, without any documentation that Mr. Royall did something incorrectly, this allegation is inapt.  Mr. Royall attaches for examination the DBA adjustments that he authorized.  **Exhibit 36,** DBA Deductions for Alan Apfelbaum.

**Paragraph 63.**  Mr. Royall did not have possession of NALC checks.  According to Generally Accepted Accounting Principles, the accounts payable staff should not have possession of checks.  Mr. Stubblefield had responsibility to secure the checks.

Plaintiff denies that he had anything to do with checks being left as alleged and denies that a June 12, 2002 memo was his responsibility. **Exhibit 2**, Plaintiff's Affidavit; **Exhibit 37,** Memo from Dale Molina, June 12, 2002

    **Defendant's Paragraph 64.** Mr. Royall did not state in his interview that he knew the JD Edwards software. Mr. Royall mastered over twenty procedures in the JD Edwards software, and learned the payroll system at a time when NALC did not have a backup payroll person. In addition, he learned the PS BONDS 32 ORDER SYSTEM to complete the employee bond purchases process. **Exhibit 38**, Plaintiff's notes on the procedures he mastered. It is normal procedure to enter certain data at the end of the year to make sure that the W-2s are reconciled and correct. See also, **Exhibit 39** memorandum from Ronald Stubblefield to Jane Broendel dated September 23, 2002---after Mr. Royall was terminated. On Page 3 of that memo, Ronald Stubblefield outlines a Special W-2 Input for leased cars, officers' taxable in town expense, retirees' life insurance, convention per diem expenses, third party liability and special training for JD Edwards. None of these calculations could have been made or input prior to the year's end. **Exhibit 2,** Plaintiff's Affidavit.

    **Defendant's Paragraph 65.** The allegation that Jane Broendel's believed that Plaintiff was not satisfactorily performing is contradicted by the feedback she provided to him during his tenure. **Exhibit 40,** Broendel's approvals of Plaintiff's work.

    **Defendant's Paragraph 69.** Mr. Royall denies that these discussions ever took place. **Exhibit 2,** Plaintiff's Affidavit,.

**Defendant's Paragraph 70.**  During her deposition, Jane Broendel could not identify one time that she discussed payroll issues involving Mr. Royall.  As shown above, Sukja Neidlinger, a 25 year veteran of NALC, the last ten years of which were spent as the payroll clerk, had the responsibility for payroll.

**Defendant's Paragraph 72.**  The recitation of how NALC arrived at the decision to terminate Mr. Royall omits reference to Mr. Sclafani's memorandum disparaging Mr. Royall.  There is no admissible evidence that Mr. Stubblefield wished to terminate Mr. Royall.

**Defendant's Paragraph 73.**  Mr. Young was not the person who both hired and fired Mr. Royall.  He testified as follows,:

> I'll be candid about it.  Basically, I made the decision, but I let Stubblefield decide because I knew that he had to have somebody that he was compatible with in order for us to get back, because not only was there a lot of work to do, but there was a backlog there.  There were things that should have been done that weren't done, and so---

**Exhibit 1,**  Deposition of William Young, Page 10, Lines 7 – 13.  Mr. Sclafani was the driving force in terminating Mr. Royall.  **Exhibit 41,** Scalfani Memorandum.

Respectfully submitted,

_____

Thomas J. Gagliardo